No. 23-30243

# In the
# United States Court of Appeals
# for the Fifth Circuit

In Re: Jefferson Parish; Louisiana Regional Landfill Company; Waste Connections Bayou, Incorporated; Waste Connections US, Incorporated; Aptim Corporation,

*Petitioners*

Petition for Writ of Mandamus to the
United States District Court for the Eastern District of Louisiana
Civil Action Nos. 2:18-cv-7889, 2:18-cv-8071, 2:18-cv-8218, 2:18-cv-9312,
2:19-cv-11133, 2:19-cv-14512

RESPONSE OF THE HONORABLE SUSIE MORGAN,
UNITED STATES DISTRICT JUDGE, TO PETITIONERS'
PETITION FOR WRIT OF MANDAMUS

Susie Morgan
United States District Judge
United States District Court
for the Eastern District of Louisiana
U.S. Courthouse, 500 Poydras Street
Room C322
New Orleans, Louisiana 70130
(504) 589-7535

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES ............................................................... ii

ARGUMENT .....................................................................................1

   I.   The district court did not abuse its discretion in deferring a determination of class certification when the *Ictech-Bendeck* action has been pending for five years ......................................................... 2

   II.  The district court did not abuse its discretion in ordering a merits trial in the *Addison* mass action to occur before a determination on class certification for the *Ictech-Bendeck* class action. ..................................... 9

CERTIFICATE OF SERVICE.......................................................... 20

CERTIFICATE OF COMPLIANCE............................................... 21

# TABLE OF AUTHORITIES

*Byerson v. Equifax Info. Servs., LLC*, No. 6:07-cv-00005-GRA, 2009 WL 82397 (D. S.C. Jan. 9, 2009)....................................................................14, 16

*In re Citizens Bank*, 15 F.4th 607 (3d Cir. 2021).............................................17

*In re Depuy Orthopaedics, Inc.*, 870 F.3d 345 (5th Cir. 2017)........................1

*In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990)................................1, 17

*In re Jefferson Parish*, No. 23-30243 (5th Cir. 2023)............................1, 2, 13

*In re Recticel Foam Corp.*, 859 F.2d 1000 (1st Cir. 1988)......................1, 2, 10

*In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008)............2, 10

*In re Zetia (Ezentimibe) Antitrust Litigation*, MDL NO. 2:18-md-2836, 2021 WL 9870367 (E.D. Va. May 7, 2021).........................................................14, 15

# **ARGUMENT**

In their Petition for Writ of Mandamus, Petitioners present two questions for the Fifth Circuit's review.[1] As to both questions, Petitioners have failed to demonstrate their right to the writ is clear and indisputable.

Mandamus is appropriate only when (1) the right to the writ is clear and indisputable; (2) the petitioners have no other adequate means to obtain the requested relief because the error is irremediable on ordinary appeal; and (3) issuance of the writ is appropriate under the circumstances.[2]

"A writ of mandamus is 'a drastic and extraordinary remedy reserved for really extraordinary causes.'"[3] "Mandamus . . . should be granted only in the clearest and most compelling cases."[4] "It 'is not a substitute for an appeal.'"[5] "Only a showing of 'exceptional circumstances amounting to a judicial usurpation of power' or 'a clear abuse of discretion' will justify granting a mandamus petition."[6]

"As a general matter, mandamus will not issue to control exercises of discretion."[7] "Rather, a petitioner's right to the writ must be 'clear and

---

[1] *In re Jefferson Parish*, No. 23-30243 (5th Cir. 2023), R. Doc. 2-1 at p. 16.
[2] *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017).
[3] *Id.*
[4] *In re Fibreboard Corp.*, 893 F.2d 706, 708 (5th Cir. 1990).
[5] *Depuy*, 870 F.3d at 350.
[6] *Id.*
[7] *In re Recticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir. 1988).

indisputable.'"[8] "Where an action is committed to judicial discretion, it cannot often be said that a party's claim of entitlement to a particular result meets this benchmark."[9] Instead, the Fifth Circuit "'review[s] only for clear abuses of discretion that produce patently erroneous results.'"[10] "But—and [the Fifth Circuit has] stress[ed]—in no case will [it] replace a district court's exercise of discretion with [its] own."[11] "For that reason, mandamus has customarily been granted only when the lower court was 'clearly without jurisdiction,' or exceeded its discretion 'to such a degree that its actions amount to a "usurpation of power."'"[12]

## I.    The district court did not abuse its discretion in deferring a determination of class certification when the *Ictech-Bendeck* action has been pending for five years.

Petitioners argue the district court abused its discretion in deferring a determination of class certification when the *Ictech-Bendeck* action has been pending for five years.[13] This argument is misleading at best and disingenuous at worst. While Petitioners imply the district court has wrongfully delayed the class certification hearing to such an extent that a writ

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008).

[12] *Id.*

[13] *Jefferson Parish*, No. 23-30243, R. Doc. 2-1 at p. 16. Petitioner state that the district court deferred a determination of class certification for "five years" on eight separate occasions in their briefing.

of mandamus is the only appropriate relief, the delay in determining class certification has been the result of the parties' actions, not the district court's. A review of the procedural history of these two actions clearly demonstrates Petitioners cannot show they have a clear and indisputable right to mandamus relief on the basis of the timing of the class certification hearing. Instead, a detailed review of the procedural history of these cases underscores the extent to which Petitioners' statements are misleading.

On August 17, 2018, the class action *Ictech-Bendeck* was removed to the United States District Court for the Eastern District of Louisiana.[14] The mass action *Addison* was removed to the Eastern District of Louisiana on June 10, 2019.[15]

Beginning in August of 2018, extensive motion practice by Plaintiffs and Petitioners ensued, including motions to remand from Plaintiffs in *Ictech-Bendeck* and *Addison*, and a motion to dismiss by Petitioners in *Ictech-Bendeck*.[16] The Court then spent over a year addressing the motions filed by the parties. Immediately after all the motions had been resolved, on August 29, 2019,[17] the Court began discussing with the parties the entry of a case management order.

---

[14] R. Doc. 1 (18-7889).
[15] R. Doc. 1 (19-11133).
[16] *See, e.g.*, R. Docs. 19, 37 (18-7889); R. Docs. 18, 48 (19-11133).
[17] R. Doc. 66 (18-7889).

After conferring, *the parties* agreed that resolution of the issue of "general causation" in both cases would help narrow the focus of the cases and the issues at stake.[18] In the proposed First Case Management Order for both cases, entered on November 5, 2019, the parties consented to the district court determining the issue of general causation for both cases before the parties proceeded with either the certification of the class or the *Addison* trial.[19] The First Case Management Order set an April 12, 2021, date for the trial on general causation.[20] It was *the parties* who set the trial on general causation in both cases to take place a year and a half after entry of the First Case Management Order.[21] *The parties* suggested the extensive period for discovery, believing they needed this lengthy time to conduct discovery on the issue of general causation.[22]

Over the next two years, the parties further delayed progress toward the general causation trial by requesting extensions of the trial date. Between April 24, 2020, and November 10, 2021, due to challenges engaging in discovery during the COVID-19 pandemic, complications with Hurricane

---

[18] *See Attachment A.* Attachment A is an email from the parties with their proposal that a case management order be entered applying to both cases and providing that the issue of general causation be decided by the district court before the parties proceeded to other issues.

[19] R. Doc. 82 (18-7889).

[20] *Id.* at p. 10.

[21] *See id.*

[22] *See id.* The case management orders set deadlines only through the general causation trial.

Ida, and Plaintiffs' counsel contracting COVID-19, the parties jointly moved the district court seven times to extend the pretrial and trial deadlines for the trial on general causation, resulting in eight different versions of the case management order being entered.[23] Because of the requested continuances, the general causation trial was not held until dates in January and February 2022.[24]

Over nine days, the district court heard live testimony from thirteen witnesses, heard excerpts of the Rule 30(b)(6) depositions of corporate representatives for Waste Connections and Jefferson Parish, and admitted into evidence dozens of exhibits.[25] The parties filed their post-trial briefs in April 2022.[26] In November 2022, the district court entered its 46-page-long Findings of Fact and Conclusions of Law, in which it found general causation had been satisfied in both cases.[27]

After the district court issued its Findings of Fact and Conclusions of Law, the district court, in its discretion and in a diligent effort to move these actions toward resolution, determined that a trial of a set of *Addison* plaintiffs would provide the parties with helpful information to advance the

---

[23] R. Docs. 106 (Second CMO); 120 (Third CMO); 123 (Fourth CMO); 134 (Fifth CMO); 141 (Sixth CMO); 162 (Seventh CMO); and 224 (Amended Seventh CMO) (18-7889).
[24] R. Doc. 285 (18-7889).
[25] *See generally* R. Doc. 323 (18-7889).
[26] R. Docs. 265, 266 (18-7889).
[27] R. Doc. 323 (19-11133).

litigation toward settlement. With this in mind, the district court ordered the parties to draft a proposed case management order to govern the first *Addison* trial. The Court entered the Eighth Case Management Order drafted by the parties on April 17, 2023, outlining discovery, pretrial, and trial dates for a trial of the first set of *Addison* plaintiffs.[28]

Within the Eighth Case Management Order, the parties proposed that the *Ictech-Bendeck* Plaintiffs and Petitioners meet and confer at the close of discovery in the first *Addison* trial, on July 14, 2023, to discuss a proposed case management order for class certification in *Ictech-Bendeck*.[29] Subsequently, and to address Petitioners' concerns that the class certification hearing was being delayed "indefinitely,"[30] the undersigned suggested to the parties that they meet and confer on an earlier date, so the parties might simultaneously proceed with discovery related to the first *Addison* trial while also conducting discovery related to class certification in *Ictech-Bendeck*. All parties agreed, and the district court entered a Ninth

---

[28] R. Doc. 325 (18-7889). The group of *Addison* Plaintiffs represents individuals and families with a variety of backgrounds, locations around Jefferson Parish (East Bank and West Bank), and alleged symptoms, intended to provide the parties with helpful information on all types of Plaintiffs.

[29] *Id.*

[30] Clearly, the class certification hearing has not been indefinitely delayed, even prior to the Court entering the Ninth Case Management Order. Instead, as provided for in the Eighth Case Management Order, the parties were to propose a case management order for class certification after the close of discovery in the first *Addison* trial, *i.e.*, July 14, 2023.

Case Management Order on April 26, 2023.[31] The parties are now required to meet and confer regarding class certification on or before May 1, 2023, and to present a proposed case management order in *Ictech-Bendeck* to the district court on or before May 15, 2023.[32]

While the district court worked diligently to move these actions into the next phase of litigation, it was the parties—*and Petitioners in particular*—who further delayed forward progress. On December 13, 2022, Petitioners filed a motion to amend or correct the Findings of Fact and Conclusions of Law, which the district court denied on February 2, 2023.[33] Rather than working amicably with Plaintiffs toward reaching a joint proposed case management order for the first *Addison* trial, on January 17, 2023, Petitioners filed a motion to adopt their version of a proposed case management order, which the district court denied as premature.[34] Around the same time, Petitioners filed a motion to bifurcate the issues of specific causation and damages, and liability and allocation of fault in the first *Addison* trial.[35] The district court denied Petitioners' motion on February 28,

---

[31] R. Doc. 330 (Minute Entry); R. Doc. 331 (Ninth Case Management Order) (18-7889).
[32] To the extent Petitioners object to discovery proceeding as to both the first *Addison* trial and class certification in *Ictech-Bendeck* simultaneously, the Court notes Petitioners have a combined total of attorneys enrolled in the case in excess of twenty-eight.
[33] R. Doc. 286, 304 (18-7889).
[34] R. Docs. 295, 301 (18-7889)
[35] R. Doc. 303 (18-7889).

2023.[36] Finally, Petitioners filed a motion for summary judgment as to certain *Addison* plaintiffs, which the district court granted in part and denied in part, on April 12, 2023.[37]

Since the beginning of this litigation, the district court has held multiple motion hearings, entered lengthy Orders and Reasons, presided over a six-day bench trial on general causation, and conducted over 30 status conferences with the parties. Petitioners' implication that, over their objections, the district court has wrongfully delayed class certification for five years is without merit. Petitioners made no objection to the indefinite delay of class certification when Petitioners joined with Plaintiffs in initially requesting a one and a half-year discovery period before the trial on general causation. Nor did Petitioners raise any concerns about class certification timing when the parties requested two additional years of continuances for the trial on general causation, resulting in seven different case management orders. The parties—not the district court—have driven the delays in reaching the class certification hearing in *Ictech-Bendeck*,[38] and any

---

[36] R. Doc. 312 (18-7889).
[37] R. Docs. 345; 374 (19-11133).
[38] Moreover, the undersigned emphasizes that, to this day, a motion for class certification has not been filed, nor has any party requested the district court set a deadline for Plaintiffs to do so.

suggestion that the district court is not acting efficiently to move this case toward class certification is disingenuous.

Accordingly, Petitioners have failed to demonstrate the district court abused its discretion to such an extent that mandamus relief is appropriate on the basis of the timing of class certification. To the extent there is any issue with the district court's timing of the class certification hearing, it is addressed further as part of the undersigned's response to Petitioners' first question submitted for review, described below.

## II.     The district court did not abuse its discretion in ordering a merits trial in the *Addison* mass action to occur before a determination on class certification for the *Ictech-Bendeck* class action.

Petitioners argue the district court abused its discretion in ordering a merits trial in the *Addison* mass action to occur before a determination on class certification in the *Ictech-Bendeck* class action. However, Petitioners have failed to demonstrate that their right to the writ is clear and indisputable. Rather, Petitioners' second question raises matters of case management that fall within the undersigned's discretion to manage her docket and unsettled legal questions insufficient to rise to a clear and indisputable right to mandamus relief.

### a. The district court has inherent case management authority.

First, Petitioners have failed to demonstrate a clear and indisputable right to mandamus relief because the issues raised by Petitioners are committed to the inherent case management authority of the district court. For the Fifth Circuit to replace such discretion with its own, the district court must have exceeded its discretion "to such a degree that its actions amount to a usurpation of power."[39] That is simply not the case here. "Interlocutory procedural orders, particularly case management orders of the type at issue, rarely will satisfy this precondition for mandamus relief."[40] "Trial courts enjoy a broad measure of discretion in managing pretrial affairs."[41] Such decisions "are ordinarily left to the informed judgment of the district judge, who is in a unique position to gauge and balance the potentially conflicting interests at stake."[42] Mandamus relief is rarely appropriate when a district court is exercising its inherent case management authority.[43] In entering its Eighth Case Management Order, the district court carefully exercised its sound discretion and case management authority. While Petitioners disagree with the undersigned's choices in managing *Ictech-Bendeck* and *Addison*,

---

[39] *Volkswagen*, 545 F.3d at 312.
[40] *Recticel*, 859 F.2d at 1006.
[41] *Id.*
[42] *Id.*
[43] *Id.*

the case management strategy employed by the district court does not amount to a "clear and indisputable error" such that mandamus relief is appropriate.

### b. Petitioners have no legal basis to seek a writ of mandamus.

Second, the crux of Petitioners' petition is that the district court's Eighth Case Management Order violates Federal Rule of Civil Procedure 23's prohibition on one-way intervention. However, Petitioners have failed to cite even a single case squarely on point supporting their position. Petitioners have failed to demonstrate that their right to a writ is clear and indisputable based on a violation of Rule 23.

The Court finds it useful to briefly describe the two separate actions at issue here:

_Ictech-Bendeck v. Waste Connections Bayou, Inc., et al., 2:18-cv-07889-SM-MBN_

- On August 17, 2018, *Ictech-Bendeck v. Waste Connections Bayou, Inc., et al.* was removed to the United States District Court for the Eastern District of Louisiana.[44]
- *Ictech-Bendeck* is a consolidation of several class actions brought by five prospective class representatives, pursuant to Federal Rule of Civil Procedure 23(b).[45]
- While their amended complaint made claims for negligence, gross negligence, and premises liability as well, the *Ictech-Bendeck* Plaintiffs

---

[44] R. Doc. 1 (18-7889).
[45] R. Doc. 48 at p. 9 (18-7889).

have since clarified that they allege only a nuisance claim under Louisiana law against Petitioners.[46]

### _Addison v. Louisiana Regional Landfill Co., et al., 2:19-cv-11133-SM-MBN_

- *Addison v. Louisiana Regional Landfill Co., et al.* is a distinct consolidation of two separate mass actions brought in state court by roughly 500 plaintiffs.[47]
- *Addison* was removed to the Eastern District of Louisiana on June 10, 2019.[48]
- The *Addison* Plaintiffs allege negligence and nuisance claims under Louisiana law in their complaint.[49]

*Ictech-Bendeck* and *Addison* are not and have never been consolidated actions. They remain completely distinct actions, aside from the parties' agreement to try the issue of general causation in one bench trial.

Now, Petitioners argue allowing the *Addison* trial to proceed on the merits will allow the putative *Ictech-Bendeck* class members to impermissibly engage in one-way intervention by having the benefit of seeing the outcome of the *Addison* trial before deciding whether they will remain in the class, running afoul of Rule 23. In support, Petitioners argue "the Supreme Court and seven federal circuits have explained[] a trial before certification violates Rule 23's requirement of prompt certification

---

[46] R. Doc. 323 at p. 2 (19-11133).
[47] *Id.*
[48] R. Doc. 1 (19-11133).
[49] R. Doc. 323 at p. 2 (19-11133)

determinations and impedes judicial administration essential to due process."[50]

The undersigned acknowledges the general rule that, *within a class action*, a trial on the merits of the case held before certification violates Rule 23—a rule created to address one-way intervention. However, this rule fails to advance Petitioners' argument because the circuits holding that conducting a trial before class certification violates Rule 23 have done so *only* in the context of a trial on the merits of a claim made in a class action before certification of the class. Seemingly recognizing this, Petitioners argue Rule 23's "bar on trial before certification fully applies to closely related individual actions," not only within a single class action.[51]

In support of their argument, Petitioners cite to four cases.[52] However, none of the cases, even with a loose interpretation, *requires* a district court to hold a class certification hearing in a class action before a trial on the merits for any group of plaintiffs in a related mass action, the context of the cases *sub judice*. Only two of the cases cited by Petitioners even involve

---

[50] *Jefferson Parish*, No. 23-30243, R. Doc. 2-1 at p. 16.
[51] *Id.* at p. 31.
[52] *Id.*

separate actions at all—*In re Zetia (Ezentimibe) Antitrust Litigation* and *Byerson v. Equifax Information Services, LLC*.[53]

Petitioners rely on *In re Zetia*, a case in which the United State District Court for the Eastern District of Virginia held it would not rule on a motion for summary judgment pending in both a class action and a related individual action prior to class certification.[54] While *In re Zetia* does involve separate class and individual actions, it is clearly distinguishable from these cases. In *Zetia*, twenty cases from several jurisdictions were initially consolidated into one proceeding.[55] After the initial consolidation, most plaintiffs joined one of two proposed class actions, but several large pharmaceutical retailers continued to pursue claims individually while coordinating with the class plaintiffs.[56] One of the class actions was certified as a class by the district court, while a second motion for class certification (as to the second class action) remained pending.[57] The defendants then filed nearly identical motions for summary judgment in the two class actions and the individual action.[58]

---

[53] *In re Zetia (Ezentimibe) Antitrust Lit.*, MDL NO. 2:18-md-2836, 2021 WL 9870367 (E.D. Va. May 7, 2021); *Byerson v. Equifax Info. Servs., LLC*, No. 6:07-cv-00005-GRA, 2009 WL 82497 (D. S.C. Jan. 9, 2009).

[54] *Zetia*, MDL NO. 2:18-md-2836, 2021 WL 9870367, at *7.

[55] *Id.*

[56] *Id.*

[57] *Id.* at *2.

[58] *Id.*

After filing the motions for summary judgment, the defendants requested the district court refrain from ruling on the summary judgment motions in any of the three actions until after class certification in the remaining class action was resolved to avoid one-way intervention.[59] The district court determined it would not rule on the motions for summary judgment in the class actions, nor in the individual action, before class certification was decided.[60] The court reasoned that, although the individual action was not a class and was thus not subject to Rule 23, because the motions were based on the same theories and substantially the same experts, the court could not rule on dispositive motions with respect to the individual action without revealing to the classes how it would rule on their identical motions.[61]

*Zetia* is clearly distinguishable from the cases at bar. While a district court's ruling on an identical motion for summary judgment to be decided by the judge clearly invokes one-way intervention, the outcome of one jury's decision as to a small group of *Addison* plaintiffs, based on the facts established as to each individual's claims, is unlikely to influence potential class members and will provide little to no guidance as to the future outcome

---

[59] *Id.*
[60] *Id.* at *6.
[61] *Id.*

of either class certification or the merits of the *Ictech-Bendeck* plaintiffs' nuisance claims.

While *Byerson*, a decision from the United States District Court for the District of South Carolina, involved two separate actions, it likewise is wholly inapplicable.[62] In *Byerson*, a group of plaintiffs brought suit against several defendants.[63] After the plaintiffs took no action in the case for several years, the defendants filed a motion to dismiss for failure to prosecute.[64] In opposition, the plaintiffs argued they were waiting for the outcome of a separate and independent class action proceeding in another district.[65] Although the plaintiffs were not potential class members in the other district, the plaintiffs sought to delay prosecution of their case until the class action settled, because, they argued, the defendants "undoubtably will seek a settlement of all similar claims with as broad a release as they can possibly negotiate."[66] The district court dismissed the plaintiffs' claims for failure to prosecute, stating "they are not allowed to sit idly by, watch what happens, and then make a tactical decision to secure the benefits of the resolution of the earlier class action."[67] *Byerson* clearly is factually distinguishable. The

---

[62] *Byerson*, No. 6:07-cv-00005-GRA, 2009 WL 82497.
[63] *Id.* at *1.
[64] *Id.*
[65] *Id.* at *2.
[66] *Id.*
[67] *Id.*

*Addison* plaintiffs are not sitting idly by in these matters. Moreover, once again, Petitioners have failed to even attempt to explain how *Byerson* creates a clear and indisputable rule that the district court must proceed with class certification in *Ictech-Bendeck* before proceeding with the first *Addison* trial. *Byerson* is wholly devoid of a discussion about class certification and is irrelevant to the issues before the Court.

Petitioners rely on *In re Citizens Bank* and *In re Fibreboard Corporation*. [68] However, these cases involve claims brought in one complaint or cases brought separately but later consolidated, a distinguishable procedural posture that does not advance Petitioners' position.

---

[68] *In re Citizens Bank*, 15 F.4th 607 (3d Cir. 2021) (holding only that the petitioner had a reasonable probability of demonstrating clear and indisputable error where the district court ignored the Third Circuit's explicit direction to review class certification in a consolidated action, but refraining from "definitively resolv[ing] . . . whether [the district cout's] 'order of battle' violates Rule 23 or . . . whether there could be circumstances under which an FLSA trial might reasonably proceed prior to class certification in a parallel Rule 23 action"). In *Fibreboard Corp.*, the Fifth Circuit issued a writ of mandamus to suspend the class action portion of the trial for several reasons, including a finding that the class was improperly certified such that the findings with respect to 41 plaintiffs could not be extrapolated to the class as a whole. Nowhere in *Fibreboard Corp.* does the Fifth Circuit hold the trials could not occur prior to class certification. To the contrary, the Fifth Circuit approved of Phase I of the district court's plan—a merits trial as to the consolidated cases on the state-of-the-art defense and punitive damages, *i.e.*, a merits trial in the mass action before class certification. *Fibreboard Corp.*, 893 F.2d at 707 (holding a mass action in which the findings as to 41 plaintiffs are extrapolated to the class as a whole, where the question implicates individual issues, is not proper under Texas law, nor did the group qualify as a class).

In sum, to the extent Petitioners rely on *Zetia*, *Byerson*, *Citizens Bank*, and *Fibreboard Corp.* for the bright-line rule that a trial in *Addison* prior to class certification in *Ictech-Bendeck* is improper, Petitioners fail to carry their burden. The cases cited by Petitioners make clear that Petitioners cannot demonstrate the Eighth Case Management Order presents a clear and indisputable error. Instead, Petitioners merely seek to replace the sound judgment of the district court with their own judgment via a writ of mandamus, a strategy the Fifth Circuit should not entertain.

Petitioners' motivations in filing the instant petition are illuminated further by considering that Petitioners previously advocated for, consented to, and participated in a trial on general causation applying to both actions prior to class certification. The court held a trial on the issue of general causation in January and February 2022, the outcome of which binds all parties in both *Ictech-Bendeck* and *Addison*.  The outcome of the general causation trial will surely have a greater impact on an *Ictech-Bendeck* putative class member's choice to remain in or withdraw from the class action than a test trial of a handful of *Addison* plaintiffs. However, Petitioners raised no objection to this procedure, presumably because Petitioners hoped they would succeed in proving there is no general causation at the general causation trial, thereby ending both the *Addison*

mass action and the *Ictech-Bendeck* class action. Now—only upon failing to dispose of this case at the general causation stage—Petitioners raise the issues discussed above. The undersigned respectfully submits that Petitioners have waived this argument.

Having failed to cite to any binding or persuasive authority that provides that the district court *must* hold a class certification hearing in *Ictech-Bendeck* before holding a test trial in *Addison*, a writ of mandamus is certainly not an appropriate vehicle to resolve this unsettled area of the law. Because Petitioners have failed to demonstrate they have a clear and indisputable right to a writ of mandamus, the inquiry should end here—the petition must be denied.

## **CONCLUSION**

For the foregoing reasons, Petitioner's Petition for Writ of Mandamus should be denied.

Respectfully submitted,

_Susie Morgan_
Susie Morgan
United States District Judge
United States District Court
for the Eastern District of Louisiana
U.S. Courthouse, 500 Poydras Street
Room C322
New Orleans, Louisiana 70130
(504) 589-7535

19

## <u>CERTIFICATE OF SERVICE</u>

On April 26, 2023, the undersigned served the foregoing response on all parties by providing a copy to the Clerk of the United States Court of Appeals for the Fifth Circuit for filing into the CM/ECF Document Filing System.

*Susie Morgan*

_____

Susie Morgan
United States District Judge
United States District Court
for the Eastern District of Louisiana
U.S. Courthouse, 500 Poydras Street
Room C322
New Orleans, Louisiana 70130
(504) 589-7535

### **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned certifies that this response complies with the type-volume limitations of Federal Rules of Appellate Procedure 27(d) and 32(a)(5)-(6) because it is a paper produced by a computer containing 5,145 words, excluding the portions exempted by Rule 32(f), and because it has been prepared in a proportionally spaced face using Word software Georgia 14-point font in the text and Georgia 12-point font in the footnotes.

April 26, 2023.

_____
Susie Morgan
United States District Judge
United States District Court
for the Eastern District of Louisiana
U.S. Courthouse, 500 Poydras Street
Room C322
New Orleans, Louisiana 70130
(504) 589-7535

**From:** eFile-Morgan
**To:** Tina Flores
**Subject:** FW: 2:19-cv-11133-SM-MBN: Joint Status Report
**Date:** Monday, September 23, 2019 3:28:06 PM
**Attachments:** JPL-Proposed Joint Submission CMOs to Judge Morgan FINAL.pdf
image002.png

---

**From:** Nancy Mobley <nmobley@bradleyfirm.com>
**Sent:** Monday, September 23, 2019 11:59 AM
**To:** eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Cc:** 'Byron Forrest' <byron@fcjlaw.com>; David R. Taggart <dtaggart@bradleyfirm.com>; 'Eliza James' <eliza@fcjlaw.com>; James B. Slaughter <jslaughter@bdlaw.com>; John H. Paul <JPaul@bdlaw.com>; Katie Eikel <keikel@bradleyfirm.com>; 'Matthew Moghis' <moghis@connicklaw.com>; Megan R. Brillault <mbrillault@bdlaw.com>; Mike DiGiglia <mdigiglia@glllaw.com>; Mike Futrell <mfutrell@connicklaw.com>; Nancy Mobley <nmobley@bradleyfirm.com>; 'Neuman, Barry S.' <BNeuman@wtplaw.com>; 'Nicholas Cressy' <nicholas@fcjlaw.com>; Peter Connick <pconnick@connicklaw.com>; 'Snead, Adrian F.' <ASnead@wtplaw.com>; William Barousse <wbarousse@glllaw.com>; Michael C. Mims <mmims@bradleyfirm.com>; airpino@irpinolaw.com; angela@favretlaw.com; bruce@brucebetzer.com; bsergi@exnicioslaw.com; David R. Taggart <dtaggart@bradleyfirm.com>; dean@favretlaw.com; douglashammel@gmail.com; dsmith@eshortylawoffice.com; egieger@glllaw.com; eshorty@eshortylawoffice.com; freddiekingiii@yahoo.com; hharper@hlharperandassociates.com; jennifer@brucebetzer.com; jord@glllaw.com; lfavret@favretlaw.com; lhiggins@irpinolaw.com; lradcliff@exnicioslaw.com; maxtobias504@aol.com; probertson@irpinolaw.com; seth@favretlaw.com; trusso@favretlaw.com; Nancy Mobley <nmobley@bradleyfirm.com>
**Subject:** 2:19-cv-11133-SM-MBN: Joint Status Report

Dear Judge Morgan:

In accordance with the Court's Minute Entry dated September 11, 2019, record document number 67, enclosed is the joint letter setting out the positions of the parties to be presented and discussed at the September 25 status conference. We apologize for the unusual spacing and formatting of the letter, but the spacing was necessary for the full marginal comments to be readable.

Sincerely,

Nancy W. Mobley
*Assistant to David R. Taggart and*
*Stephen C. Fortson*

BRADLEYMURCHISON
KELLY & SHEA LLC

401 Edwards Street, Suite 1000
Shreveport, LA 71101-5529

Reception: Ninth Floor
Telephone: (318) 227-1131
Direct: (318) 934-4039
Fax: (318) 227-1141
nmobley@bradleyfirm.com
bradleyfirm.com

Shreveport | New Orleans | Baton Rouge

September 23, 2019

**VIA PDF EMAIL:  efile-Morgan@laed.uscourts.gov**
Honorable Susie Morgan
United States District Court for the Eastern District of Louisiana
500 Poydras Street
Room C322
New Orleans, LA  70130

> Re:     *Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc., et al.*, No. 18-7889; c/w No. 18-8071, No. 18-8218, and No. 18-9312 Section "E" 5, United States District Court for the Eastern District of Louisiana
>
> and
>
> *Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al.,* No. 19-11133, Section "E" 5, United States District Court for the Eastern District of Louisiana

Dear Judge Morgan:

Pursuant to the Court's Minute Entry dated September 10, 2019 (ECF Doc. #71), the Parties[1] submit this letter setting out the status of the Parties' discussions on the following issues concerning the General Causation phase of this litigation. [2] The Parties have met and conferred at length and on numerous occasions, both telephonically and by email, and believe they have made significant progress on the case management issues for this phase.  The Parties have noted below the issues that require further discussion and guidance from the Court.  For the convenience of the Court and the Parties, we have set forth below certain sections which are highlighted.  Those highlighted in blue are merely time placeholders based on the issuance by the Court of the

---

[1] The Parties herein are all of the *Addison* Plaintiffs, Elias Jorge Ictech-Bendeck, Savannah Thompson, Larry Bernard, Sr. and Mona Bernard, Nicole M. Landry-Boudreaux, Waste Connections Bayou, Inc., Waste Connections US, Inc., Louisiana Regional Landfill Company, Aptim Corp., and the Parish of Jefferson.
[2] Litigation refers to the actions entitled *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, No. 18-cv-7889, and *Addison v. Louisiana Regional Landfill Company*, No. 19-cv-11133.

Honorable Susie Morgan
September 23, 2019
Page 2

Consolidated Case Management Order ("CMO") to govern both the General Causation phase of the Addison consolidated matters and the Ictech-Bendeck consolidated class actions. Those sections which are highlighted in yellow are provisions to which the Parties could not agree and for each such yellow highlighted provision there is a corresponding marginal comment bubble that contains a synopsis of the Plaintiffs' Position and the Defense Position. These synopses will help facilitate the discussion with the Court on Wednesday.

**A.** **Site Inspection Protocol**

The Parties and their respective expert witnesses have worked to prepare a Protocol for the joint inspection of the Jefferson Parish Landfill for the Court-ordered dates of October 16-20, 2019. The Parties have agreed that two representatives of the Plaintiffs will be allowed to do a visual inspection of the Jefferson Parish Landfill on the morning of Tuesday September 24th after which it is anticipated that the Parties will be able to finalize the Protocol in sufficient time to allow the Defendants' experts to prepare for the site inspection.

**B.** **Production of General Causation Documents**

1. On or before [30 days after entry of the CMO], Defendants shall produce the following: all non-privileged General Causation Documents (paper records and loose electronic documents, which excludes emails and attachments; all other ESI discovery to be deferred until after the conclusion of this General Causation phase) that are in Defendants' possession, custody or control and related to the Jefferson Parish Landfill from (except as specifically noted otherwise) January 1, 2016 through the most current period for which such documents are available. For purposes of this

**Comment [DRT1]:** Defense Position: For the purposes of the General Causation Phase it is the Defense position that the document production to Plaintiffs, and the document production to Defendants, will not involve the ESI discovery that will follow after the conclusion of the General Causation phase and entry into the Specific Causation phase.

**Comment [NBS2]:** Plaintiffs' Position: Plaintiffs object to the limitation set out in the parenthetical. Many of the documents defendants have agreed to provide in the list below will have been transmitted electronically along with explanation and commentary, all of which should be provided. For example, the explanation and commentary may refer to issues known to the defendants that are not shown by the particular data, or consideration of additional issues to place the data in context.

Defendants' principal objections are to communications, which will provide evidence of the defendants recognition of the problem, discussions of the causes of the problems, and discussions between the defendants as to who is at fault, all of which relates to general causation. See discussion of document categories (l) through (0) below.

**Comment [DRT3]:** Defense Position: The Plaintiffs want to establish the general time frame for the General Causation phase from January 1, 2015 while the Defendants believe that January 1, 2017 (18 months prior to the alleged public notice upon which Plaintiffs base their claims. Plaintiffs insist, without explanation that the documents needed to establish General Causation must be produced from January 1, 2015, 3 ½ years before the alleged public notice. Plaintiffs rejected the proposed compromise offer of January 1, 2016.

**Comment [NBS4]:** Plaintiffs' Position: Plaintiffs initially proposed January 1, 2000. January 1, 2015 is in in fact Plaintiffs' compromise position. Production of this additional year of "baseline" information is not unduly burdensome. The more baseline information that is produced, the better Plaintiffs will be able to compare and understand more recent information.

Honorable Susie Morgan
September 23, 2019
Page 3

Order "General Causation" refers to information as to: (i) what was disposed at the Landfill; (ii) what is emitted from the Landfill (in terms of both chemical constituents and odor); (iii) in what concentrations each parameter emitted by the Landfill is experienced at the locations within the area at which Plaintiffs reside in both the *Addison* and *Ictech-Bendeck* consolidated cases (the "Exposed Area"); (iv) the dates and times when such exposures occurred and the duration of such exposures throughout the Exposed Area, which may be estimated based on air dispersion modeling (v) the alleged physical injury and property damages that such exposure at such concentration for such durations can cause to people and property so exposed; and (vi) alleged physical injury and property damages potentially caused by odors and chemicals emitted by other sources located in or around the Exposed Area.

Categories of non-privileged documents that pertain to General Causation which shall be produced by the Defendants to the extent that such documents are in the possession, custody or control of the Defendants are:

a. Indoor and outdoor air monitoring data related to the Jefferson Parish Landfill;
b. Other sources of odors and emissions located in or around the Exposed Area that have potentially impacted plaintiffs;
c. Reports submitted to the government agencies regarding the Jefferson Parish Landfill;
d. Health and environmental impact assessments and related documents regarding the Jefferson Parish Landfill, including any reports and information concerning the impact or potential impact of landfill gases or other releases from the Landfill on Landfill employees, contractors or other persons who work on or enter the Landfill site;

3

**Comment [DRT5]:** Defense Position: Defendants agree as to specific causation but since this CMO also covers the putative class it must be broader than just the Addison plaintiffs.

**Comment [NBS6]:** Plaintiffs' Position: General Causation requires only that Plaintiffs show the exposure levels and duration across the Exposed Area without tying data to specific Plaintiffs.

**Comment [DRT7]:** Defense Position: If Plaintiffs possess information concerning other sources and emissions from other sources, such documents should be produced. Information regarding other sources of odor is relevant to general causation because other sources could impact odor plumes that are allegedly emanating from the Jefferson Parish Landfill, including the two landfills immediately adjacent to the Jefferson Parish Landfill.

**Comment [NBS8]:** Plaintiffs Position: Plaintiffs object to subpart (f). Other sources are irrelevant to the issue of General Causation, which involves whether or not emissions from the Landfill can cause certain types of injuries. Whether the Landfill emissions did cause injuries in this case and potential causation from other sources relate to specific causation and damages, which will be addressed in a later phase of the case.

**Comment [DRT9]:** Defense Position: If Plaintiffs possess information concerning other sources and emissions from other sources, such documents should be produced. Information regarding other sources of odor is relevant to general causation because other sources could impact odor plumes that are allegedly emanating from the Jefferson Parish Landfill, including the two landfills immediately adjacent to the Jefferson Parish Landfill.

**Comment [NBS10]:** Plaintiffs Position: This provision was included in Defendants' original list of what they propose to provide. That Defendants are willing to provide such information is not a compelling reason to require Plaintiffs to undertake to produce documents that are not relevant to the issue of General Causation.

Honorable Susie Morgan
September 23, 2019
Page 4

    e.   Scientific and technical reports related to emissions or odors from the Jefferson Parish Landfill, including laboratory backup;[3]

    f.   Waste disposal records of the Jefferson Parish Landfill. This includes without limitation Landfill logs, shipping manifests and other contemporaneous documentation as to the type, characteristics and volumes of waste delivered to and disposed at the Landfill since January 1, 2015;

    g.   Data, studies and reports (including laboratory backup) pertaining to the chemical composition and characteristics of gases and odors emitted by the Jefferson Parish Landfill. This includes without limitation any data collected or provided to potential third party purchasers of Landfill gas, at any time. It also includes all surface emissions monitoring data and reports concerning gases and odors at or from the Landfill, and all laboratory backup pertaining to these reports and studies;

    h.   Documents showing the nature, composition and constituents, including concentrations and laboratory backup, of gases fed into the flare system;

    i.   Documents showing the nature, composition and constituents, including concentrations and laboratory backup, of gases emitted by the flare system;

    j.   Photographs of the Landfill site taken through use of a FLIR camera or similar instruments; and

    k.   Data, studies and reports (including laboratory backup) pertaining to the chemical composition and characteristics of Landfill Leachate and emissions of chemicals or odors caused by Landfill Leachate. This includes without limitation any chemical analyses of the Leachate conducted by or for any publicly owned treatment plants and any actual or potential purchasers of Leachate within the relevant time period.

    l.   Non-privileged internal communications within, between or among the defendants and any of their employees, principals or elected officials concerning General Causation.

    m.   Communications between any of the defendants and any regulatory authority pertaining to General Causation.

    n.   Non-privileged communications between any defendant and any third party pertaining to General Causation.

    o.   Documents underlying or relied on by and Jefferson Parish council member or representative in connection with any public statements pertaining to General Causation.

**Comment [DRT11]:** Defense Position: Defendants object to these categories of documents as relevant and necessary for the General Causation phase. While such communications may be relevant to Specific Causation, these documents cannot be relevant to whether Plaintiffs can establish General Causation for emissions and concentrations from the Jefferson Parish Landfill. It is further Defendants' position that this level of discovery is not proportional to the General Causation phase as set forth in *Acuna* and pursuant to Fed. R. Civ. P. 26(b)(1)..

**Comment [NBS12]:** Plaintiffs' Position: The information requested is potentially highly relevant and important to the issue of General Causation. For example, any documents underlying public statements by Parish officials to the effect that the Landfill's emissions have caused unacceptable odors in the community, or by State Department of Health personnel to the effect that persons with respiratory illnesses should leave the area when the Odors are experienced at a "high level" (see, e.g., Addison Complaint, ¶¶ 10-13), are directly relevant to General Causation. See also Plaintiffs' comments concerning "ESI" above.

---

[3] Excludes work performed by consulting experts.

4

Honorable Susie Morgan
September 23, 2019
Page 5

For any document or portion of any document generated prior to the initiation of this

litigation as to which a privilege is asserted, Defendants shall produce a privilege log

in accordance with Fed. R. Civ. P. 26(b)(5)(A)(2) within 60 days of the completion of

the production of the documents.

> **Comment [DRT13]:** Defense Position: Defendants request 60 days after completion of document production to provide a compliant privilege log. Plaintiffs' demand that it be produced within 30 days.

> **Comment [NBS14]:** Plaintiffs' Position: Plaintiffs believe that 30 days after production provides sufficient time. Moreover, given the time frames for producing their expert reports, Plaintiffs will need an opportunity to review and, if necessary contest Defendants' withholding of specific documents in a timely manner in order to ensure timely completion and expert reports.

2. On or before [30 days after entry of the CMO], Plaintiffs shall produce to Defendants

all non-privileged data, reports, and documents concerning all sampling or monitoring

previously conducted by or on behalf of any Plaintiff at (i) each of their respective

properties that they claim have been damaged, (ii) any other location that forms the

basis of Plaintiffs' claims that they are exposed to odor(s) or chemical(s) allegedly

emanating from the Jefferson Parish Landfill; (iii) any location in Jefferson Parish

5

Honorable Susie Morgan
September 23, 2019
Page 6

other than the Jefferson Parish Landfill and (iv) any other data or information pertaining to alleged property damages suffered at such locations.

**Comment [DRT15]:** Defense Position: If Plaintiffs possess information concerning other sources and emissions from other sources, such documents should be produced. Information regarding other sources of odor is relevant to general causation because other sources could impact odor plumes that are allegedly emanating from the Jefferson Parish Landfill, including the two landfills immediately adjacent to the Jefferson Parish Landfill.

**Comment [NBS16]:** Plaintiffs' Position: See comment above. Plaintiffs' air dispersion modeling inherently will identify the impacts of the Landfill to the exclusion of other potential sources, and the issue of General Causation as it pertains to the Landfill requires no more.

**Comment [NBS17]:** Plaintiffs' Position: See comment above. Plaintiffs' air dispersion modeling inherently will identify the impacts of the Landfill to the exclusion of other potential sources, and Plaintiffs do not have the burden to prove or exclude other sources.

**Comment [DRT18]:** Defense Position: As part of Plaintiffs General Causation case, if any Plaintiffs claim property damages, then the Defendants expect the Plaintiffs to state the categories of property damage claimed (i.e., peeling paint, diminution in value due to odors, etc.) and then to establish that the emissions from the Jefferson Parish Landfill in the concentrations and times can cause such property damages to a reasonable scientific certainty. Defendants recognize and agree that (i) Plaintiffs do not need to identify which Plaintiff claims the specific property damage at this time and (ii) that the specific amount of damages for each Plaintiff's property damages is reserved to Specific Causation.

**Comment [NBS19]:** This is not the same issue. This requires property-specific evidence of property damage, which is not required for General Causation.

6

Honorable Susie Morgan
September 23, 2019
Page 7

3.  For any document or portion of any document generated prior to the initiation of this litigation as to which a privilege is asserted, Plaintiffs shall produce a privilege log in accordance with Fed. R. Civ. P. 26(b)(5)(A)(2) within 60 days from the date of completion of the production of documents.

> **Comment [DRT20]:** Defendants' Position: The parties dispute the timing. This is the same issue on the period of time for which the producing party must supply a privilege log referenced above.

> **Comment [NBS21]:** Plaintiffs' Position: Plaintiffs are prepared to produce privilege log within 30 days after production, as we propose for the Defendants above.

4.  The Parties agree that the non-privileged data, reports and other documents concerning the sampling and monitoring performed on the Jefferson Parish Landfill (scheduled for October 16-20) by the respective experts of the Parties shall be exchanged within 30 days of the receipt of the laboratory results of such samples (i.e., the source data).

5.  The Parties are negotiating a document and electronically stored information ("ESI") production protocol, and expect to have an agreed upon protocol to be submitted to the Court on or before September 30, 2019. The protocol will govern the production of documents and ESI throughout the entirety of the litigation.

Honorable Susie Morgan
September 23, 2019
Page 8

**C.**   **Expert Deadlines**

1.  On or before March 15, 2020, Plaintiffs shall produce to Defendants a report from

    qualified expert(s) that will:

> **Comment [NBS22]:** Plaintiffs' Position: Plaintiffs contend that they may need a few fact depositions prior to rendition of their expert reports. For example, in order for Plaintiffs' experts to adequately take account of various information or reports produced by Defendants, clarification or explanation may be required as to certain details or other matters contained in Defendants' documents. Plaintiffs therefore propose inserting a general caveat stating that the March 15 deadline is subject to the Court granting a motion for fact discovery which shall occur prior to the submission of Plaintiffs' expert reports, and in the event such fact discovery is granted the deadline for submission of Plaintiffs' expert reports shall be adjusted as appropriate.
>
> Ictech-Bendeck et al Plaintiffs contend that the CMO should provide that they may take fact depositions so as to legally establish basic facts such as ownership and operation of the JP Landfill, timing and content of contractual relationships between the parties, nature of relationships between defendants and any third parties performing site inspections, admissions against interest, etc., and that said depositions occur within 75 days of the date of defendants' document production.

> **Comment [DRT23]:** Defense Position:  The General Causation phase is limited to the production of documents described above and expert discovery for Plaintiffs to establish General Causation of the claimed injuries from the Jefferson Parish Landfill and no other source.  Allowing fact depositions now will likely result in multiple depositions of the same witnesses in later phases of the litigation. Moreover, fact depositions should be reserved until Plaintiffs complete their efforts to establish General Causation, all *Daubert* hearings are concluded and any motions for summary judgment following the General Causation phase are decided.

A.  Present the air dispersion modeling performed with regard to the Jefferson Parish

    Landfill along with all assumptions, data inputs and data outputs to allow for the

    duplication and reproduction of the Plaintiffs' air dispersion modeling results by

    Defendants' experts in electronic data format for use with the air dispersion

8

Honorable Susie Morgan
September 23, 2019
Page 9

modeling programs used by Plaintiffs' experts which Plaintiffs shall disclose to Defendants;

B.  Identify the individual chemicals to which plaintiffs have been exposed as a result of emissions from the Jefferson Parish Landfill, the concentrations of the chemicals, when such exposures occurred and the duration of such exposures (in such time increments as are accurately derived from the modeling and chemical analysis) during the period of time for which plaintiffs seek damages;

C.  Identify the aspects of odor (e.g., odor strength and odor characterization) as a result of emissions from the Jefferson Parish Landfill, the duration of such exposures (in such time increments as are accurately derived from the modeling and chemical analysis) and the period of time for which plaintiffs seek damages on account of odor;

D.  List all injuries, illnesses, or conditions that each Plaintiff claims are caused by an alleged exposure to odor(s) or chemical(s) experienced within the Exposed Area and allegedly emanating from the Jefferson Parish Landfill and not one of the other sources of odor(s) or chemical(s) in the area;

**Comment [DRT24]:** Defense Position: Defendants are requesting that the modeling and data inputs and outputs be produced in electronic format, which is the format that the experts have the data in, so it should not be unduly burdensome. As air dispersion modeling can involve multiple software programs to generate results, Defendants want the input as well as the output from any and all such programs and not merely the final output data used in the dispersion modeling. Defendants also need to know what programs were specifically used by Plaintiffs' experts.

**Comment [NBS25]:** Plaintiffs' Position: Our obligation is to provide an appropriate expert report in conformance with Rule 26. Plaintiffs do not believe it appropriate to attempt to specify here specific backup that their experts must produce. In this regard, Defendants provide no such specificity with respect to the contents of their own expert reports.

**Comment [NBS26]:** Plaintiffs' Position: It is neither relevant to the issue of General Causation, nor appropriate at this juncture, to require individual Plaintiffs to identify (and limit themselves) to specific harms that the Landfill may have caused each of them. Internal investigation concerning the medical conditions and specific harms suffered by each individual Plaintiff is not yet complete, and in any event is not relevant to the issue of General Causation. Plaintiffs should also have the right to claim any additional, presently unknown impacts that the General Causation evidence may demonstrate to be possible.

**Comment [DRT27]:** Defense Position: Defendants contend that part of Plaintiffs' General Causation burden of proof is to provide a global list of the categories of illnesses, injuries or conditions claimed by Plaintiffs, i.e., asthma, COPD, skin rashes, etc. The Plaintiffs then must establish that the emissions from the Jefferson Parish Landfill in the amounts, concentrations and times can cause each injury to a reasonable scientific certainty.
Defendants do not contend that during this phase, Plaintiffs must identify which particular Plaintiff is claiming which particular injuries/conditions.

9

Honorable Susie Morgan
September 23, 2019
Page 10

    E.  Provide expert opinions as to the physical and medical effects, injury and harm, including property damage, that the specified chemicals and odors can cause at the range of concentrations and durations reported or represented throughout the Exposed Area by plaintiffs' air modeling.

    F.  Provide the data and evidence, if any, other than the air dispersion modeling, supporting the contention that the source of the odor(s) or chemical(s) allegedly causing each injury, illness, or condition alleged by each Plaintiff solely originated from the Jefferson Parish Landfill and not any other sources of odor(s) or chemical(s) located in or around the Exposed Area.

2.  On or before [90 days after the receipt of the Plaintiffs' expert reports], Defendants shall produce to Plaintiffs any rebuttal reports from any qualified experts setting forth their opinions and stating the factual, scientific, medical, or technical basis for the expert's opinions and all documents and data considered in rendering such opinions.

3.  On or before [45 days from the receipt of the Defendants' expert reports], Plaintiffs shall produce to Defendants any reply reports from their experts setting forth their opinions and stating the scientific or technical basis for the expert's opinions and all documents and data considered in rendering such opinions. For reply expert reports prepared by experts not previously disclosed by Plaintiffs, Defendants reserve the right to file rebuttal reports to those expert reply reports.

For the 75 day period following the submission of the Plaintiffs' rebuttal expert reports all depositions of all experts shall be taken by the Parties desiring to take any such depositions.

10

**Comment [DRT28]:** Joint Comment: The Parties disagree on whether this should be produced. This is the general question of whether Plaintiffs must establish General Causation as to property damage referenced above.

**Comment [NBS29]:** Plaintiffs Position: Defendants' language, as phrased, would require plaintiff-specific information which is not required or appropriate at the General Causation stage. Our proposed revised language provides the appropriate scope of information.

**Comment [DRT30]:** Defense Position: Defendants contend that to establish General Causation for the injuries, as physical or property, alleged by Plaintiffs from the Jefferson Parish Landfill it is part of the Plaintiffs' burden of proof to establish that the Jefferson Parish Landfill is the sole and the proximate cause of such injuries and that part of that burden of proof by Plaintiffs involves a showing that such injuries could not have been caused by any other sources.

**Comment [NBS31]:** Plaintiffs' Position: See previous comments concerning this issue. The air dispersion modeling inherently is focused exclusively on the impacts of the Landfill. Plaintiff has no burden to prove or disprove contributions from other sources.

Honorable Susie Morgan
September 23, 2019
Page 11

**D.**     *Daubert* **Motions and Hearings**

    1.  Within 30 days after the completion of the expert depositions, the Court will schedule a Status Conference to discuss the need, if any, for a trial on a) the *Daubert* Motions or b) in the event no *Daubert* motions are to be filed, then scheduling the trial on the merits of General Causation, including addressing any outstanding discovery issues and a schedule for the exchange of pre-trial disclosures related to the issue of General Causation.

    2.  On or before [30 days after conclusion of the Status Conference], the Parties shall file any *Daubert* motions and/or motions in limine and a *Daubert* hearing in accordance with the schedule set by the Court.  Opposition briefs to any motions shall be due within 30 days from the filing of the motion and reply briefs shall be allowed if filed within 21 days of the filing of the opposition.  No further briefing is allowed without leave of court.

**E.**     **Trial on General Causation**

    1.  All Parties consent to the Court serving as trier of fact on the issue of General Causation.

Honorable Susie Morgan
September 23, 2019
Page 12

                         Respectfully submitted,

                         BRADLEY MURCHISON KELLY & SHEA LLC


                         By:    /s/ David R. Taggart
                                David R. Taggart
                                Louisiana Bar Roll No. 12626
                                401 Edwards Street, Suite 1000
                                Shreveport, Louisiana 71101
                                Telephone: (318) 227-1131
                                Facsimile: (318) 227-1141

                                Michael C. Mims
                                Louisiana Bar Roll No. 33991
                                1100 Poydras Street, Suite 2700
                                New Orleans, Louisiana 70163
                                Telephone: (504) 596-6300
                                Facsimile: (504) 596-6301

                                BEVERIDGE & DIAMOND, P.C.

                                Megan R. Brillault (*pro hac vice*)
                                Michael G. Murphy (*pro hac vice*)
                                John H. Paul (*pro hac vice*)
                                477 Madison Avenue, 15th Floor
                                New York, NY 10022
                                (212) 702-5400

                                James B. Slaughter (*pro hac vice*)
                                1350 I Street, N.W., Suite 700
                                Washington, DC 20005
                                (202) 789-6000

                         Counsel for Defendants, Louisiana Regional
                         Landfill Company, Waste Connections Bayou, Inc.,
                         and Waste Connections US, Inc.

                                      12

Honorable Susie Morgan
September 23, 2019
Page 13

CONNICK AND CONNICK, LLC


By: /s/ Michael S. Futrell
      William P. Connick, La. Bar No. 14158
      Michael S. Futrell, La. Bar No. 20819
      Matthew D. Moghis, La. Bar. No. 33994
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002
Telephone:    (504) 681-6658
Facsimile:    (504) 838-9903
Counsel for Defendant, Jefferson Parish

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:  /s/  William A. Barousse
      Ernest P. Gieger, Jr., La. Bar No. 6154
      William A. Barousse, La. Bar No. 29748
      J. Michael DiGiglia, La. Bar No. 24378
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone:    (504) 561-0400
Facsimile:    (504) 561-1011

Counsel for Defendant, Aptim, Corp.

WHITEFORD TAYLOR PRESTON, LLP

By:    /s/ Barry S. Neuman
C. Allen Foster (Admitted *Pro Hac Vice* In State
Court, EDLA *Pro Hac Vice* to be submitted.)
Barry S. Neuman (Admitted *Pro Hac Vice*)
Eric C. Rowe (Admitted *Pro Hac Vice*) Erik
Bolog (*Pro Hac Vice* Submitted)
Adrian Snead (Admitted *Pro Hac Vice)*
1800 M Street, NW Suite
450N

Washington, DC 20036

Telephone:    (202) 659.6800

Counsel for Plaintiffs, Frederick Addison, et al.

Honorable Susie Morgan
September 23, 2019
Page 14

LISKA, EXNICIOS & NUNGESSER

By: ___/s/ Val P. Exnicios_____
Val Patrick Exnicios, TA (LA Bar #19563)
Hon. Max N. Tobias, Jr. (LA Bar # 12837)
Frances Lacy Radcliff (LA Bar #38061)
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

Counsel for Plaintiffs, Elias Jorge "George" Ictech-
Bendeck, et al.


cc:    via PDF email to all counsel of record