

**Dykema Gossett PLLC**
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, TX 75201
WWW.DYKEMA.COM
Tel:  (214) 462-6400
Fax: (214) 462-6401

**David J. Schenck**
Direct Dial: (214) 698-7892
Direct Fax: (855) 455-7186
Email: DSchenck@dykema.com

July  10, 2023

Hon. Whitney Jett
Office of the Clerk
United States Court of Appeals
Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA  70130-3408

Re:    Case No. 23-30243; *In re: Jefferson Parish, et al.*

Dear Ms. Jett:

Attached for filing in this matter is Volume 4 of the Appendix to the Petition for Writ of Mandamus which was inadvertently omitted from our original filing on April 17, 2023. This case is set for Oral Argument on Wednesday, July 12, 2023.  There are citations in the petition and the reply which relate to the contents of Volume 4.  We apologize for this inadvertent omission.

Thank you for your assistance with this matter.

Sincerely,

**Dykema Gossett PLLC**

*/s/  David J. Schenck*

David J. Schenck

## No. 23-_____

# United States Court of Appeals for the Fifth Circuit

**Jefferson Parish,** *et al.*

Petitioners

_____

On Petition for Writ of Mandamus to the United States District Court
for the Eastern District of Louisiana
Case No. 18-cv-7889
consolidated with 18-cv-8071,
18-cv-8218, and 18-cv-9312

Case No. 19-cv-11133
Consolidated with 19-cv-14512

_____

**PETITIONERS' APPENDIX TO PETITION FOR WRIT OF MANDAMUS
VOLUME IV OF IV [App. 508 to 583]**

_____

# TABLE OF CONTENTS

Volume I

1.  Consolidated Class Action Complaint, dated April 10, 2019 (*Ictech-Bendeck* Dkt. No. 48) [App. 1–13]

2.  First Amended and Supplemental Omnibus Complaint, dated July 14, 2020 (*Addison* Dkt. No. 109) [App. 14–99]

3.  First Case Management Order, dated November 5, 2019 (*Ictech-Bendeck* Dkt. No. 82) (*Addison* Dkt. No. 80)[1] [App. 100–109]

4.  Findings of Fact and Conclusion of Law on General Causation, dated November 29, 2022 (*Ictech-Bendeck* Dkt. No. 285) (*Addison* Dkt. No. 323) [App. 110–155]

5.  Minute Entry for December 16, 2022 Status Conference Proceedings, dated December 16, 2022 (*Ictech-Bendeck* Dkt. No. 287) (*Addison* Dkt. No. 325) [App. 156–158]

6.  Defendants' Motion to Adopt Case Management Order, dated January 17, 2023 (*Ictech-Bendeck* Dkt. No. 295) (*Addison* Dkt. No. 331) [App. 159–162]

7.  Declaration of M. Mims in Support of Defendants' Motion to Adopt Case Management Order, dated January 17, 2023 (*Ictech-Bendeck* Dkt. No. 295-3) (*Addison* Dkt. No. 331-3) [App. 163–165]

8.  Memorandum in Support of Defendants' Motion to Adopt Case Management Order, dated January 17, 2023 (*Ictech-Bendeck* Dkt. No. 295-2) (*Addison* Dkt. No. 331-2) [App. 166–196]

9.  Exhibits 1-8 to Defendants' Motion to Adopt Case Management Order, dated January 17, 2023 (*Ictech-Bendeck* Dkt. Nos. 295-4 – 295-11) (*Addison* Dkt. Nos. 331-4 – 331-11) [App. 197–345]

---

[1] Where identical documents were filed in both actions, only the *Ictech-Bendeck*-filed document is included in this Appendix.

Volume II

10.  Exhibits 9-10 to Defendants' Motion to Adopt Case Management Order,
     dated January 17, 2023 (*Ictech-Bendeck* Dkt. Nos. 295-12 – 295-13) (*Addison*
     Dkt. Nos. 331-12 – 331-13) [App. 346–364]

11.  Minute Entry Submitting to Court Defendants' Motion to Certify Order and
     Interlocutory Appeal, dated January 19, 2023 (*Ictech-Bendeck* Dkt. No. 299)
     (*Addison* Dkt. No. 335) [App. 365–366]

12.  Minute Entry Denying Motion to Adopt Case Management Order, dated
     January 20, 2023 (*Ictech-Bendeck* Dkt. No. 301) (*Addison* Dkt. No. 336) [App.
     367–369]

13.  Minute Entry for February 3, 2023 Status Conference Proceedings, dated
     February 7, 2023 (*Ictech-Bendeck* Dkt. No. 305) (*Addison* Dkt. No. 340) [App.
     370–373]

14.  Defendants' Motion to Bifurcate, dated February 2, 2023 (*Ictech-Bendeck* Dkt.
     No. 303) (*Addison* Dkt. No. 338) [App. 374–377]

15.  Memorandum in Support of Defendants' Motion to Bifurcate, dated
     February 2, 2023 (*Ictech-Bendeck* Dkt. No. 303-1) (*Addison* Dkt. No. 338-1)
     [App. 378–396]

16.  *Ictech-Bendeck* Plaintiffs' Opposition to Defendants' Motion to Bifurcate, dated
     February 10, 2023 (*Ictech-Bendeck* Dkt. No. 307) [App. 397– 404]

17.  *Addison* Plaintiffs' Opposition to Defendants' Motion to Bifurcate, dated
     February 10, 2023 (*Addison* Dkt. No. 342) [App. 405 – 428]

Volume III

18.  Exhibits 1-4 to *Addison* Plaintiffs' Opposition to Defendants' Motion to
     Bifurcate, dated February 10, 2023 (*Addison* Dkt. Nos. 342-1 – 342-7) [App.
     429 – 507]

Volume IV

19. Exhibits 5-7 to *Addison* Plaintiffs' Opposition to Defendants' Motion to Bifurcate, dated February 10, 2023 (*Addison* Dkt. Nos. 342-1 – 342-7) [App. 508 – 520]

20. Defendants' Motion for Leave to File Supplemental Memorandum in Support of Defendants' Motion to Bifurcate, dated February 9, 2023 (*Ictech-Bendeck* Dkt. No. 306) (*Addison* Dkt. No. 341) [App. 521 – 524]

21. Supplemental Memorandum in Support of Defendants' Motion to Bifurcate, dated February 14, 2023 (*Ictech-Bendeck* Dkt. No. 309) (*Addison* Dkt. No. 344) [App. 525 – 532]

22. Minute Entry for February 24, 2023 Status Conference Proceedings, dated February 27, 2023 (*Ictech-Bendeck* Dkt. No. 311) (*Addison* Dkt. No. 351) [App. 533 – 536]

23. Order Denying Motion to Bifurcate, dated February 28, 2023 (*Ictech-Bendeck* Dkt. No. 312) (*Addison* Dkt. No. 352) [App. 537 – 544]

24. Minute Entry for March 21, 2023 Status Conference, dated March 21, 2023 (*Ictech-Bendeck* Dkt. No. 317) (*Addison* Dkt. No. 366) [App. 545 – 546]

25. Minute Entry for March 31, 2023 Status Conference, dated March 31, 2023 (*Ictech-Bendeck* Dkt. No. 319) (*Addison* Dkt. No. 369) [App. 547 – 549]

26. Minute Entry for April 6, 2023 Status Conference, dated April 6, 2023 (*Ictech-Bendeck* Dkt. No. 321) (*Addison* Dkt. No. 371) [App. 550 – 552]

27. Order and Reasons Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, dated April 12, 2023 (*Addison* Dkt. No. 374) [App. 553 – 558]

28. Correspondence with district court regarding requests for court reporter, various dates [App. 559 – 566]

29. Eighth Case Management Order, dated April 17, 2023 (*Ictech-Bendeck* Dkt. No. 325) (*Addison* Dkt. No. 378) [App. 567 – 583]

## FW: Acceptance of Industrial Liquid Wastes

| | |
|---|---|
| From: | Rick Buller <RBuller@jeffparish.net> |
| To: | Brett O'Connor <BrettO@WasteConnections.com> |
| Cc: | Dawn Thibodaux <dawn.thibodaux@wasteconnections.com>, Rickie Falgoust (rickie.falgoust@wasteconnections.com) <rickie.falgoust@wasteconnections.com>, Chris Ruane <Christopher.Ruane@WasteConnections.com>, Mike Lockwood <MLockwood@jeffparish.net>, Rickie Falgoust (rickie.falgoust@wasteconnections.com) |
| Sent: | July 2, 2018 10:55:12 AM CDT |
| Received: | July 2, 2018 10:57:54 AM CDT |
| Attachments: | JeffersonParish.LFG.Assessment.53118.PreliminaryReport.pdf |

> **EXHIBIT 5**

Brett,

The contract doesn't have a provision for a solidification pit. We agreed to the Permit Modification to permit it, only on the condition that it wouldn't contribute to odors. At the time we were concerned about odors from the mixing process agitating the wastes. Now we are of the opinion that the sulfates added to the waste through the lime or fly ash solidification agent is increasing the production of H2S within the buried waste.

We need to stop operation of the pit until we can make a final determination. This is to be done immediately. Stop accepting liquid wastes. Any waste in the pit currently can be solidified, but no more may be accepted until further notice.

Have attached the preliminary report. The final report may contain additional recommendations that we will follow. Contact me with any questions.

Joseph (Rick) Buller, Jr. PE
Landfill Engineer
Jefferson Parish Environmental Affairs
Office: 504-736-6103
Landfill: 504-436-0152
Cellular: 504-239-1187

From: Mike Lockwood
Sent: Monday, July 02, 2018 10:38 AM
To: Keith Conley <KConley@jeffparish.net>
Cc: Rick Buller <RBuller@jeffparish.net>
Subject: Acceptance of Industrial Liquid Wastes

Based on Carlson's Preliminary report and our discussions relative to high H2S levels, I have asked that we institute a moratorium on the acceptance of liquid industrial wastes that require solidification with fly ash or lime.

Michael P. Lockwood, MSPH, Director
Jefferson Parish Department of Environmental Affairs
834 S. Clearview Pkwy.
Harahan, LA 70123
Phone: (504) 736-6440 Fax: (504) 731-4607

_____

Please be advised any information provided to Jefferson Parish Government may be subject to disclosure under the Louisiana Public Records Law. Information contained in any correspondence, regardless of its source, may be a public record subject to public inspection and reproduction in accordance with the Louisiana Public Records Law, La. Rev. Stat. 44:1 et seq.

JP_JPLF_00075025

**EXHIBIT 6**

| | |
|---|---|
| From: | Rob Nielsen |
| Sent: | Monday, July 23, 2018 10:44 PM |
| To: | ccalder@theadvocate.com; news@wgno.com; jlarino@nola.com; lbale@wwltc.com |
| Subject: | Louisiana Regional Landfill Company reply to Jefferson Parish Press Conference today July 23 2018 |
| BCC : | bemley@wasteservicesinc.com; john.perkey@wasteconnections.com; RobN@wasteconnections.com; james.little@wasteconnections.com |

Please see attached company response to Jefferson Parish Press Conference held today on the Jefferson Parish Landfill:

On July 18, 2018, Louisiana Regional Landfill Company (formerly known as IESI LA Landfill Corporation) ("LRLC") received a Notice of Breach from the Jefferson Parish Attorney, Michael Power, related to LRLC's operation of the Jefferson Parish Sanitary Landfill Site (the "Landfill"). LRLC has operated Phase IV of the Landfill since May 2012 pursuant to the terms and conditions of that certain *Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site* between LRLC and Jefferson Parish (the "Landfill Operating Agreement"). LRLC strongly denies the Parish's assertion that LRLC is in breach of the Landfill Operating Agreement. LRLC has at all times operated the Landfill in accordance with the provisions of the Landfill Operating Agreement and under the direction and supervision of Jefferson Parish, which has approved all waste streams accepted by LRLC at the Landfill.

As it relates to the allegation of foul odors coming from the Landfill, the landfill gas collection and control system at the Landfill is designed to capture landfill gases which cause odors. Jefferson Parish operates and maintains the landfill gas collection and control system at the Landfill, not LRLC. It is well documented that the landfill gas collection and control system at the Landfill does not function properly. In an effort to assist Jefferson Parish with potential odors that may be coming from the Landfill, LRLC, by letter dated July 20, 2018, has offered to take over the operation, inspection, adjustment, repair, and maintenance of the landfill gas collection and control system for Phase III-B and Phase IV-A of the Landfill for 90 days at LRLC's sole cost and expense. The Parish has not yet responded to that offer. In addition, LRLC, at its own expense, has hired a nationally known odor mitigation firm in order to assist the Parish in identifying all sources of local odors, including the two River Birch landfills immediately adjacent to the Jefferson Parish Landfill. A final report detailing those findings will be made public in the coming weeks.

We were led to believe today's press conference was intended to alert the public to our offer to resolve the Parish's odor issue at the Landfill and thank us for our offer. We are dismayed by the Parish's actions today and can only speculate on what may have transpired behind the scenes since our offer, especially in light of the troubled history of the site prior to our involvement and historical political influence of the neighboring River Birch landfill.

Contact:

Worthing Jackman

President

Waste Connections

3 Waterway Square Place

Suite 110

Worthing.Jackman@wasteconnections.com

832 442 2200

1

Confidential                                                                    WC_JPLF_00274564



PDR 2019 0013

EXHIBIT
7

## CARLSON ENVIRONMENTAL CONSULTANTS, PC

LANDFILL GAS AND SOLID WASTE SPECIALISTS

MAIN FILE

π    original to _____ IOA

copy to Remo/GT/Nguyen

December 18, 2019

Mr. Elliott Vega, Assistant Secretary
Office of Environmental Services
Louisiana Department of Environmental Quality
PO Box 4313
Baton Rouge, LA 70821-4313

RE:    Part 70 Operating Permit Renewal and Modification Application
Jefferson Parish Sanitary Landfill, Jefferson Parish, LA
Operating Permit No. 1340-00140-V7
Agency Interest No. 6961

Dear Mr. Vega:

On behalf of Jefferson Parish Sanitary Landfill, Carlson Environmental Consultants, PC (CEC) is pleased to submit this Part 70 (Title V) Operating Permit Renewal Application for the Jefferson Parish Sanitary Landfill (JPSL). JPSL is currently authorized under Part 70 Operating Permit 1340-00140-V7 which expires June 23, 2020. This application is being submitted at least 180 days prior to expiration. There are several modifications requested to the Part 70 Operating Permit due primarily to recalculation of emissions for existing emission points.

This application was prepared in accordance with 40 CFR Part 70, the Louisiana Administrative Code (LAC) Title 33 Part III §517, and the Louisiana Guidance for Air Permitting Actions.

One original and two copies of the application package are being submitted for your use and distribution. A copy of the application was also submitted to the U.S. EPA Region 6 Office.

If you have any questions regarding this submittal, please contact Jim Christiansen at 321-704-4162.

Sincerely,

Jim Christiansen
Carlson Environmental Consultants, PC

Seth Nunes, P.E.
Carson Environmental Consultants, PC

2019 DEC 19 AM 8: 14    DEQ - OES

cc:    Mike Lockwood, MSPH, Jefferson Parish
Kris Carlson, CEC
Brian DeJean, P.E., River Birch LLC

305 SOUTH MAIN STREET, MONROE NC 28112 · OFFICE 704.283.9765 · FAX 704.283.9755
JUPITER, FL · ATLANTA, GA · COLUMBIA, SC · RICHMOND, VA · OLYMPIA, WA
WWW.CECENV.COM

WC_JPLF_00315306

Part 70 (Title V) Operating Permit Renewal and Modification Application
Jefferson Parish Sanitary Landfill
Operating Permit No.  1340-00140-V7
Agency Interest No. 6961
The Parish of Jefferson
Avondale, Jefferson Parish, LA

Prepared for
Jefferson Parish Sanitary Landfill
5800 Hwy. 90 West
Avondale, Louisiana 70094
(504) 436-0244
December 18, 2019

Prepared by



Carlson Environmental Consultants, PC
305 South Main Street
Monroe, NC 28112

WC_JPLF_00315307

# TABLE OF CONTENTS

SECTION A – EXECUTIVE SUMMARY

SECTION B – APPLICATION FOR APPROVAL OF EMISSIONS OF AIR POLLUTANTS
            FROM PART 70 SOURCES

SECTION C – AIR EMISSION CALCULATIONS

SECTION D - SITE LOCATION MAP

SECTION E - LISTING OF VARIANCES AND HOVS AND STATUS
            2017 GCCS DESIGN PLAN VARIANCES APPROVAL

App. 512

WC_JPLF_00315308

## SECTION A
## EXECUTIVE SUMMARY

### FACILITY AND PROGRESS DESCRIPTION

The Jefferson Parish Sanitary Landfill (JPSL) is a municipal solid waste (MSW) landfill and is located at 5800 Hwy. 90 West, Avondale, LA. The landfill is owned by the Parish of Jefferson and currently operated by Waste Connections, Inc. JPSL is currently authorized to operate under Part 70 (Title V) Operating Permit No. 1340-00140-V7 issued on July 15, 2016 and expiring on June 23, 2020.

JPSL began accepting waste in 1982. Based on previously submitted information, the landfill has a current permitted design capacity of 27,925,852 cubic yards inclusive of all permitted phases, both closed and open. Based on current waste acceptance rates and the currently permitted design capacity, the landfill has approximately 12,403,238 cubic yards of air space and approximately 32 years of life remaining. Closure year may vary based upon actual waste acceptance rates.

The landfill has an operating gas collection and control system (GCCS) which consists of a network of vertical and horizontal landfill gas (LFG) collection devices, a blower skid, a 2,873 standard cubic feet per minute (scfm) open (utility) flare used to combust LFG, and a treatment/compression skid used to condition LFG for off-site delivery and beneficial reuse for power generation. Beneficial reuse is the primary means of managing LFG; the flare is used as a backup. Currently, River Birch, LLC operates and maintains the GCCS under contract with Jefferson Parish. There are also a variety of petroleum storage tanks and engines present at the site as described in the Application for Approval of Emissions of Air Pollutants from Part 70 Sources (Section B of this document).

No significant changes are proposed to the previously permitted facility processes and equipment, though significant upgrades to the GCCS are being undertaken to reduce liquid levels in the landfill, reduce the potential for objectionable odors, and to provide higher quality landfill gas for beneficial reuse. While these changes may increase the quantity of landfill gas collected, they will not increase the facility potential emissions.

### PURPOSE OF APPLICATION

This application is being submitted to renew and modify the Part 70 (Title V) Operating Permit with significant adjustments to emissions calculations and estimates for several emission sources. No process, equipment, or actual design capacity changes are proposed. However, updated calculations in some cases reduced and in others increased potential emission rates. The Emission Point IDs, as set forth in the current Part 70 Operating Permit with a summary of requested changes, are provided in Table 1.

**Table 1. Existing Air Emission Sources Addressed In This Application**

| ID | Emission Point Description | Action Requested |
|---|---|---|
| UNF 1 | Landfill | No Change |
| EQT 01 | 1a - Landfill Gas Flare (2,873 scfm open flare) | Update PTE and include enforceable SO2 limit |

1

WC_JPLF_00315309

| EQT 20 | 33 - 6-in Diesel Pump No. 2 | No Change |
|--------|-----------------------------|-----------|
| EQT 21 | 34 - 6-in Diesel Pump No. 3 | No Change |
| EQT 22 | 35 - Diesel Emergency Generator No. 1 | No Change |
| EQT 23 | 41 - 6-in Diesel Pump No. 1 | No Change |
| EQT 24 | 42 - Diesel Emergency Generator Lift Station No. 2 | No Change |
| FUG 01 | 2 - Landfill Gas, Fugitives | Update PTE |
| FUG 02 | 3 - Fugitive Particulates | Update PTE |
| FUG 03 | 5- Leachate Treatment Pond | No Change |
| FUG 04 | 29 - LFG Conditioning and Compression Skid Fugitives | No Change |

## PROPOSED CHANGES FROM 2015 TITLE V RENEWAL APPLICATION AND CURRENT TITLE V PERMIT

Proposed changes include the following items:

1. During recent investigations, JPSL became aware that elevated levels of hydrogen sulfide (H2S) were present in the site's landfill gas. This is common at landfills that accept sulfur bearing waste (certain sludges, wallboard, gypsum, etc). When combusted, all total reduced sulfur (TRS), of which by far the predominant component in landfill gas is H2S, is converted to sulfur dioxide (SO2). Preliminary information collected through sampling of landfill gas using colorimetric tubes suggested site-wide TRS concentrations are on the order of 2,000 to 3,000 parts per million by volume (ppmv). This is high enough to cause the potential to emit (PTE) for the site's flare to exceed 250 tons per year (TPY) of SO2, which would render the site a major source for New Source Review (NSR) purposes. As such, the site is proposing an enforceable limit for SO2 of 230 TPY at the flare. Note that *actual* emissions of SO2 from the flare will be substantially lower because the flare is used as a backup control device only. At most times gas from the landfill is routed to an off-site beneficial use gas-to-energy plant. A similar SO2 limit was recently established by LDEQ in the Title V permit for Woodside Landfill in Walker, LA. Provisions for ensuring compliance with the proposed limit are discussed in #3 below.

2. Estimated potential emissions for the 2,873 scfm flare were recalculated (i.e. corrected) using industry standard approaches, AP-42 emission factors, and a proposed limit for flare emissions of 230 TPY of SO2 as a rolling twelve-month total. Note that the landfill gas flare currently serves as a backup to off-site beneficial reuse. Potential emission calculations for the flare assumed continuous operation at full capacity and are thus highly conservative relative to expected actual emissions. Updated potential emissions from the flare for carbon monoxide (CO), nitrogen oxides (NOx), and volatile organic compounds (VOCs) are lower than previously permitted. SO2 potential emissions are based on the proposed limit which is reflective of potential to combust landfill gas with higher site-specific H2S concentrations. This is an increase of more than 220 TPY of SO2 relative to prior permitted emissions of SO2, making this a major modification. Emission calculations are provided in Section C and summarized in Section B.

3. JPSL proposes to ensure compliance with the 230 TPY SO2 flare limit through a program of periodic sampling and analysis of TRS in landfill gas.

2

WC_JPLF_00315310

- ○ Whenever landfill gas is routed to the flare, but no more frequently than once per calendar year, the facility will collect a landfill gas sample at the flare using a Silco canister. The sample will be analyzed for TRS by a NELAP accredited laboratory using EPA Method 15/16.

- ○ TRS results for each annual sample, along with totalized flows to the flare as measured by the continuous flow meter, will be used to calculate actual emissions from the flare for all months in that calendar year. Calculations will be performed monthly and a log of rolling 12-month total SO2 emissions will be maintained for ongoing comparison to the 230 TPY limit. Actual emissions of SO2 on a calendar year basis will continue to be reported in the annual emission inventory. The facility will notify LDEQ immediately if rolling twelve-month total SO2 emissions exceed the 230 TPY limit.

- ○ If the flare does not operate in a given calendar year, no sample is required in that year. However, if the flare operates at all, at least one representative sample is required during the calendar year.

- ○ Because the flare is used infrequently as a backup, actual emissions of SO2 are expected to be well below 230 TPY for the foreseeable future. However, the site will take necessary actions to ensure the SO2 limit is not exceeded if needed. Such actions may include treatment of landfill gas using sulfur scavenging media such as Sulfatreat™ or similar, either at individual wellheads or at the landfill gas flare.

4. Fugitive emission rates for the landfill were recalculated and updated using AP-42 approaches and current site-specific information, which include a conservative, site-wide estimate for H2S concentration in landfill gas of 3,000 ppm. Future waste acceptance rates were estimated to be reasonably consistent with projected closure year from the pending solid waste permit renewal application. Emission calculations are provided in Section C and summarized in Section B. Using the conservative H2S landfill gas concentration of 3,000 ppm, a substantial increase in potential fugitive H2S emission rate was calculated relative to the prior permit. With this increase, the facility is now classified as a major source of toxic air pollutants (TAPs) pursuant to LAC Title 33 Chapter 51. However, pursuant to LAC 33:III.5101.D, the facility is subject to the NESHAP requirements in 40 CFR Parts 61 and 53 and therefore not subject to the requirements of Chapter 51 Subchapter A, except for the annual emissions reporting requirements of 5107.A, the ambient air standard requirements of 5109.B, and the application applicable air toxics permit application and air toxics annual emission fees provided by LAC 33:III:Chapter 2. Facility engines are subject to 40 CFR 63 Subpart ZZZZ and are therefore exempt form the Chapter 51 regulations.

5. Minor updates were made to the applicable rules and requirements as shown in Section B.

6. Because there have been no new permitted landfill expansions since the last permit action, the volumetric design capacity has not increased. However, the design capacity on a mass/weight basis was updated to reflect the most current waste densities used in the 2019 Solid Waste Permit Renewal Application. The design capacity is updated as 23,960,381 tons or 21,736,518 megagrams. Calculations are provided in Section C.

3

WC_JPLF_00315311

7. In Section E, JPSL has included a table of numerous variances or higher operating values (HOVs) previously approved or requested in this application as well as a 2017 GCCS Design Plan approval from LDEQ. However, several requests to LDEQ are pending. To ensure compliance in the future, JPSL believes it is important to fully reconcile all proposed and approved HOVs with LDEQ. To this end, JPSL intends to work with LDEQ to update the facility GCCS Design Plan in 2020 to include a consolidated listing of agreed upon variances and address any necessary items related to the ongoing consolidated enforcement action.

No other significant changes for any emission points or insignificant activities are proposed. CEC and JPSL respectfully request the opportunity to review and comment on the draft Part 70 Operating Permit for the Facility before finalization.

## FEDERAL AND STATE REQUIREMENTS

JPSL is subject to a variety of federal and state air quality regulations. In accordance with LAC 33:III.517.D.10, these regulations have been identified in a matrix on Table 1 contained in Item 23 of the Application for Approval of Emissions of Air Pollutants from Part 70 Sources (Section B of this document). Specific requirements that pertain to JPSL from those regulations are discussed in Table 2. Table 3 provides rationale for any regulations that could be applicable but do not apply or from which JPSL is exempt.

The only significant change relative to the existing permit is in regarding to emissions of hazardous air pollutants (HAPs) and TAPs. The facility remains a minor source of HAPs as defined in Federal Rules. However, with the increase of fugitive $H_2S$ emissions above 10 TPY as discussed above, the facility is a now a major source of TAPs pursuant to LAC Title 33 Chapter 51. However, pursuant to LAC 33:III.5101.D, the facility is subject to the NESHAP requirements in 40 CFR Parts 61 and 53 and therefore not subject to the requirements of Chapter 51 Subchapter A, except for the annual emissions reporting requirements of 5107.A, the ambient air standard requirements of 5109.B, and the application applicable air toxics permit application and air toxics annual emission fees provided by LAC 33:III:Chapter 2. Facility engines are subject to 40 CFR 63 Subpart ZZZZ and are therefore exempt from the Chapter 51 regulations.

## NSR APPLICABILITY

JPSL is an existing facility that is not considered a major stationary source under the New Source Review (NSR) program. Per 40 CFR 52.21(b)(1)(i)(a), landfills are not included in the 28 source categories subject to a potential-to-emit threshold for any regulated NSR pollutant of 100 ton per year (TPY) at which a facility is considered a major stationary source. Per 40 CFR 52.21(b)(1)(iii), only a facility included in the defined source categories must include fugitive emissions when determining if considered a major stationary source for purposes of the NSR program. Because this existing landfill facility does not fall within the 28 listed categories, it is subject to a 250 TPY threshold for regulated NSR pollutants, excluding fugitive emissions, to determine NSR major stationary source status (40 CFR 52.21(b)(1)(i)(b)).

Per 40 CFR 52.21(b)(50), the regulated NSR pollutants for this facility currently include nitrogen oxides, sulfur dioxide, particulate matter, carbon monoxide, volatile organic compounds, and nonmethane organic compounds. See 40 CFR 52.21(b)(50) for the definition of regulated NSR pollutant. With an enforceable limit of 230 TPY for SO2 for the flare, this facility's potential to

4

WC_JPLF_00315312

emit each of these pollutants is less than 250 TPY, therefore the facility is not a major stationary source for NSR purposes.

5

WC_JPLF_00315313

## EMISSION RATE SUMMARY (TONS PER YEAR)

| Pollutant | Before (V7) | After | Change |
|---|---|---|---|
| NOx | 31.41 | 36.51 | 5.10 |
| CO | 397.66 | 143.62 | -254.04 |
| PM10 | 42.86 | 56.67 | 13.81 |
| PM2.5 | 14.16 | 12.38 | -1.78 |
| SOx | 6.23 | 230.70 | 224.47 |
| NMOC | | 34.04 | NA |
| VOC | 33.70 | 14.16 | -19.54 |
| TAPs | | 173.36 | NA |
| CO2e (anthropogenic) | | 225.55 | NA |
| CO2e (biogenic) | | 225,437.60 | NA |
| methyl chloroform | 0.04 | 0.02 | -0.03 |
| 1,1,2,2-tetrachloroethane | 0.12 | 0.01 | -0.11 |
| ethylidene dichloride | 0.15 | 0.05 | -0.10 |
| vinylidene chloride | 0.01 | 0.01 | -0.01 |
| ethylene dichloride | 0.02 | 0.01 | -0.01 |
| propylene dichloride | 0.01 | 0.00 | -0.01 |
| acrylonitrile | 0.21 | 0.01 | -0.20 |
| carbon disulfide | 0.03 | 0.01 | -0.02 |
| carbon tetrachloride | 0.00 | 0.00 | 0.00 |
| carbonyl sulfide | 0.02 | 0.01 | -0.01 |
| chlorobenzene | 0.02 | 0.02 | 0.00 |
| ethyl chloride | 0.05 | 0.02 | -0.04 |
| chloroform | 0.00 | 0.00 | 0.00 |
| 1,4-dichlorobenzene | 0.02 | 0.14 | 0.12 |
| methylene chloride | 0.04 | 0.23 | 0.19 |
| ethylbenzene | 0.31 | 0.47 | 0.16 |
| ethylene dibromide | 0.00 | 0.00 | 0.00 |
| hexane | 0.36 | 0.14 | -0.22 |
| methyl ethyl ketone | 0.33 | 0.54 | 0.21 |
| methyl isobutyl ketone | 0.70 | 0.05 | -0.65 |
| perchloroethylene | 0.39 | 0.15 | -0.24 |
| trichloroethylene | 0.23 | 0.07 | -0.16 |
| mercury | 0.03 | 0.00 | -0.03 |
| benzene | 0.11 | 0.05 | -0.05 |
| toluene | 2.31 | 1.60 | -0.70 |
| vinyl chloride | 0.01 | 0.06 | 0.05 |
| xylenes | 0.83 | 1.15 | 0.33 |
| hydrochloric acid | 2.75 | 2.89 | 0.14 |
| hydrogen sulfide | 0.78 | 165.63 | 164.85 |
| 1,2-Dichloroethylene | 0.00 | 0.00 | 0.00 |
| 1,4-Dichlorobenzene | 0.02 | 0.00 | -0.02 |
| 2,4-D | 0.00 | 0.00 | 0.00 |
| 2,4-Dinitrotoluene | 0.00 | 0.00 | 0.00 |
| 2,4,5-Trichlorophenol | 0.00 | 0.00 | 0.00 |
| 2,4,6-Trichlorophenol | 0.00 | 0.00 | 0.00 |
| Carbon Tetrachloride | 0.00 | 0.00 | 0.00 |
| Chlordane | 0.00 | 0.00 | 0.00 |

App. 518

WC_JPLF_00315314

| | | | |
|---|---|---|---|
| Cresol-m | 0.00 | 0.00 | 0.00 |
| Cresol-o | 0.00 | 0.00 | 0.00 |
| Cresol-p | 0.00 | 0.00 | 0.00 |
| n-Cresol | 0.00 | 0.00 | 0.00 |
| Endrin | 0.00 | 0.00 | 0.00 |
| Heptachlor | 0.00 | 0.00 | 0.00 |
| Hexachlorobenzene | 0.00 | 0.00 | 0.00 |
| Hexachlorobutadiene | 0.00 | 0.00 | 0.00 |
| Hexachlorethane | 0.00 | 0.00 | 0.00 |
| Lindane | 0.00 | 0.00 | 0.00 |
| Methoxychlor | 0.00 | 0.00 | 0.00 |
| Nitrobenzene | 0.00 | 0.00 | 0.00 |
| Pentachlorophenol | 0.00 | 0.00 | 0.00 |
| Pyridine | 0.00 | 0.00 | 0.00 |
| Toxaphene | 0.00 | 0.00 | 0.00 |

## ENVIRONMENTAL ASSESSMENT STATEMENT

For new Part 70 operating permits and/or major modifications, answers to certain questions must be provided by the applicant to the local governmental authority and the designated public library at no additional costs to these entities. See the Application Form in Section B for details and the local governmental authority and the designated public library to which the answers to these questions were sent.

Question 1: **Have the potential and real adverse environmental effects of the proposed facility been avoided to the maximum extent possible?** Yes. The Jefferson Parish Sanitary Landfill (JPSL) is an existing facility and no changes in process or actual capacity are proposed in this permit action. This application is considered a major modification due to solely to calculated increases in *potential* hydrogen sulfide (H2S) and sulfur dioxide (SO2) emissions. SO2 is created when combusting landfill gas that contains sulfur, in this case H2S. H2S occurs at varying levels in landfill gas at all municipal solid waste landfills. JPSL used updated site-specific estimates of H2S concentrations for potential to emit calculations in this application, which increased estimated potential emissions. Importantly, these estimates assume landfill gas is routed to the on-site flare at all times. In actuality, landfill gas is sent to off-site gas to energy plant where gas is treated to remove H2S. Therefore, actual emissions of SO2 from JPSL will be much lower than the potential emissions and overall similar to the past. There are also calculated increases in fugitive emissions of H2S from uncollected landfill gas. This is also due to the use of site-specific estimates of H2S present in landfill gas at JPSL. Nothing can be done to reduce these concentrations in landfill gas. JPSL is currently working to upgrade the landfill gas collection system to capture more landfill gas, minimize fugitive emissions and odors, and convey as much landfill gas as practicable to off-site beneficial use waste-to-energy facilities.

Question 2: **Does a cost benefit analysis of the environmental impact costs balanced against the social and economic benefits of the proposed facility demonstrate that the latter outweighs the former?** The facility is not proposed but existing. The proposed modifications are based on updated potential (not actual) emission calculations only. Both potential and actual missions from JPSL have been and remain substantially similar to other

7

WC_JPLF_00315515

municipal solid waste landfills in Louisiana and elsewhere. By providing cost-effective management of solid waste generated in the Parish, JPSL clearly provides social and economic benefits that outweigh any impacts.

Question 3: **Are there alternative projects which would offer more protection to the environment than the proposed facility without unduly curtailing non-environmental benefits?** The facility is not proposed but existing with no planned expansion, so alternative projects are not warranted.

Question 4: **Are there alternative sites which would offer more protection to the environment than the proposed facility site without unduly curtailing non-environmental benefits?** The facility is not proposed but existing with no planned expansion, so alternative sites are not warranted.

Question 5: **Are there mitigating measures which would offer more protection to the environment than the facility as proposed without unduly curtailing non-environmental benefits?** JPSL is working to upgrade the existing landfill gas collection system to capture more landfill gas, minimize fugitive emissions and odors, and convey as much landfill gas as practicable to off-site beneficial use waste-to-energy facilities.

8

WC_JPLF_00315316

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK,<br>    Plaintiff | CIVIL ACTION<br><br>NO. 18-7889<br>c/w 18-8071,<br>18-8218, 18-9312 |
| VERSUS | |
| WASTE CONNECTIONS BAYOU, INC., ET AL.,<br>    Defendants | SECTION: "E" (5) |
| | |
| *Related Case:* | CIVIL ACTION |
| FREDERICK ADDISON, ET AL.,<br>    Plaintiffs | NO. 19-11133, c/w 19-14512 |
| VERSUS | SECTION: "E" (5) |
| LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,<br>    Defendants | JUDGE: Morgan<br>MAGISTRATE JUDGE: North |
| *Applies to: All Cases* | |

## DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURCATE TRIAL

All Defendants[1] jointly submit this motion for leave to file the attached Supplemental Memorandum in Support of their Motion to Bifurcate Trial,[2] and show the Court as follows:

1.      On February 2, 2023, Defendants filed the Motion to Bifurcate Trial.

---

[1] The Defendants in this matter are Waste Connections US, Inc., Waste Connections Bayou, Inc., and Louisiana Regional Landfill Company (collectively, the "Waste Connections Defendants"), the Parish of Jefferson, and Aptim Corp.

[2] Case No. 18-cv-7889, ECF No. 303; Case No. 19-cv-11133, ECF No. 338.

2. On February 3, 2023, the Court held a status conference. At the conference, the Court raised various questions and concerns regarding the Motion to Bifurcate Trial.

3. Plaintiffs' opposition to the Motion to Bifurcate Trial is due for filing on February 10, 2023.

4. Defendants now request leave to file the attached supplemental memorandum in order to address some of the questions and concerns that the Court raised at the February 3rd status conference. Defendants submit that the supplemental memorandum will assist the Court in resolving the Motion to Bifurcate Trial.

5. Defendants assert that the filing of the attached supplemental memorandum will not cause any undue delay and does not involve any bad faith or dilatory motive.

6. Finally, no undue prejudice will result to Plaintiffs should this Court allow Defendants to file the attached supplemental memorandum.

WHEREFORE, all Defendants pray that this Motion be granted and that they be allowed to file and serve the attached Supplemental Memorandum in Support of Motion to Bifurcate Trial.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: ___/s/ Michael C. Mims_____
        Michael C. Mims
        (Louisiana Bar Roll No. 33991)
        Christopher R. Handy
        (Louisiana Bar Roll No. 38768)
        Lance V. Licciardi Jr.
        (Louisiana Bar Roll No. 38817)
        1100 Poydras Street, Suite 2700
        New Orleans, Louisiana 70163
        Telephone: (504) 596-6300

2

Facsimile: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By: ___/s/ William P. Connick_____
      William P. Connick, La. Bar No. 14158
      Michael S. Futrell, La. Bar. No. 20819
      Matthew D. Moghis, La. Bar. No. 33994
      3421 N. Causeway Blvd., Suite 408
      Metairie, Louisiana 70002
      Telephone: (504) 681-6658
      Facsimile: (504) 838-9903
      E-mail: moghis@connicklaw.com

      *Counsel for Defendant Jefferson Parish*

3

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:    /s/ J. Michael DiGiglia
        Ernest P. Gieger, Jr. (6154)
        John E. W. Baay (22928)
        J. Michael DiGiglia (24378)
        Nicholas S. Bergeron (37585)
        Gieger, Laborde & Laperouse, L.L.C.
        Hancock Whitney Center
        701 Poydras Street, Suite 4800
        New Orleans, Louisiana 70139
        Telephone: (504) 561-0400
        Facsimile: (504) 561-1011

        *Attorneys for Defendant Aptim Corp.*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing was electronically filed on February 9, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        /s/ Michael C. Mims
        OF COUNSEL

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK, **Plaintiff** | CIVIL ACTION |
| | NO. 18-7889 c/w 18-8071, 18-8218, 18-9312 |
| **VERSUS** | |
| WASTE CONNECTIONS BAYOU, INC., ET AL., **Defendants** | SECTION: "E" (5) |
| | |
| *Related Case:* | CIVIL ACTION |
| FREDERICK ADDISON, ET AL., **Plaintiffs** | NO. 19-11133, c/w 19-14512 |
| **VERSUS** | SECTION: "E" (5) |
| LOUISIANA REGIONAL LANDFILL COMPANY, ET AL., **Defendants** | JUDGE: Morgan MAGISTRATE JUDGE: North |
| *Applies to: All Cases* | |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO BIFURCATE TRIAL

## INTRODUCTION

Defendants submit this supplemental memorandum of law in light of discussions at the Court's February 3, 2023 status conference.[1] The Court's continuance of the trial to September 2023 and extension of the trial duration do not alleviate the significant prejudice to Defendants from a consolidated trial on issues of liability, specific causation, and damages. Reverse bifurcation remains critical to avoid the prejudice to Defendants flowing from the potential for collateral estoppel on future liability issues in subsequent mass action trials and the class action, "one-way intervention" of putative class members who may benefit from but are not bound by a trial on the merits preceding a determination on class certification, and Seventh Amendment right-to-jury principles arising from a needlessly complex trial and the prospect of multiple juries repeatedly deciding the same issues.[2] Specific causation, allocation of causation, and damages are the issues most relevant to informing the valuation of Plaintiffs' claims and potential settlement, and should be tried first before a separate trial on liability.

## ARGUMENT

The *Addison* Plaintiffs' claims were removed to federal court because Plaintiffs consented and approved that all of their claims be "tried jointly."[3] The Court indicated at the February 3 status conference that the initial *Addison* trial will address liability, specific causation, and damages, and that the Court does not intend the outcome of the trial to be binding on the other *Addison* Plaintiffs or the *Ictech-Bendeck* Plaintiffs. Fundamental fairness and Seventh Amendment concerns dictate

---

[1] The Court's February 7, 2023 minute entry provides that Plaintiffs' opposition to Defendants' Joint Motion to Bifurcate is due February 10, 2023, at which time the motion will be fully submitted (Case No. 18-cv-7889, ECF No. 305; Case No. 19-cv-11133, ECF No. 340).

[2] Defendants briefed these issues in their Joint Motion to Bifurcate Trial, filed February 2, 2023 (Case No. 18-cv-7889, ECF No. 303-1; Case No. 19-cv-11133, ECF No. 338-1).

[3] *Addison v. Louisiana Reg'l Landfill Co.*, 398 F. Supp. 3d 4 (E.D. La. 2019).

App. 526

that liability underlying the 547 *Addison* Plaintiffs' claims be tried in a single trial. A separate trial on the issues of specific causation and damages should be held for the individual Plaintiffs as those issues are unique to each Plaintiff, and are most likely to provide meaningful information for settlement.

Separate trials on these issues are necessary because it ensures that Plaintiffs' damages will be valued fairly, and would avoid inserting the threat of prejudice and inflammatory rhetoric into the trial that would jeopardize the trial's usefulness at rendering damages estimates that are reliable and representative of the larger pool of plaintiffs. *See Cain v. Armstrong World Indus*., 785 F. Supp. 1448, 1456 (S.D. Ala. 1992) (new trial ordered where consolidation of 13 separate personal injury and wrongful death claims from asbestos exposure over defendants' objection resulted in excessive and disproportionate damages awards that were unsupported by the evidence). There is little potential prejudice to Plaintiffs from bifurcation. Plaintiffs will still have the opportunity to present extensive evidence concerning the amounts of hydrogen sulfide being emitted from the Landfill, their level of exposure to Landfill emissions, and their alleged injuries. These issues are distinct and separable from discrete questions of standard of care, Defendants' respective roles at the Landfill, and contract and indemnification issues that are part of the liability and allocation of fault determinations.

The Court's trial plan that in effect allows for the retrial of liability and allocation issues for each set of *Addison* Plaintiffs also offends Defendants' Seventh Amendment right to jury. The Seventh Amendment prohibits multiple juries passing on the same issues of fact. U.S. Const. amend. VII ("no fact tried by a jury, shall be otherwise re-examined in any Court of the United States"). A second jury should not re-try liability and comparative negligence of the Defendants due to the risk of a second jury re-apportioning fault. *Castano v. Am. Tobacco Co*., 84 F.3d 734,

750 (5th Cir. 1996) (trial management plan that provided for severance of defendant's conduct from comparative negligence implicated Seventh Amendment "right . . . to have only one jury pass on a common issue of fact").

The Court's proposed trial plan creates the exact risk the Seventh Amendment prohibits: multiple juries will pass on the same factual and legal arguments concerning liability and allocation of liability in the consolidated *Addison* action—with the potential to produce anomalous results. *See McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (issue of causation could not be tried by the same parties twice); *State of Ala. v. Blue Bird Body Co.,* 573 F.2d 309, 318 (5th Cir. 1978) (certification of class on bifurcated issue of liability reversed and remanded for consideration of whether trial plan would result in consideration of the same evidence and disparate findings during the liability and damages phases); *see also Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (writ of mandamus granted directing trial court to decertify class where trial plan would allow for the findings of the first jury on defendants' negligence to be reexamined by "a second, or third, or *n*th jury"). This effect would be exacerbated as the parties would sharpen their presentation of the cases with each retrial, almost ensuring different outcomes by subsequent juries. The bifurcation of liability avoids these issues by focusing the individual trials on Plaintiff-specific inquiries of specific causation and damages, and then having a single jury determine the common issues of liability and allocation among Defendants and third parties.

The prejudice from such a trial plan is particularly dire if the jury's findings with respect to liability in the first trial are considered binding on future *Addison* and *Ictech-Bendeck* trials, as the Sixth Circuit recently held they would be in *In re E. I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 54 F.4th 912, 938 (6th Cir. 2022). As Defendants discussed with the Court during the

February 3 conference, the Sixth Circuit recently enforced the preclusive effect of initial liability determinations in later trials despite the district court's specific determination that liability finding in an initial non-representative bellwether trial would be non-dispositive of later claims.[4] *Id.*; *see also Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir 1982) (party or a privy to a prior judgment may be subject to conclusive effect of that judgment in later actions).

## CONCLUSION

Defendants' request to bifurcate is not intended to "sanitize" the trial as the Court surmised during the February 3 conference, but instead to ensure the manageability of the complex issues being presented to the jury and to protect Defendants' Seventh Amendment right-to-jury. Moreover, a trial on causation and damages will fairly value damages without the bias of inflated compensatory damages that can arise from a jury's wish to punish Defendants. The Court should exercise its broad discretion to separate issues for trial, and bifurcate specific causation, allocation of causation, and damages, to be followed by a separate trial on liability and allocation of fault to take place after a determination of class certification.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By:     /s/ Michael C. Mims
         Michael C. Mims
         (Louisiana Bar Roll No. 33991)
         Christopher R. Handy
         (Louisiana Bar Roll No. 38768)
         Lance V. Licciardi Jr.
         (Louisiana Bar Roll No. 38817)
         1100 Poydras Street, Suite 2700
         New Orleans, Louisiana 70163
         Telephone: (504) 596-6300

---

[4]   The Sixth Circuit denied *du Pont's* petition for rehearing en banc. *See* https://www.opn.ca6.uscourts.gov/case_reports/rptOrdersEntered.pdf at 16.

App. 529

Facsimile: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*


CONNICK AND CONNICK, LLC

By: ___/s/ William P. Connick_____
      William P. Connick, La. Bar No. 14158
      Michael S. Futrell, La. Bar No. 20819
      Matthew D. Moghis, La. Bar. No. 33994
      3421 N. Causeway Blvd., Suite 408
      Metairie, Louisiana 70002
      Telephone: (504) 681-6658
      Facsimile: (504) 838-9903
      E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*


GIEGER, LABORDE & LAPEROUSE, L.L.C.

5

By:    /s/ J. Michael DiGiglia
       Ernest P. Gieger, Jr. (6154)
       John E. W. Baay (22928)
       J. Michael DiGiglia (24378)
       Nicholas S. Bergeron (37585)
       Gieger, Laborde & Laperouse, L.L.C.
       Hancock Whitney Center
       701 Poydras Street, Suite 4800
       New Orleans, Louisiana 70139
       Telephone: (504) 561-0400
       Facsimile: (504) 561-1011

       *Attorneys for Defendant Aptim Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed on February 9, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael C. Mims
OF COUNSEL

MINUTE ENTRY
MORGAN, J.
February 24, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br> **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7889**<br> **c/w 18-8071,**<br> **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**<br> **Defendants** | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br> **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11133**<br> **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br> **Defendants** | **SECTION: "E"(5)** |

*Applies to: All Cases*

## MINUTE ENTRY

A telephone status conference was held on February 24, 2023, at 1:00 p.m., in the

chambers of Judge Susie Morgan.

Present:     Jason Landry, counsel for Plaintiff, Elias Jorge Ictech-Bendeck;

Kacie Gray, counsel for Plaintiff, Savannah Thompson;

1

App. 533

Eliza James, Allen Foster, Erik Bolog, and Eric Rowe, counsel for All Addison Plaintiffs;

Eliza James, counsel for Consolidated Fleming Plaintiffs;

Michael Mims, Megan Brillault, and John Paul, counsel for Defendants and Consolidated Defendants, Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company;

Mike DiGiglia and John Baay, counsel for Defendant, Aptim Corp.; and

Michael Futrell and Matthew Moghis, counsel for Defendant, Parish of Jefferson.

Plaintiffs' counsel provided the identities of the four Plaintiffs pursuing diminution of property value claims. The Court reset the following discovery deadlines with respect to these claims.[1] The parties shall meet and confer regarding Plaintiffs' objections to Defendants' interrogatories related to Plaintiffs' diminution in property value claims on or before **Friday, March 3, 2023**. If the parties are unable to reach a resolution, Defendants shall propound to Plaintiffs' counsel revised discovery related to Plaintiffs' potential diminution of property value claims on or before **Friday, March 10, 2023**. Defendants' revised interrogatories must comply with Federal Rule of Civil Procedure 33, which limits the number of interrogatories to 25, including all discrete subparts.

Plaintiffs shall file their expert reports with respect to the diminution of property value claims on or before **Wednesday, June 14, 2023**. Rebuttal reports are due on or before **Wednesday, June 28, 2023**. Expert depositions must be complete by **Friday, July 14, 2023**.

---

[1] The Court previously set deadlines in its December 16, 2023 Status Conference Minute Entry. R. Doc. 325.

App. 534

The Court reset the following discovery deadlines for the first *Addison* trial.[2] The parties shall exchange lists of the *Addison* Plaintiffs they have selected to depose in anticipation of selecting Plaintiffs to be included in the trial on or before **Wednesday, March 15, 2023.** Each side may depose a total of eight "Plaintiffs." Seven individual Plaintiffs may be selected from the entire pool of *Addison* Plaintiffs, not just those without other plaintiff-family members, but only the claims of the individuals selected will be eligible for trial. The remaining "Plaintiff" may be a family unit in its entirety. The goal is for each of these depositions to last four hours, unless good cause is shown why a deposition needs to last longer. The parties shall meet and confer to schedule depositions of these *Addison* Plaintiffs on or before **Friday, March 17, 2023**. All depositions shall be completed on or before **Friday, April 14, 2023**. On or before **Monday, April 24, 2023**, Plaintiffs will identify four Plaintiffs whose cases will be tried, and Defendants will identify four Plaintiffs whose cases will be tried. Only one of the four Plaintiffs identified by Plaintiffs and one of the four Plaintiffs identified by Defendants may be a family unit.

New or supplemental expert reports for the first *Addison* trial are due on or before **Wednesday, June 14, 2023**. Rebuttal reports are due on or before **Wednesday, June 28, 2023**. Expert depositions must be complete by **Friday, July 14, 2023**.

All discovery shall be completed on or before **Friday, July 14, 2023**.

All dispositive motions are due on or before **Friday, July 21, 2023**. Oppositions to any dispositive motions are due on or before **Friday, July 28, 2023**. Any replies are due on or before **Tuesday, August 1, 2023**.

---

[2] The Court previously set deadlines in its February 3, 2023 Status Conference Minute Entry. R. Doc. 340.

Trial will commence on **Tuesday, September 5, 2023**, and is expected to last fifteen days. A pretrial conference is hereby set for **Tuesday, August 15, 2023, at 11:00 a.m.**

The parties shall immediately contact the Magistrate Judge to schedule a settlement conference to occur on or before **Tuesday, August 1, 2023**.

The proposed case management order shall include all deadlines set forth above and all deadlines in this Court's standard scheduling order.

**New Orleans, Louisiana, this 27th day of February, 2023.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

JS10 (0:53)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** <br> **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7889** <br> **c/w 18-8071,** <br> **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** <br> **Defendants** | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** <br> **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11133** <br> **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** <br> **Defendants** | **SECTION: "E"(5)** |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court is Defendants' motion to bifurcate the first *Addison* trial.[1]

Plaintiffs oppose this motion.[2] Defendants filed a supplemental memorandum in

support.[3]

---

[1] R. Doc. 303 (18-7889); R. Doc. 338 (19-11133). Defendants filed this motion in both the *Ictech-Bendeck* and *Addison* cases. *See id.*

[2] R. Doc. 307 (18-7889); R. Doc. 342 (19-11133).

[3] R. Doc. 344.

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court held a trial on general causation, which took place on January 31, February 1-4, and February 22-25, 2022.[4] On November 29, 2022, this Court issued its Findings of Fact and Conclusions of Law as to general causation, determining odors and gases were emitted by the Landfill;[5] the emissions of gases and odors from the Landfill occurred during the relevant time period;[6] and exposure to the odors and gases emitted by the Landfill at a level of five ppb for thirty minutes was capable of producing the injuries claimed by any one or more of the plaintiffs.[7]

Having found for Plaintiffs at the general causation stage, the Court proposed a test trial be conducted with a select number of *Addison* plaintiffs to provide the parties with the necessary information to advance toward settlement (hereinafter "the first *Addison* trial"). The Court foresees a test trial of approximately eight plaintiffs from different geographic locations.[8] The findings of the jury will be binding on those plaintiffs. Findings of the jury in the first *Addison* trial will not automatically be extrapolated to the claims of all *Addison* Plaintiffs or to class Plaintiffs in the *Ictech-Bendeck* case. The Court set the first *Addison* trial to begin on September 5, 2023.[9]

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

---

[4] No. 18-7889, R. Docs. 243-247, 256-259 (Minute Entries); No. 19-11133, R. Docs. 274-278, 286-289 (same).

[5] *Id.* at p. 5.

[6] *Id.* at p. 26.

[7] *Id.* at p. 27.

[8] R. Doc. 340.

[9] *Id.*

crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.[10]

Accordingly, "Rule 42(b) expresses three separate justifications for bifurcation. A court may separate issues if (1) it would avoid prejudice; (2) it would be convenient to do so; *or* (3) it would be economical or would expedite the litigation to do so."[11] "A motion to bifurcate is a matter within the sole discretion of the trial court, and the Fifth Circuit will not reverse the court's decision absent an abuse of that discretion."[12]

## **ANALYSIS**

In Defendants' motion to bifurcate, Defendants ask the Court to try only specific causation, allocation of causation between Defendants and third parties, and damages at the first *Addison* trial, reserving liability and allocation of fault among Defendants for a later trial—a case management strategy referred to as reverse bifurcation.[13] Defendants argue reverse bifurcation is appropriate because it "would facilitate settlement, promote judicial efficiency, limit juror confusion, and expedite adjudication of Plaintiffs' claims," and "is necessary to prevent significant prejudice to Defendants."[14] In opposition, the *Addison* Plaintiffs argue "[o]nly delay, not judicial economy, is served by such a procedure."[15] Joining in the *Addison* Plaintiffs' opposition, the *Ictech-Bendeck* Plaintiffs argue "Defendants' proposal is the antithesis of judicial efficiency and economy."[16]

Rule 42(b) provides that "a court may separate issues if (1) it would avoid prejudice; (2) it would be convenient to do so; *or* (3) it would be economical or would expedite the litigation to do so."[17] "However, 'separation of issues is not the usual course

---

[10] Fed. R. Civ. P 42(b) (2018).
[11] *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992) (emphasis in original).
[12] *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 662 (W.D. Tex. 2013).
[13] R. Doc. 338-1 at p. ii.
[14] *Id.*
[15] R. Doc. 342 at p. 2.
[16] R. Doc. 307 (18-7889) at p. 2.
[17] *Laitram*, 791 F. Supp. at 115.

that should be followed,' and 'the burden is on the party seeking separate trials to prove that separation is necessary.'"[18] "[T]he Fifth Circuit has correctly cautioned district courts to bear in mind before ordering separate trials in the same case that the 'issue to be tried separately must be so distinct and separable from the others that a trial of it alone may be had without injustice."[19] "That is, even if bifurcation might somehow promote judicial economy, courts should not order separate trials when 'bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.'"[20] "Essentially, then, courts must balance the equities in ruling on a motion to bifurcate."[21] Accordingly, a court may bifurcate if the moving party demonstrates (1) bifurcation would be convenient, or would be economical or expeditious, and (2) the issues are so distinct and separable from the others that bifurcation would not cause prejudice.[22]

Defendants ask the Court to use the reverse bifurcation method—the somewhat less common version of bifurcation—in the first *Addison* trial.[23] The Fifth Circuit has explained the concept of reverse bifurcation:

> "Reverse bifurcation" originated in the Third Circuit as a means of processing that circuit's backlog of asbestos-related cases. As its name suggests, it is a modified bifurcated trial format whereby plaintiffs in a first trial prove only that exposure to some asbestos product has caused their damages. Thereafter, either the cases are settled or remaining issues are resolved in second or third trials.[24]

---

[18] *Id.*
[19] *Laitram*, 791 F. Supp. at 115.
[20] *Id.*
[21] *Id.*
[22] *See id.*
[23] *Cocina Cultura LLC v. State*, 2021 WL 3836840 (D. Or. Aug. 27, 2021) ("Addressing the damages stage ahead of the liability stage, or 'reverse bifurcation' is less common. *See* Wright & Miller, § 2390 Separate Trials—Separation of Liability From Damages, 9A Fed. Prac. & Proc. Civ. § 2390 (3d ed.) (noting reverse bifurcation is 'most often' used to 'deal with the backlog and evidentiary complexity' of asbestos cases but is also used in other contexts); *STC UNM v. Intel Corp.*, No. 10-cv-1077-RB/WDS, 2011 WL 7562686, at *2 (D.N.M. Dec. 22, 2011) (noting some courts refer to reverse bifurcation as 'extraordinary' and 'drastic')).
[24] *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 473 n.8 (5th Cir. 1986).

4

Put another way, reverse bifurcation is the practice of determining causation and damages via a first trial and determining liability in a second, subsequent trial.[25]

The Fifth Circuit has not discussed the circumstances under which reverse bifurcation is appropriate. Having considered non-binding precedent and secondary sources, the Court determines Defendants have failed to establish the necessary elements for bifurcation.

## I.     Convenience and Judicial Economy

Defendants are unable to demonstrate reverse bifurcation advances convenience or judicial economy. "Reverse bifurcation of liability and damages is a sub-species of bifurcation most often employed in large, complex product liability cases."[26]   Reverse bifurcation is frequently used "to encourage settlement and shortening of the trial."[27] "This procedure is most useful where the parties 'have excellent information about the likelihood of success on the issue of liability and the real sticking points are the individual issues of causation and damages."[28] To the contrary, reverse bifurcation is less useful where liability is hotly contested.[29]

When the issues of fault and liability are hotly contested, reverse bifurcation does not advance judicial efficiency. The Court finds the following excerpt from *Reverse Bifurcation*, a University of Cincinnati Law Review article authored by Drury Stevenson, Associate Professor of Law at South Texas College of Law, illustrative of this point:

> Some cases present great uncertainty for the parties on questions of liability. One of the main advantages of reverse bifurcation is that it can usually eliminate uncertainty for the parties by resolving the biggest "unknown" most parties face as they approach litigation: the scope of damages. Uncertainty about the potential size of a verdict interferes with settlements because the parties lack mutual information that would foster

---

[25] *See Johnstone v. American Oil Co.*, 7 F.3d 1217, 1218 (5th Cir. 1993).
[26] *STC UNM v. Intel Corp.*, No. 10-cv-1077 RB/WDS, 2011 WL 7562686, at *1 (D.N.M. Dec. 22, 2011).
[27] *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 25 (E.D. N.Y. 2001).
[28] *Intel Corp.*, No. 10-cv-1077 RB/WDS, 2011 WL 7562686, at *1 (quoting *Simon*, 200 F.R.D at 32).
[29] *Lindland v. TuSimple, Inc.*, No. 21-CV-417 JLS (MDD), 2022 WL 1017891, at *3 (S.D. Ca. Apr. 5, 2022).

an agreement, at least in Coasian terms. When the greatest uncertainty lies in the area of liability, however, the situation is different. . . . In the case where the liability questions present the most room for speculation, . . . reverse bifurcation could simply delay consideration of the questions that keep the parties apart (that is, the real obstacles to quick settlement). Under such circumstances, the parties gain little useful information—in terms of producing agreements—from determining the scope of damages first.[30]

For example, in *STC UNM v. Intel Corp.*, the United States District Court for the District of New Mexico denied the defendant's motion for reverse bifurcation, holding the defendant's arguments that reverse bifurcation would save time and money because a damages calculation would facilitate early settlement were too speculative to support the use of the reverse bifurcation mechanism.[31] The court noted that liability was still hotly-contested and there was nothing suggesting the defendant had any intention of abandoning its defenses as to liability.[32] Therefore, the *Intel Corp.* court stated it found "no significant reason why reverse bifurcation would facilitate early settlement in this case, and accordingly [could not] find that reverse bifurcation would serve the interests of economy or efficiency."[33]

In the instant matter, it is evident to the Court that the fault of each Defendant and of third parties is still hotly contested amongst the parties. Defendants contested their fault and liability at each stage of the litigation prior to the general causation trial. Like in *Intel Corp.*, the Court is not persuaded a test trial solely on specific causation, allocation of causation between Defendants and third parties, and damages would move the parties closer to settlement. Instead, the Court hopes with the benefit of a jury verdict on all aspects of the case, the parties may move toward settlement. Accordingly, Defendants

---

[30] Drury Stevenson, *Reverse Bifurcation*, 75 U. Cin. L. Rev. 213, 256-58 (2006).
[31] *Intel Corp.*, No. 10-cv-1077 RB/WDS, 2011 WL 7562686, at *2.
[32] *Id.*
[33] *Id.*

have failed to demonstrate reverse bifurcation would advance convenience or judicial economy.

## II.    Collateral Estoppel

Defendants express concern that Plaintiffs may argue the results of the first *Addison* trial should have a preclusive effect on subsequent *Ictech-Bendeck* or *Addison* trials under the doctrine of nonmutual offensive collateral estoppel.[34] Defendants state "[t]he Fifth Circuit has left open the possibility of the collateral estoppel effect of bellwether trials in mass tort cases, and Plaintiffs can be expected to argue for it."[35]

However, Defendants' concerns—in their own words—are merely speculation at this stage in the litigation.[36] Courts are not permitted to rule on issues not properly before the Court, as such would be an improper advisory opinion.[37] Plaintiffs have not yet sought the application of collateral estoppel based on the findings of the first *Addison* trial. Moreover, even if Plaintiffs advanced such an argument at this time, the Court could not make a determination whether to apply the doctrine of collateral estoppel now. Whether collateral estoppel is appropriately applied depends on the application of the *Parklane* factors such as judicial economy, fairness, and equity.[38] The conclusions reached based on these considerations depend on which party is asserting collateral estoppel, which issues the party seeks to bar via the doctrine and on what basis, and the specific context

---

[34] R. Doc. 338-1 at pp. 9-11.
[35] *Id.* at p. 10.
[36] *See id.*
[37] U.S. Const. art. III. *See Mid-Continent Cas. Co. v. Petrol. Solutions, Inc.*, 2016 WL 5539895, at *35 (S.D. Tex. Sept. 29, 2016) (reversed on other grounds) (finding the issue of collateral estoppel premature where it had not been fully briefed and the record was not fully developed); *Alexsam, Inc. v. Barnes & Noble, Inc.*, No. 13-cv-3, 2014 WL 12601030, at *2 (E.D. Tex. Mar. 6, 2014) (reversed on other grounds); *Curry v. Shaw Sch. Dist.*, 2007 WL 670962, at *2 (N.D. Miss. Feb. 28, 2007) (finding the consideration of collateral estoppel was premature at an early stage of litigation where evidence had not been collected and hearings were not conducted); *Chambers v. Stalder*, 995 F.2d 223, 223 (5th Cir. 1993) (finding the district court's bar of collateral estoppel to be premature where there was not yet a final judgment to consider).
[38] *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

in which the doctrine is being raised.[39] The Court is not informed enough to make a determination regarding the preclusive effects of the first *Addison* trial at this stage in the litigation. The Court refrains from offering what would be an advisory opinion as to whether collateral estoppel may be applied in favor of any party at some time in the future.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to bifurcate the trial is **DENIED**.[40] The parties are reminded that their joint proposed case management order for the first *Addison* trial is due on or before **Tuesday, March 7, 2023**.[41]

**New Orleans, Louisiana, this 28th day of February, 2023.**

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[39] Depending on the outcome of the first *Addison* trial, it may turn out to be Defendants who later seek to obtain the benefits of collateral estoppel based on a positive outcome in the first *Addison* trial.

[40] R. Doc. 338.

[41] In this Court's February 7, 2023 Minute Entry, the Court ordered the parties to email their joint case management order to the Court within seven days of this Court's ruling on the instant motion to bifurcate the trial. R. Doc. 340.

MINUTE ENTRY
MORGAN, J.
March 21, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** | **CIVIL ACTION** |
|     **Plaintiff** | |
| | |
| **VERSUS** | **NO. 18-7889** |
| |     **c/w 18-8071,** |
| |     **18-8218, 18-9312** |
| | |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** | **SECTION: "E" (5)** |
|     **Defendants** | |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
|     **Plaintiffs** | |
| | |
| **VERSUS** | **NO. 19-11133** |
| |     **c/w 19-14512** |
| | |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | **SECTION: "E"(5)** |
|     **Defendants** | |

*Applies to: All Cases*

## <u>MINUTE ENTRY</u>

A telephone status conference was held on March 21, 2023, at 11:00 a.m., in the chambers of Judge Susie Morgan.

    Present:    Jason Landry, counsel for Plaintiff, Elias Jorge Ictech-Bendeck;

Kacie Gray, counsel for Plaintiff, Savannah Thompson;

Bruce Betzer, counsel for Plaintiffs, Larry Bernard, Sr. and Mona Bernard;

Eliza James, Allen Foster, Eric Rowe, and Erik Bolog, counsel for All Addison Plaintiffs;

Eliza James, counsel for Consolidated Fleming Plaintiffs;

Michael Mims, Megan Brillault, and John Paul, counsel for Defendants and Consolidated Defendants, Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company;

Mike DiGiglia and John Baay, counsel for Defendant, Aptim Corp.; and

Michael Futrell and Matthew Moghis, counsel for Defendant, Parish of Jefferson.

Not Present: Edwin Shorty, counsel for Plaintiff, Nicole M. Landry-Boudreaux.

The parties discussed their joint proposed case management order. The parties shall email a revised joint proposed case management order to the Court on or before **Friday, March 31, 2023**.

The Court set a telephone status conference for **Tuesday, April 4, 2023, at 9:00 a.m**.

**New Orleans, Louisiana, this 21st day of March, 2023.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

JS10 (1:01)

2
App. 546

MINUTE ENTRY
MORGAN, J.
March 31, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7889** c/w 18-8071, 18-8218, 18-9312 |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** Defendants | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11133** c/w 19-14512 |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** Defendants | **SECTION: "E"(5)** |

*Applies to: All Cases*

## <u>MINUTE ENTRY</u>

A telephone status conference was held on March 31, 2023, at 1:00 p.m., in the

chambers of Judge Susie Morgan.

Present: Douglas Hammel and Jason Landry, counsel for Plaintiff, Elias Jorge Ictech-Bendeck;

Kacie Gray, counsel for Plaintiff, Savannah Thompson;

Bruce Betzer, counsel for Plaintiffs, Larry Bernard, Sr. and Mona Bernard;

Eliza James, Allen Foster, and Eric Rowe, counsel for All Addison Plaintiffs;

Eliza James, counsel for Consolidated Fleming Plaintiffs;

Michael Mims, Megan Brillault, John Paul, and Michael Vitris, counsel for Defendants and Consolidated Defendants, Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company;

John DiGiglia and John Baay, counsel for Defendant, Aptim Corp.; and

Michael Futrell and Matthew Moghis, counsel for Defendant, Parish of Jefferson.

Not Present: Edwin Shorty, counsel for Plaintiff, Nicole M. Landry-Boudreaux.

Plaintiffs will be allowed to use the Gremillion family as their family unit. Defendants may depose the father and the mother of the Gremillion family. If, after deposing the father and the mother, Defendants have reasonable grounds for deposing the two minor children, Defendants will seek leave of court to do so. Defendants are not permitted to use the Ferrell family as their family unit and shall pick a new family unit.

It is clarified that the depositions of the family units designated by Plaintiffs and Defendants will take place after April 21, 2023.

Plaintiffs are not permitted to attend the depositions of other Plaintiffs.

Defendants will identify three new individual Plaintiffs by **April 7, 2023**.[1] All depositions shall be completed on or before **April 21, 2023**. On or before **May 1, 2023**,

---

[1] Defendants' new Plaintiffs shall replace those described in the following manner in Plaintiffs' March 27, 2023 Letter to the Court: (1) the plaintiff with "convictions beginning in 2009 through 2021;" (2) the

Plaintiffs will identify four Plaintiffs whose cases will be tried, and Defendants will identify four Plaintiffs whose cases will be tried.

These deadlines shall be reflected in the parties' joint proposed Case Management Order.

**New Orleans, Louisiana, this 31st day of March, 2023.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

JS10 (1:06)

---

plaintiff "with a conviction for forcible rape and child molestation;" and (3) the plaintiff "who was married to a local and well-known fraudster." Plaintiffs' Mar. 27, 2023 Letter to the Court, at p. 2, ¶ 4.

MINUTE ENTRY
MORGAN, J.
April 6, 2023

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** <br>     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7889** <br>     **c/w 18-8071,** <br>     **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** <br>     **Defendants** | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** <br>     **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11133** <br>     **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** <br>     **Defendants** | **SECTION: "E"(5)** |

*Applies to: All Cases*

## MINUTE ENTRY

A telephone status conference was held on April 6, 2023, at 9:00 a.m., in the chambers of Judge Susie Morgan.

    Present:    Jason Landry, counsel for Plaintiff, Elias Jorge Ictech-Bendeck;

Kacie Gray, counsel for Plaintiff, Savannah Thompson;

Bruce Betzer, counsel for Plaintiffs, Larry Bernard, Sr. and Mona Bernard;

Eliza James and Eric Rowe, counsel for All Addison Plaintiffs;

Eliza James, counsel for Consolidated Fleming Plaintiffs;

Michael Mims, Megan Brillault, and John Paul, counsel for Defendants and Consolidated Defendants, Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company;

John Baay, counsel for Defendant, Aptim Corp.; and

Michael Futrell and Matthew Moghis, counsel for Defendant, Parish of Jefferson.

Not Present: Edwin Shorty, counsel for Plaintiff, Nicole M. Landry-Boudreaux.

On March 21, 2023, the Court held a telephone status conference to address the parties' disagreements related to the first proposed case management order for the first *Addison* trial. The parties disagreed over whether *Daubert* motions would be allowed only for new opinions expressed by current experts and opinions expressed by new experts, or whether *Daubert* motions would be allowed for the testimony of experts already heard at the General Causation Trial.

The Court communicated with the parties on March 23, 2023, to resolve this dispute. The Court determined that *Daubert* motions will be allowed only for new opinions expressed by current experts and opinions expressed by new experts. In light of the instruction to the Court that questions relating to the bases and sources of an expert's opinion should be left for the finder of fact, and the testimony and cross-examination at the hearing on general causation, the Court is convinced these experts should be allowed to testify. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

The parties discussed the second proposed case management order. With respect to Section IV(B)(2), Plaintiffs (collectively) will be allowed to serve up to twenty-five requests for production upon each Defendant without leave of court. Any requests for production in excess of this limit, except those agreed upon by the parties, will require leave of court.

The parties shall submit their third proposed case management order on or before **Thursday, April 13, 2023.**

Any motions to compel responses to outstanding discovery propounded on the Waste Connections Defendants shall be filed on or before **Friday, April 14, 2023.** Any oppositions shall be filed on or before **Monday, April 24, 2023.**

The Court set a telephone status conference for **Tuesday, April 25, 2023, at 1:00 p.m.** at which time the Court will discuss with the parties any pending motions to compel.

**New Orleans, Louisiana, this 6th day of April, 2023.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

JS10 (0:41)

3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-11133**<br>        **c/w 19-14512** |
| **LOUISIANA REGIONAL**<br>**LANDFILL COMPANY, ET AL.,**<br>    **Defendants** | **SECTION: "E"(5)** |

*Applies to: Both Cases*

### ORDER AND REASONS

Before the Court is Defendants' motion for summary judgment,[1] seeking summary judgment as to the claims of twenty-three Plaintiffs they contend lack evidence of injury based on Fact Sheet Responses. Plaintiffs oppose this motion.[2] Defendants filed a reply.[3]

In Defendants' motion for summary judgment, Defendants argue, based on the Plaintiffs' Fact Sheet responses, that twenty Plaintiffs did not experience injuries determined by this Court to result from exposure to Landfill odors or emissions in its November 29, 2022 Findings of Fact and Conclusions of Law on general causation.[4] Defendants further argue three Plaintiffs did not indicate on their Fact Sheet responses that they smelled Landfill odors, a prerequisite to experience injury according to the Court's Findings of Fact and Conclusions of Law.[5] In substance, Defendants argue Plaintiffs cannot demonstrate the requisite causation to sustain their negligence and

---

[1] R. Doc. 345.
[2] R. Doc. 360.
[3] R. Doc. 364.
[4] R. Doc. 345-2 at pp. 6-12.
[5] *Id.* at p. 12.

nuisance claims because the Landfill odors and emissions could not have caused Plaintiffs' alleged injuries. Put another way, Defendants argue a positive finding on causation as to these twenty-three Plaintiffs would be in direct contradiction to this Court's Findings of Fact and Conclusions of Law.

In opposition to Defendants' motion, Plaintiffs argue (1) the Fact Sheets are not competent summary judgment evidence and therefore Defendants have failed to carry their initial burden;[6] (2) the Fact Sheets did not elicit testimony as to all possible symptoms claimed by Plaintiffs, and the Plaintiffs at issue in this motion had additional injuries resulting from the Landfill odors;[7] and (3) three Plaintiffs inadvertently stated they did not smell the Landfill odors in their Fact Sheet responses, when they did actually smell the odors.[8]

In support of their arguments, Plaintiffs rely on declarations made by Plaintiffs clarifying the symptoms and odors they allegedly experienced as a result of the Landfill emissions.[9] Plaintiffs have the right to submit declarations in connection with their

---

[6] R. Doc. 360 at p. 20. Plaintiffs contend the Fact Sheet responses are not competent summary judgment evidence. The Court disagrees. In this Court's December 12, 2019 Order, the Court stated "Plaintiffs' responses to the Fact Sheets shall be treated as answers to interrogatories under Fed. R. Civ. P. 33 and shall be supplemented in accordance with Fed. R. Civ. P. 26." R. Doc. 85. "Interrogatory responses may constitute competent summary judgment evidence if they satisfy the other requirements of Rule 56." *Tesco Corp. v. Weatherford Intern., Inc.*, 904 F. Supp. 2d 622, 636 (S.D. Tex. 2012). In relevant part, Rule 56(a)(4) requires "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). Regardless of a representation that a declaration is made "on information and belief" or "on personal knowledge," if the substance demonstrates that "the affiant has personal knowledge of the facts contained therein," the Rule 56 requirement has been met. *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 846 (S.D. Tex. 2011). Plaintiffs who filled out the Fact Sheet responses themselves plainly did so "on personal knowledge." Plaintiffs' responses were directly related to their personal experiences with the odors emitted from the Landfill. There is no one more directly connected to Plaintiffs' personal experiences and symptoms than Plaintiffs themselves.

[7] R. Doc. 360 at p. 17.

[8] *Id.* at p. 25.

[9] *See* R. Doc. 358 and attachments. Defendants argue Plaintiffs are not able to assert quality of life damages at this stage because Plaintiffs did not state they were seeking quality of life damages in the First Amended and Supplemental Omnibus Complaint. Plaintiffs have, however, stated sufficient facts upon which the Court finds quality of life damages may be raised. Plaintiffs are not required to use specific language in their Complaint. *Miller v. Thibeaux*, 159 So. 3d 426, 432 (La. 2015) (discussing Louisiana's fact-pleading system).

opposition to Defendants' motion for summary judgment.[10] Even still, three Plaintiffs failed to demonstrate a genuine dispute of material fact exists as to causation. As to the remaining Plaintiffs, Plaintiffs' declarations raise genuine issues of material fact with respect to causation.

## I.  Summary Judgment is Granted with Respect to Plaintiffs Marybeth Eaton, Nancy Johnson, and Ann Williams.

Plaintiffs Marybeth Eaton, Nancy Johnson, and Ann Williams failed to demonstrate there are genuine issues of material fact with respect to causation. Defendants argue Plaintiff Marybeth Eaton's Fact Sheet responses indicate she is not pursuing claims for personal injury, lost wages, or physical damages to property, nor did she identify any injuries or symptoms.[11] While Plaintiff Marybeth Eaton did attach a declaration in support of her opposition, Plaintiff's declaration merely describes the odor, the time period in which she alleges she was exposed, and the location where she smelled the odor.[12] Plaintiff's declaration fails to disclose any symptoms she alleges she experienced such that she could avoid summary judgment. Accordingly, the Court finds Plaintiff Marybeth Eaton has not carried her burden of demonstrating a genuine dispute of material fact exists with respect to causation.

Likewise, Defendants contend Plaintiffs Nancy Johnson and Ann Williams are not able to demonstrate causation based on this Court's Findings of Fact and Conclusions of Law.[13] First, Plaintiff Nancy Johnson's Fact Sheet responses indicate she is not pursuing claims for personal injury, lost wages, or physical damage to property, nor did she identify

---

[10] *Gahagan v. U.S. Citizenship and Immigration Servs.*, 147 F. Supp. 3d 613, 621 (E.D. La. Dec. 2, 2015) (noting declarations in opposition to summary judgment are permissible, so long as they are made on personal knowledge, as required by Federal Rule of Civil Procedure 56(c)(4)).

[11] R. Doc. 345-2 at p. 7.

[12] *Id.*

[13] *Id.* at p. 8.

any symptoms of injuries.[14] Likewise, in her Fact Sheet responses, Plaintiff Ann Williams did not identify any claims for lost wages or physical damages to property, or any impacts on her home.[15] While Plaintiff Ann Williams stated she experienced "sinus, allergies, and nose bleeds," these are excluded physiological injuries based on this Court's Findings of Fact and Conclusions of Law.[16] Moreover, neither Plaintiff Nancy Johnson nor Ann Williams provided a declaration in opposition to the motion for summary judgment.[17] Plaintiffs Nancy Johnson and Ann Williams have failed to demonstrate a genuine issue of material fact exists with respect to causation.

Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiffs Marybeth Eaton, Nancy Johnson, and Ann Williams.

## II.     Summary Judgment Is Denied with Respect to the Remaining Plaintiffs.

As to the remaining Plaintiffs, the Court finds Plaintiffs have raised genuine issues of material fact with respect to causation. By way of example, Defendants contend Plaintiff Thomas Eaton did not allege symptoms upon which he could recover.[18] However, his Fact Sheet response states "the smell makes life hard."[19] Construing Plaintiff's Fact Sheet response in the light most favorable to Plaintiff, there exists a genuine issue of material fact as to whether Plaintiff Thomas Eaton experienced impacts on his quality of life because of the Landfill odors. Defendants argue Plaintiff Alfreda Hardin solely stated she experienced "breathing problems, lung issues, stroke at 34, chronic respiratory failure, chronic bronchitis, hypertension, and chronic renal failure," all of which are

---

[14] *Id.* at p. 10.
[15] *Id.*
[16] *Id.*
[17] *See* R. Doc. 358.
[18] R. Doc. 345-2 at p. 7.
[19] R. Doc. 345-7 at p. 4.

excluded physiological injuries.[20] However, Plaintiff Alfreda Hardin's declaration states she also experienced anxiety and impacts on her quality of life.[21]

Similarly, Defendants contend Plaintiffs Deborah Fleming and Mia Fontana did not smell the Landfill odors, a prerequisite for experiencing symptoms.[22] Plaintiffs Deborah Fleming and Mia Fontana did not check the boxes on the Fact Sheet indicating when they smelled the odors during the relevant time period.[23] Plaintiffs' declarations explain that they inadvertently failed to check the required boxes, but that their other Fact Sheet responses demonstrate they did in fact smell the Landfill odors.[24] Indeed, Plaintiffs' other Fact Sheet responses contained contradictory information that could lead a reasonable jury to conclude they did smell the Landfill odors.[25] Accordingly, there is a genuine dispute of material fact as to whether Plaintiffs Deborah Fleming and Mia Fontana smelled the Landfill odors. The remaining Plaintiffs are similarly situated such that the Court finds Plaintiffs' Fact Sheet responses and declarations create a genuine dispute of material fact with respect to causation.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.[26]

Defendants' motion for summary judgment is granted as to Plaintiffs Marybeth Eaton, Nancy Johnson, and Ann Williams.

---

[20] R. Doc. 345-2 at p. 7.
[21] R. Doc. 360-8 at pp. 1-2.
[22] R. Doc. 345-2 at p. 12.
[23] *Id.*
[24] R. Doc. 360 at pp. 4, 24-25.
[25] *Id.* at pp. 24-25.
[26] R. Doc. 338.

Defendants' motion for summary judgment is denied as to Plaintiffs J.M., Thomas Eaton, K.G., Charles Robertson, Mary Summerall, Echelle Bates, O.B., P.C., Patty Crier, Randy Frickey, Rickey Frickey, J.T., Chance Palazzolo, G.R., C.G.1, C.G.2, Alfreda Hardin, Deborah Fleming, Mia Fontana, and Lorena Carter.

**New Orleans, Louisiana, this 12th day of April, 2023.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

**Sandra A. Fischer**

| | |
|---|---|
| **From:** | Tina Flores <Tina_Flores@laed.uscourts.gov> |
| **Sent:** | Friday, February 18, 2022 2:20 PM |
| **To:** | Michael C. Mims; Brandon Sprague; Moghis@connicklaw.com; airpino@irpinolaw.com; angela@favretlaw.com; bruce@brucebetzer.com; casey@johnsileolaw.com; dean@favretlaw.com; douglashammel@gmail.com; dsmith@eshortylawoffice.com; David R. Taggart; egieger@glllaw.com; eshorty@eshortylawoffice.com; freddiekingiii@yahoo.com; hharper@hlharperandassociates.com; jack@johnsileolaw.com; jbaay@glllaw.com; jennifer@brucebetzer.com; jjl@mbfirm.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; jzl@mbfirm.com; kciolino@bdlaw.com; kgray@irpinolaw.com; kkrebs@bdlaw.com; lcentola@mbfirm.com; lfavret@favretlaw.com; lhiggins@irpinolaw.com; maxtobias504@aol.com; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com; nnazareth@mbfirm.com; pconnick@connicklaw.com; probertson@irpinolaw.com; seth@favretlaw.com; srb@mbfirm.com; vpexnicios@exnicioslaw.com; CAFoster@wtplaw.com; MChilders@wtplaw.com; Moghis@connicklaw.com; byron@fcjlaw.com; David R. Taggart; ebolog@wtplaw.com; egieger@glllaw.com; eliza@fcjlaw.com; erowe@wtplaw.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; kciolino@bdlaw.com; kkrebs@bdlaw.com; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com; pconnick@connicklaw.com |
| **Cc:** | Brandon Sprague |
| **Subject:** | **TIME CHANGE** RE: Status Conference February 21, 2022, at 11:00 AM re 18-cv-07889-SM-MBN (Ictech-Bendeck) & 19-11133 (Addison) |

Dear Counsel,

Due to a conflict, the time of this conference has been changed. This conference will be held on **Monday, February 21, 2022, at 11:00 a.m.**

Since Monday is a federal holiday, a court reporter will not be present for this conference. Please be reminded that parties are prohibited from recording any court proceedings.

Thank you,
Tina
_____

Tina Flores
Judicial Assistant
to U.S. District Judge Susie Morgan
500 Poydras Street, Room C322
New Orleans, Louisiana 70130
Telephone: 504.589.7535

**From:** Michael C. Mims <mmims@bradleyfirm.com>
**Sent:** Friday, February 18, 2022 12:29 PM

**To:** Brandon Sprague <Brandon_Sprague@laed.uscourts.gov>; Moghis@connicklaw.com; airpino@irpinolaw.com; angela@favretlaw.com; bruce@brucebetzer.com; casey@johnsileolaw.com; dean@favretlaw.com; douglashammel@gmail.com; dsmith@eshortylawoffice.com; David R. Taggart <dtaggart@bradleyfirm.com>; egieger@glllaw.com; eshorty@eshortylawoffice.com; freddiekingiii@yahoo.com; hharper@hlharperandassociates.com; jack@johnsileolaw.com; jbaay@glllaw.com; jennifer@brucebetzer.com; jjl@mbfirm.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; jzl@mbfirm.com; kciolino@bdlaw.com; kgray@irpinolaw.com; kkrebs@bdlaw.com; lcentola@mbfirm.com; lfavret@favretlaw.com; lhiggins@irpinolaw.com; maxtobias504@aol.com; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com; nnazareth@mbfirm.com; pconnick@connicklaw.com; probertson@irpinolaw.com; seth@favretlaw.com; srb@mbfirm.com; vpexnicios@exnicioslaw.com; CAFoster@wtplaw.com; MChilders@wtplaw.com; Moghis@connicklaw.com; byron@fcjlaw.com; David R. Taggart <dtaggart@bradleyfirm.com>; ebolog@wtplaw.com; egieger@glllaw.com; eliza@fcjlaw.com; erowe@wtplaw.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; kciolino@bdlaw.com; kkrebs@bdlaw.com; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com; pconnick@connicklaw.com
**Cc:** Tina Flores <Tina_Flores@laed.uscourts.gov>
**Subject:** RE: Status Conference February 21, 2022, at 10:00AM re 18-cv-07889-SM-MBN (Ictech-Bendeck) & 19-11133 (Addison)

<mark>**CAUTION - EXTERNAL:**</mark>

Mr. Sprague, thank you for your e-mail. We will submit the proposed demonstratives in short order. In addition, the Defendants respectfully request that Monday's status conference be conducted on the record and before a court reporter. If we can assist in any way, please let us know.

Sincerely,

**Michael Mims**
*Member*

**BradleyMurchison**
T: (504) 596-6300; D: (504) 596-6136; mmims@bradleyfirm.com

**From:** Brandon Sprague <Brandon_Sprague@laed.uscourts.gov>
**Sent:** Friday, February 18, 2022 11:17 AM
**To:** Moghis@connicklaw.com; airpino@irpinolaw.com; angela@favretlaw.com; bruce@brucebetzer.com; casey@johnsileolaw.com; dean@favretlaw.com; douglashammel@gmail.com; dsmith@eshortylawoffice.com; David R. Taggart <dtaggart@bradleyfirm.com>; egieger@glllaw.com; eshorty@eshortylawoffice.com; freddiekingiii@yahoo.com; hharper@hlharperandassociates.com; jack@johnsileolaw.com; jbaay@glllaw.com; jennifer@brucebetzer.com; jjl@mbfirm.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; jzl@mbfirm.com; kciolino@bdlaw.com; kgray@irpinolaw.com; kkrebs@bdlaw.com; lcentola@mbfirm.com; lfavret@favretlaw.com; lhiggins@irpinolaw.com; maxtobias504@aol.com; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; Michael C. Mims <mmims@bradleyfirm.com>; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com; nnazareth@mbfirm.com; pconnick@connicklaw.com; probertson@irpinolaw.com; seth@favretlaw.com; srb@mbfirm.com; vpexnicios@exnicioslaw.com; CAFoster@wtplaw.com; MChilders@wtplaw.com; Moghis@connicklaw.com; byron@fcjlaw.com; David R. Taggart <dtaggart@bradleyfirm.com>; ebolog@wtplaw.com; egieger@glllaw.com; eliza@fcjlaw.com; erowe@wtplaw.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; kciolino@bdlaw.com; kkrebs@bdlaw.com; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; Michael C. Mims <mmims@bradleyfirm.com>; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com;

2

pconnick@connicklaw.com
**Cc:** Tina Flores <Tina_Flores@laed.uscourts.gov>
**Subject:** Status Conference February 21, 2022, at 10:00A M re 18-cv-07889-SM-MBN (Ictech-Bendeck) & 19-11133 (Addison)

Good morning Counsel,

Defendants have filed a motion in limine regarding their experts' ability to respond to Plaintiffs' supplemental expert reports (No. 18-7889, R. Doc. 249; No. 19-11133, R. Doc. 279). The Court will hold a video status conference **Monday, February 21, 2022, at** ~~10:00~~ **11:00 a.m.** to discuss this motion. The Court will provide the parties instructions on how to participate.

In advance of this conference, Defendants should send to the Court's eFile address copies of the demonstrative exhibits they intend to use to illustrate their experts' response to the Plaintiffs' supplemental expert reports.

Plaintiffs should file any opposition to Defendants' motion in limine on or before **Sunday, February 20, 2022**.

Thank you.

Brandon

_____
Brandon Sprague
Law Clerk to the Honorable Susie Morgan
United States District Court, Eastern District of Louisiana
500 Poydras Street, Room C322
New Orleans, LA  70130
504-589-7535

**CAUTION: EXTERNAL EMAIL -** This email originated from outside of Bradley Murchison Kelly & Shea. Do not click links or open attachments unless you recognize the sender & know the content is safe.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION: EXTERNAL EMAIL -** This email originated from outside of Bradley Murchison Kelly & Shea. Do not click links or open attachments unless you recognize the sender & know the content is safe.

**Sandra A. Fischer**

| | |
|---|---|
| **From:** | Brandon Sprague <Brandon_Sprague@laed.uscourts.gov> |
| **Sent:** | Sunday, February 20, 2022 3:25 PM |
| **To:** | Megan R. Brillault |
| **Cc:** | Matthew Moghis; Nick Bergeron; James B. Slaughter; hharper@hlharperandassociates.com; MChilders@wtplaw.com; Katrina M. Krebs; byron@fcjlaw.com; bruce@brucebetzer.com; angela@favretlaw.com; Neil F. Nazareth; maxtobias504@aol.com; Mike Futrell; seth@favretlaw.com; casey@johnsileolaw.com; jack@johnsileolaw.com; David R. Taggart; Michael F. Vitris; dsmith@eshortylawoffice.com; erowe@wtplaw.com; kgray@irpinolaw.com; ebolo g@wtplaw.com; jennifer@brucebetzer.com; freddiekingiii@yahoo.com; John H. Paul; airpino@irpinolaw.com; CAFoster@wtplaw.com; Larry J. Centola; Peter Connick; Scott R. Bickford; eshorty@eshortylawoffice.com; Tina Flores; vpexnicios@exnicioslaw.com; eliza@fcjlaw.com; egieger@glllaw.com; Michael C. Mims; John Baay; Mike DiGiglia; probertson@irpinolaw.com; Michael G. Murphy; Jeremy J. Landry; lfavret@favretlaw.com; dean@favretlaw.com; lhiggins@irpinolaw.com; douglashammel@gmail.com; Katelyn E. Ciolino; Jason Z. Landry |
| **Subject:** | RE: Status Conference February 21, 2022, at 10:00AM re 18-cv-07889-SM-MBN (Ictech-Bendeck) & 19-11133 (Addison) |

Dear Counsel,

The Court will not allow Defendants to use their own retained court reporter at tomorrow's status conference.

Thank you,
Brandon

---

Brandon Sprague
Law Clerk to the Honorable Susie Morgan
United States District Court, Eastern District of Louisiana
500 Poydras Street, Room C322
New Orleans, LA 70130
504-589-7535

---

**From:** Megan R. Brillault <MBrillault@bdlaw.com>
**Sent:** Saturday, February 19, 2022 4:54 PM
**To:** eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Cc:** Matthew Moghis <moghis@connicklaw.com>; Nick Bergeron <nbergeron@glllaw.com>; James B. Slaughter <JSlaughter@bdlaw.com>; hharper@hlharperandassociates.com; MChilders@wtplaw.com; Katrina M. Krebs <KKrebs@bdlaw.com>; byron@fcjlaw.com; bruce@brucebetzer.com; angela@favretlaw.com; Neil F. Nazareth <nnazareth@mbfirm.com>; maxtobias504@aol.com; Mike Futrell <mfutrell@connicklaw.com>; seth@favretlaw.com; casey@johnsileolaw.com; jack@johnsileolaw.com; David R. Taggart <dtaggart@bradleyfirm.com>; Michael F. Vitris <MVitris@bdlaw.com>; dsmith@eshortylawoffice.com; erowe@wtplaw.com; kgray@irpinolaw.com; ebolo g@wtplaw.com <ebolog@wtplaw.com>; jennifer@brucebetzer.com; freddiekingiii@yahoo.com; John H. Paul <JPaul@bdlaw.com>; airpino@irpinolaw.com; CAFoster@wtplaw.com; Larry J. Centola <lcentola@mbfirm.com>; Peter Connick <pconnick@connicklaw.com>; Scott R. Bickford <srb@mbfirm.com>; eshorty@eshortylawoffice.com; Tina Flores <Tina_Flores@laed.uscourts.gov>; vpexnicios@exnicioslaw.com; eliza@fcjlaw.com; egieger@glllaw.com; Michael Mims <mmims@bradleyfirm.com>; John Baay <jbaay@glllaw.com>; Mike DiGiglia <mdigiglia@glllaw.com>;

**App. 562**

probertson@irpinolaw.com; Michael G. Murphy <MMurphy@bdlaw.com>; Jeremy J. Landry <jjl@mbfirm.com>; lfavret@favretlaw.com; Brandon Sprague <Brandon_Sprague@laed.uscourts.gov>; dean@favretlaw.com; lhiggins@irpinolaw.com; douglashammel@gmail.com; Katelyn E. Ciolino <KCiolino@bdlaw.com>; Jason Z. Landry <jzl@mbfirm.com>
**Subject:** RE: Status Conference February 21, 2022, at 10:00A<u>M re 18-cv-07889-SM-MBN</u> (Ictech-Bendeck) & 19-11133 (Addison)

<mark>**CAUTION - EXTERNAL:**</mark>

Dear Judge Morgan,

As requested, attached please find a letter on behalf of the Defendants listing the materials on which each relevant expert relied to prepare each proposed demonstrative.

In addition, as noted in the letter, we received Ms. Flores' e-mail from yesterday notifying us that a court reporter would not be available for Monday's status conference in light of the federal holiday. Given the importance of Monday's status conference and its potential to assist the parties' preparation for trial, the Defendants respectfully propose to retain a certified court reporter to participate in the conference. Please let us know if this is agreeable to the Court.

Respectfully submitted,

Megan Brillault

**Megan R. Brillault**
Principal

**BEVERIDGE & DIAMOND PC**
O +1.212.702.5414 ~ M +1.914.329.3598 ~ MBrillault@bdlaw.com

---

**From:** Jason Z. Landry <jzl@mbfirm.com>
**Sent:** Saturday, February 19, 2022 4:39 PM
**To:** eFile-Morgan <eFile-Morgan@laed.uscourts.gov>
**Cc:** Matthew Moghis <moghis@connicklaw.com>; Nick Bergeron <nbergeron@glllaw.com>; James B. Slaughter <JSlaughter@bdlaw.com>; hharper@hlharperandassociates.com; MChilders@wtplaw.com; Katrina M. Krebs <KKrebs@bdlaw.com>; byron@fcjlaw.com; bruce@brucebetzer.com; angela@favretlaw.com; Neil F. Nazareth <nnazareth@mbfirm.com>; maxtobias504@aol.com; Mike Futrell <mfutrell@connicklaw.com>; seth@favretlaw.com; casey@johnsileolaw.com; jack@johnsileolaw.com; David R. Taggart <dtaggart@bradleyfirm.com>; Michael F. Vitris <MVitris@bdlaw.com>; dsmith@eshortylawoffice.com; erowe@wtplaw.com; kgray@irpinolaw.com; ebolo g@wtplaw.com <ebolog@wtplaw.com>; jennifer@brucebetzer.com; freddiekingiii@yahoo.com; John H. Paul <JPaul@bdlaw.com>; airpino@irpinolaw.com; CAFoster@wtplaw.com; Larry J. Centola <lcentola@mbfirm.com>; Peter Connick <pconnick@connicklaw.com>; Scott R. Bickford <srb@mbfirm.com>; eshorty@eshortylawoffice.com; Tina Flores <Tina_Flores@laed.uscourts.gov>; vpexnicios@exnicioslaw.com; eliza@fcjlaw.com; egieger@glllaw.com; Michael Mims <mmims@bradleyfirm.com>; John Baay <jbaay@glllaw.com>; Mike DiGiglia <mdigiglia@glllaw.com>; Megan R. Brillault <MBrillault@bdlaw.com>; probertson@irpinolaw.com; Michael G. Murphy <MMurphy@bdlaw.com>; Jeremy J. Landry <jjl@mbfirm.com>; lfavret@favretlaw.com; Brandon Sprague <Brandon_Sprague@laed.uscourts.gov>; dean@favretlaw.com; lhiggins@irpinolaw.com; douglashammel@gmail.com; Katelyn E. Ciolino <KCiolino@bdlaw.com>
**Subject:** RE: Status Conference February 21, 2022, at 10:00A<u>M re 18-cv-07889-SM-MBN</u> (Ictech-Bendeck) & 19-11133 (Addison)

Dear Judge Morgan,

In response to the question conveyed by Mr. Sprague earlier today, Plaintiffs may well wish to depose Defendants' experts regarding the proposed demonstrative exhibits. We will have a better idea regarding the length and scope of such depositions, as well as the necessity thereof, after we have received and reviewed Defendants' submission today. However, our taking of any such depositions should not be construed as a waiver of any available objections to testimony and opinions that were not set out in the expert reports and disclosures provided to date. Further, Plaintiffs' biggest concern is that the demonstrative exhibits proposed by the Defendants may not include all the new opinions that Defendants' experts may seek to render at trial this week. Thus, without further clarity from the Defendants as to the bases of the proposed demonstrative exhibits or the anticipated new opinions their experts may seek to render, Plaintiffs cannot definitively speak to the length and scope of any such depositions at this time. As we will explain further in our opposition to the motion in limine that we will file tomorrow, some limited testimony from certain of the defense experts relating to Plaintiffs' supplemental reports may well be appropriate. However, the demonstrative exhibits that have been provided to us indicate that the planned testimony will go way beyond what is necessary to respond to the supplemental reports.

As to logistics, if the hearing starts on Wednesday, then Plaintiffs anticipate that we will need to extend the hearing into Friday. While Plaintiffs do not believe that would pose any issues regarding their experts' availability for rebuttal, we are still working to confirm same.

Should this Honorable Court require any further information or clarification, please let us know.

Respectfully submitted,

Jason

**Jason Z. Landry**
Martzell, Bickford & Centola, A.P.C.
338 Lafayette St.
New Orleans,  LA  70130
**Phone : 504-581-9065**
**Fax : 504-581-7635**
jzl@mbfirm.com



Confidentiality Notice: The information contained in this e-mail (and/or the documents accompanying it) is private and confidential information belonging to the sender which may be protected by the attorney-client privilege, attorney work product or other legal privileges. Delivery of this message to any person other than the intended recipient is not intended in any way to waive privilege or confidentiality. The information is intended only for the use of the individual(s) identified above and others who have been specifically authorized to receive it. If you are not the intended recipient or believe that you have received this communication in error, do not print, copy, retransmit, disseminate, or otherwise use the information. If you have received the transmission in error, please alert the sender that you have received this email by reply e-mail and delete the copy you received. Thank you.

**From:** Brandon Sprague <Brandon_Sprague@laed.uscourts.gov>
**Sent:** Saturday, February 19, 2022 9:28 AM
**To:** Katelyn E. Ciolino <KCiolino@bdlaw.com>
**Cc:** Matthew Moghis <moghis@connicklaw.com>; Nick Bergeron <nbergeron@glllaw.com>; James B. Slaughter <JSlaughter@bdlaw.com>; hharper@hlharperandassociates.com; MChilders@wtplaw.com; Katrina M. Krebs <KKrebs@bdlaw.com>; byron@fcjlaw.com; bruce@brucebetzer.com; angela@favretlaw.com; Neil F. Nazareth <nnazareth@mbfirm.com>; maxtobias504@aol.com; Mike Futrell <mfutrell@connicklaw.com>; seth@favretlaw.com;

casey@johnsileolaw.com; jack@johnsileolaw.com; David R. Taggart <dtaggart@bradleyfirm.com>; Michael F. Vitris <MVitris@bdlaw.com>; dsmith@eshortylawoffice.com; erowe@wtplaw.com; kgray@irpinolaw.com; ebolo g@wtplaw.com <ebolog@wtplaw.com>; jennifer@brucebetzer.com; freddiekingiii@yahoo.com; John H. Paul <JPaul@bdlaw.com>; airpino@irpinolaw.com; CAFoster@wtplaw.com; Larry J. Centola <lcentola@mbfirm.com>; Peter Connick <pconnick@connicklaw.com>; Scott R. Bickford <srb@mbfirm.com>; Jason Z. Landry <jzl@mbfirm.com>; eshorty@eshortylawoffice.com; Tina Flores <Tina_Flores@laed.uscourts.gov>; vpexnicios@exnicioslaw.com; eliza@fcjlaw.com; egieger@glllaw.com; Michael C. Mims <mmims@bradleyfirm.com>; John Baay <jbaay@glllaw.com>; Mike DiGiglia <mdigiglia@glllaw.com>; Megan R. Brillault <MBrillault@bdlaw.com>; probertson@irpinolaw.com; Michael G. Murphy <MMurphy@bdlaw.com>; Jeremy J. Landry <jjl@mbfirm.com>; lfavret@favretlaw.com; dean@favretlaw.com; lhiggins@irpinolaw.com; douglashammel@gmail.com

**Subject:** RE: Status Conference February 21, 2022, at 10:00AM re 18-cv-07889-SM-MBN (Ictech-Bendeck) & 19-11133 (Addison)


Dear Counsel,

The Court requests that defense counsel send a letter to the Court and all counsel listing the materials on which each relevant expert relied to prepare each proposed demonstrative exhibit. Please send the letter by **5:00 PM today**. If any listed material has not already been provided to Plaintiffs' counsel, it must be provided by **5:00 PM today**.

Also, the Court wishes to know whether Plaintiffs' counsel would like an opportunity to depose the defense experts on these exhibits before the hearing begins.  If so, Court may allow the depositions to occur (remotely or in person) on Monday and Tuesday and begin the hearing on Wednesday. Please let the Court know your thoughts before **5:00 PM today**.

Than you.
Brandon

_____

Brandon Sprague
Law Clerk to the Honorable Susie Morgan
United States District Court, Eastern District of Louisiana
500 Poydras Street, Room C322
New Orleans, LA  70130
504-589-7535

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION: EXTERNAL EMAIL -** This email originated from outside of Bradley Murchison Kelly & Shea. Do not click links or open attachments unless you recognize the sender & know the content is safe.

## Michael Mims

| | |
|---|---|
| **From:** | Ellen Short <Ellen_Short@laed.uscourts.gov> |
| **Sent:** | Friday, February 17, 2023 11:10 AM |
| **To:** | Moghis@connicklaw.com; airpino@irpinolaw.com; angela@favretlaw.com; bruce@brucebetzer.com; casey@johnsileolaw.com; Chris Handy; dean@favretlaw.com; douglashammel@gmail.com; dsmith@eshortylawoffice.com; egieger@glllaw.com; eshorty@eshortylawoffice.com; freddiekingiii@yahoo.com; hharper@hlharperandassociates.com; jack@johnsileolaw.com; jbaay@glllaw.com; jjl@mbfirm.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; jzl@mbfirm.com; kciolino@bdlaw.com; kgray@irpinolaw.com; kkrebs@bdlaw.com; lcentola@mbfirm.com; lfavret@favretlaw.com; lhiggins@irpinolaw.com; Lance V. Licciardi; maxtobias504 @aol.com; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; Michael C. Mims; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com; nnazareth@mbfirm.com; pconnick@connicklaw.com; probertson@irpinolaw.com; seth@favretlaw.com; srb@mbfirm.com; CAFoster@wtplaw.com; MChilders@wtplaw.com; Moghis@connicklaw.com; byron@fcjlaw.com; Chris Handy; David R. Taggart; ebolog@wtplaw.com; egieger@glllaw.com; eliza@fcjlaw.com; erowe@wtplaw.com; jbaay@glllaw.com; jpaul@bdlaw.com; jslaughter@bdlaw.com; kciolino@bdlaw.com; kkrebs@bdlaw.com; Lance V. Licciardi; mbrillault@bdlaw.com; mdigiglia@glllaw.com; mfutrell@connicklaw.com; Michael C. Mims; mmurphy@bdlaw.com; mvitris@bdlaw.com; nbergeron@glllaw.com; pconnick@connicklaw.com |
| **Subject:** | 18-cv-07889-SM-MBN Ictech-Bendeck v. Waste Connections Bayou, Inc., et al.; 19-cv-11133-SM-MBN Addison, et al. v. Louisiana Regional Landfill Company, et al |

Dear Counsel:

During the February 3, 2023, status conference, the Court ordered the parties to exchange lists of the *Addison* plaintiffs they have selected to depose in anticipation of selecting plaintiffs for the first trial. The Court stated that each side may depose a total of eight "plaintiffs"–made up of seven individuals and one family unit.

Defense counsel requested clarification on whether the seven individual plaintiffs selected for deposition could be chosen from the entire *Addison* plaintiff pool or only from the group of plaintiffs who are not members of a family unit, *i.e.*, no other members of their family are plaintiffs in this suit.

To clarify, the Court intended that the seven individuals be selected only from the group of plaintiffs who are not members of a family unit. This is because the Court seeks to avoid a piecemeal trial of a family unit's claims.

Please let the Court know if a telephone status conference is necessary to provide further clarification.

Thank you,
Ellen Short

_____

Ellen Short
Law Clerk to the Honorable Susie Morgan
United States District Court, Eastern District of Louisiana
500 Poydras Street, Room C322
New Orleans, LA 70130

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** <br>     **Plaintiff** | **CIVIL ACTION** <br><br> **NO. 18-7889** <br> **c/w 18-8071,** |
| **VERSUS** | **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** <br>     **Defendants** | **SECTION: "E" (5)** |
| *Related Case:* | **CIVIL ACTION** |
| **FREDERICK ADDISON, ET AL.,** <br>     **Plaintiffs** | **NO. 19-11133** <br> **c/w 10-14512** |
| **VERSUS** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** <br>     **Defendants** | **JUDGE: Morgan** <br> **MAGISTRATE JUDGE: North** |
| *Applies to: Both Cases* | |

## EIGHTH CASE MANAGEMENT ORDER

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, in consideration of the Court's November 29, 2022 ruling on General Causation, after consultation with the counsel for the Parties,[1] the Court enters this Eighth Case Management Order in each of the captioned cases.

With General Causation having been found as discussed by this Court's November 29, 2022 ruling on General Causation (Case No. 19-11133, ECF Doc. 323; Case No. 18-07889, ECF

---

[1] The Parties herein are all of the *Addison* Plaintiffs, Elias Jorge Ictech-Bendeck, Savannah Thompson, Larry Bernard, Sr. and Mona Bernard, Nicole M. Landry-Boudreaux, Waste Connections Bayou, Inc., Waste Connections US, Inc., Louisiana Regional Landfill Company, Aptim Corp., and the Parish of Jefferson.

Doc. 285), this Eighth Case Management Order focuses on discovery relating to issues beyond General Causation, namely liability, specific causation, and damages, and provides for trial on the merits for an initial set of eight (8) *Addison* plaintiffs selected by the Parties in accordance with the provisions herein.

## I.     AMENDMENTS TO THE PLEADINGS.

1.   Not later than April 7, 2023, *Addison* counsel will circulate a proposed consent order to substitute minor plaintiffs who have reached the age of majority.[2]

2.   With respect to Plaintiffs who have died and for whom Defendants have filed a suggestion of death, substitution of parties will be governed by Fed. R. Civ. P. 25.

3.   On or before August 1, 2023, *Addison* counsel shall file a Second Amended Complaint to reflect the substitution of parties (relating both to minors who have reached the age of majority, and substitutions for deceased Plaintiffs).

## II.    DISCOVERY OF INFORMATION RELATING TO PROPERTY DIMINUTION CLAIMS OF *ADDISON* PLAINTIFFS

1.   Plaintiffs' counsel has provided the identities of the five *Addison* Plaintiffs pursuing diminution of property value claims for three properties.[3] On or before April 20, 2023, these Plaintiffs shall serve their responses to Defendants' revised interrogatories and requests for production sent on March 7, 2023.  The time period for the documents to be produced shall be limited to January 1, 2015 until March 31, 2021.

---

[2] Plaintiffs reserve all rights to seek leave to amend pursuant to Rule 15.

[3] The five Plaintiffs who are pursuing claims for diminution of property value are Michael Brunet, Elizabeth Lowe, Kimberly Norman (successor to Kerner Wethersby), and Craig and Elizabeth Rodrigue.

2

2.   Expert reports, depositions of experts, and depositions of the four Plaintiffs asserting diminution of property value claims shall be postponed until after completion of the trial scheduled under this Case Management Order.

### III.   PROCEDURE FOR SELECTION OF THE *ADDISON* PLAINTIFFS WHOSE CASES WILL BE TRIED FIRST.[4]

1.   On **Wednesday, March 15, 2023**, the two sides (*Addison* Plaintiffs collectively, and Defendants collectively) exchanged lists of the *Addison* Plaintiffs they have selected to depose in anticipation of selecting *Addison* Plaintiffs to be included in the trial.  Each side was permitted to select a total of seven individual Plaintiffs and one family unit of Plaintiffs ("Plaintiff Family Unit") for deposition by Defendants.  Each side's slate of seven individual Plaintiffs were permitted to be selected from the entire pool of Addison Plaintiffs, not just those without other plaintiff-family members, but only the claims of the individuals selected will be eligible for trial.[5] The Plaintiff Family Units were required to consist of related Plaintiffs living in the same residence. Each side was required to select at least two Plaintiffs (with the Plaintiff Family Unit being considered one for this purpose) from the West Bank and two from the East Bank.

---

[4] Defendants reserve their objections to: (a) trying any *Addison* Plaintiffs' cases on the merits prior to class certification being determined as to the *Ictech-Bendeck* case; (b) trying the claims of any Plaintiffs whom Defendants have not been allowed to depose; (c) merits discovery propounded by the *Ictech-Bendeck* Plaintiffs on Defendants prior to the determination of class certification as to the *Ictech-Bendeck* case; (d) the deferral of a schedule for class certification in the *Ictech-Bendeck* case until after trial of initial *Addison* Plaintiffs; and (e) the prohibition of discovery on Plaintiffs other than those Plaintiffs selected for trial as described in Paragraph V. Defendants' submission of any term in or the entirety of this joint proposed Case Management Order shall not be construed as a waiver of the above objections.

[5] None of the Plaintiffs asserting property diminution claims shall be proposed or selected to have their claims tried in the first trial.

2. The parties have agreed upon a schedule for depositions of the selected *Addison* Plaintiffs (the "Deposition Pool Plaintiffs"). The goal is for each of these depositions to last four hours, unless good cause is shown why a deposition needs to last longer. Unless the Parties agree in advance, or with permission of the Court, no Plaintiff will be permitted to attend the deposition of any other Plaintiff.

3. At a status conference on March 31, 2023, the Court directed Defendants to replace their prior selections of three individual Plaintiffs and their selected Family Unit. Defendants shall identify their new selections to Plaintiffs on April 7, 2023.

4. All depositions of the Deposition Pool Plaintiffs, except the Family Units, shall be completed on or before **Friday, April 21, 2023**.

5. On or before **Monday, May 1, 2023**, the *Addison* Plaintiffs (collectively) will identify three individual Plaintiffs from the Deposition Pool Plaintiffs (excluding Plaintiff Family Units) whose cases will be tried, and Defendants (collectively) will identify three individual Plaintiffs from the Deposition Pool Plaintiffs (excluding Plaintiff Family Units) whose cases will be tried. The claims of these six individual Plaintiffs and the two Plaintiff Family Units will be tried in the first trial (the "Trial Plaintiffs"). With respect to the individual Plaintiffs, the Plaintiffs will pick one Plaintiff; the Defendants will pick one Plaintiff; the Plaintiffs will pick one Plaintiff, and so on until all six individual Plaintiffs have been selected. Each Plaintiff Family Unit will automatically proceed to the first trial. Each side must select at least one Plaintiff (a Plaintiff Family Unit being considered one for this purpose) from the West Bank and one from the East Bank.

6. The Parties acknowledge that the Plaintiffs selected for the first trial are not intended to be bellwether plaintiffs under *In re Chevron U.S.A., Inc*., 109 F.3d 1016 (5th Cir. 1997).

4

## IV. COMPLETION OF CONSOLIDATED FACT DISCOVERY ON ISSUES COMMON TO THE *ADDISON* AND THE *ICTECH-BENDECK* CASES.

### A. In general.

1. Discovery on issues that are common to the *Addison* and *Ictech-Bendeck* Plaintiffs, and not specific to the claims of any individual *Addison* or *Ictech-Bendeck* Plaintiff, shall be conducted by Plaintiffs in both actions on a consolidated basis.

2. The ESI protocols entered as ECF Doc. 90 (Case No. 18-7889), and ECF Doc. 86 (Case No. 19-11133), as amended from time to time, shall continue to apply to discovery conducted in this case.

3. The discovery obligations set forth in the Case Management Orders or other orders of the Court are subject to the supplementation requirements of Federal Rule of Civil Procedure 26(e).

4. The due dates for discovery responses shall be those specified in orders of the Court, those set forth in the Federal Rules of Civil Procedure, or as otherwise agreed by the Parties, except that with respect to interrogatories and document requests that are served after the date of this Case Management Order, objections shall be served within 14 days after service.

5. As set forth in this Court's prior Orders, each General Causation deposition shall preclude a subsequent deposition of such deponent(s) on topics covered in such prior deposition. A party raising such issue with the Court must provide the relevant pages of the deposition at which the party asserts the topic was covered.

### B. Plaintiffs' discovery addressed to Defendants.

1. **Document discovery.** Documents, if any, that were responsive to document requests propounded earlier in the case by the *Addison* Plaintiffs but not yet produced were due to be

5

produced by February 23, 2023. Each Defendant produced a privilege log with respect to any documents withheld on or before March 9, 2023.

    2. **Requests for production of documents**.

Plaintiffs (collectively) will be allowed to serve up to twenty-five requests for production upon each Defendant without leave of court. Any requests for production in excess of this limit, except those agreed upon by the parties, will require leave of court. Document requests served after November 29, 2022 shall count against the limitation in this paragraph.

    3. **Interrogatories addressed to Defendants.** Plaintiffs (collectively) may serve interrogatories upon each of the Defendants. Unless otherwise agreed to by the parties, or permitted by the Court, such written discovery shall be limited to twenty-five (25) interrogatories, including all discrete subparts. Interrogatories served after November 29, 2022 shall count against this limitation.

    4. **Requests for admission addressed to Defendants.** Plaintiffs (collectively) may serve up to fifteen (15) requests for admission upon each of the Defendants and such responses will be due in accordance with Rule 36 of the Federal Rules of Civil Procedure. The effect of any admission shall be governed by Rule 36.

    5. **Fact witness depositions taken by Plaintiffs.** Plaintiffs (collectively) may depose each of the Defendants under Rule 30(b)(6), and may take up to fifteen (15) individual fact witness depositions without leave of court.

    C.   <u>**Defendants' Discovery Addressed to Plaintiffs.**</u>

    1. Except as permitted by this Order regarding the selection process and Plaintiffs selected for trial, discovery of individual Plaintiffs is stayed, except for any supplementation requirements.

6

2. **Fact witness depositions taken by Defendants.**  With respect to issues that are not specific to any Plaintiff, Defendants may take up to fifteen (15) fact depositions of persons other than Plaintiffs in either case, without leave of court.

    **D.**    **Written Discovery from Non-Parties.**

1. Subject to any limitations in this CMO or established by the Court in response to motion for protective order, the Parties may seek discovery from non-parties.

2. Copies of documents produced to Defendants by third parties in response to a subpoena *duces tecum*, and related communications with such third parties except to the extent the communication relates only to the timing of a response, will be provided to the Plaintiffs within seven (7) days after receipt.

3. Copies of documents produced to Plaintiffs by third parties in response to a subpoena *duces tecum*, and related communications with such third parties except to the extent the communication relates only to the timing of a response, will be provided to the Defendants within seven (7) days after receipt.

4. By seeking documents produced in responses to subpoenas *duces tecum* issued by another party, and by agreeing to provide copies of documents so obtained with other parties who did not issue the subpoena, the parties have not waived their right to seek a protective order from the Court related to subpoenas *duces tecum* responses pursuant to Rule 26(c).

**V.**    **ADDITIONAL DISCOVERY OF *ADDISON* PLAINTIFFS SELECTED FOR TRIAL.**

1. With respect to each *Addison* Plaintiff whose case is selected for trial in accordance with this Case Management Order, Defendants may conduct additional discovery as follows:

a. On or before **Wednesday, May 11, 2023** Plaintiffs shall serve supplemental Rule 26(a) disclosures on behalf of all Plaintiffs selected for trial.

b. To ensure that each party has an adequate opportunity to depose witnesses who will testify prior to trial, not later than May 19, 2023, Plaintiffs shall file with the Court their designations of non-expert witnesses whose testimony Plaintiffs will likely present at trial. On May 25, 2023, Defendants shall file with the Court their designations of the non-expert witnesses whose testimony Defendants will likely present at trial. On the plaintiff-specific issues of specific causation and damages, each Plaintiff may call up to two non-expert fact witnesses (like relatives, neighbors, treating physicians, etc.)

c. Each of the Defendants may serve up to fifteen (15) additional interrogatories, including all discrete subparts, without leave of court.

d. Each of the Defendants may serve twenty-five (25) requests for production of documents.

e. Defendants (collectively) may serve twenty five (25) requests for admission upon each Plaintiff and such responses will be due in accordance with Rule 36. The effect of any admission shall be governed by Rule 36.

f. The Parties may depose each non-expert fact witness designated under Section V.1.b, above, and such deposition does not count towards the 15 deposition limit set forth in Section IV.C.2.

g. With respect to any fact witness identified by a Plaintiff during deposition, other than a non-expert fact witness designated under Section V.1.b, Defendants may depose that witness with leave of Court or upon agreement by the Parties.

h. Defendants may depose each Plaintiff regarding matters not covered in the initial pre-selection deposition, and regarding discovery responses received after the initial pre-selection deposition. No Plaintiff may be deposed for longer than a total of seven hours on the record, including the time expended in the pre-selection deposition, without leave of Court or agreement of the Parties. Depositions under this paragraph shall be completed on or before June 7, 2023, or (with respect to Family Unit deponents who reside out of state) within a reasonable time after conclusion of the school year, but prior to the date that expert reports are due. Any depositions of minors will be discussed in advance among the Parties.

2. The written discovery addressed in this section may be served commencing upon the date that Plaintiff is selected for trial in accordance with this CMO.

3. All responses to written discovery addressed by this section must be served by May 22, 2023 or 21 days after service of a request, whichever is later. Any privilege log must be served within seven (7) days after serving responsive documents.

## VI. COMPLETION OF FACT DISCOVERY.

1. All fact discovery shall be completed on or before Friday, **July 14, 2023**.

## VII. EXPERT DEADLINES AND TRIAL PREPARATION.

### A. Expert Deadlines.

1. New or supplemental expert reports for the first *Addison* trial are due on or before **Wednesday, June 14, 2023.**

1. Rebuttal reports are due on or before **Wednesday, June 28, 2023.**

2. Expert depositions must be complete by **Friday, July 14, 2023.**

9

## VIII.   DISPOSITIVE AND RULE 702 MOTIONS.

1.   All dispositive motions, and *Daubert*/Rule 702 motions to exclude testimony of newly designated experts (or existing experts who offer new opinions based on new methodologies), are due on or before **Friday, July 21, 2023.**

2.   Oppositions to any dispositive or *Daubert*/Rule 702 motions are due on or before **Friday, July 28, 2023.**

3.   Any replies are due on or before **Tuesday, August 1, 2023.**

## IX.   SETTLEMENT CONFERENCE.

1.   The parties shall immediately contact the Magistrate Judge to schedule a settlement conference to occur on or before **Tuesday, August 1, 2023.**

## X.   STATUS CONFERENCE IN THE *ICTECH-BENDECK* CASES.

1.   As soon as practical after the close of all discovery set forth above, the *Ictech-Bendeck* Plaintiffs and the Defendants shall meet and confer to propose a schedule for remaining activities, including class certification and related discovery.

## XI.   PRETRIAL CONFERENCE AND PRETRIAL DEADLINES.

1.   Witness lists and exhibit lists shall be filed by both Parties on or before **Friday, August 4, 2023**.   Thereafter, the Parties shall meet and confer and shall discuss revisions, including additions in light of the *Daubert* motions, to the respective witness and exhibit lists, and designated deposition testimony, and shall discuss the other items that are to be addressed in the Joint Pretrial Order (see Section XI.3), including timing to exchange drafts of the Joint Pretrial Order items.

2.   A pretrial conference is hereby set for **Tuesday, August 15, 2023, at 11:00 a.m.**

10

3.   The joint pretrial order must be filed by 5:00 p.m. on **Wednesday, August 9, 2023**. It shall contain the following:

    a.   Description of the Parties;

    b.   Statement of Jurisdiction;

    c.   A List and Description of any Motions Pending or Contemplated;

    d.   A List of Uncontested Material Facts;

    e.   A List of Contested Issues of Fact;

    f.   A List of Contested Issues of Law;

    g.   A List of Exhibits Intended to be Introduced at Trial (except those that will be used solely for impeachment purposes), and identifying those that the parties will stipulate into evidence and those that will be offered without objections to foundation;

    h.   A List of Demonstrative Exhibits to be Used at Trial;

    i.   A Description of any Deposition Testimony to be Offered into Evidence (except testimony that will be used solely for impeachment purposes);

    j.   A List of Witnesses, identifying whether the witness will be appearing in person or by deposition testimony, except those witnesses that will be used solely for impeachment purposes;

    k.   A Statement of Other Matters that Might Expedite Disposition of the Matter;

    l.   Proposed Jury Charges.

4.   The final list of witnesses to be called at trial must be filed **by Tuesday August 22, 2023** at 5:00 p.m. (five working days after the pretrial conference).

5.   Motions in limine (other than those regarding the admissibility of expert testimony) and memoranda in support must be filed no later than **August 16, 2023** (12 working days before trial) at 5:00 pm.   Responses to motions in limine must be filed by **August 23, 2023**, 7 working days before trial at 5:00 p.m.

6.   On or before **August 25, 2023** (five working days before trial), the Parties must file, email and deliver to the Court the following:

    a.   joint statement of the case;

11

App. 577

    b.   Joint jury instruction (or if agreement cannot be reached, counsel shall provide alternate versions with respect to any instruction in dispute, with its reasons for putting forth an alternative instruction and the law in support thereof

    c.   Joint proposed jury verdict form (or if agreement cannot be reached, separate proposed jury verdict forms and a joint memorandum explaining the disagreements between the parties as to the verdict form)

    d.   Proposed special voir dire questions

    e.   Two copies of joint bench books of tabbed exhibits, with indices of "objected-to" and "unobjected-to" exhibits, identifying which party will offer each exhibit and which witness will testify regarding the exhibit at trial

    f.   Objections to exhibits and supporting memoranda

    g.   Objections to deposition testimony and supporting memoranda

7.   On or before **August 29, 2023** (three working days before trial), the Parties must file, email and deliver to the Court the following:

    a.   Responses to objections to exhibits

    b.   Responses to objections to deposition testimony

8.   If counsel intends to ask questions on cross-examination of an economic expert which require mathematical calculations, the factual elements of such questions shall be submitted to the expert witness by **August 29, 2023 – 3 working days before trial** at **5:00 p.m.**

9.   Copies of any charts, graphs, models, schematic diagrams, and similar objects intended to be used in opening statements or closing arguments must be provided to opposing counsel by **August 29, 2023 – 3 working days before trial at 5:00 p.m.**

10.  Objections to any charts, graphs, models, schematic diagrams, and similar objects intended to be used by opposing counsel in opening statements or closing arguments must be filed by **August 30, 2023 – 2 working days before trial** at **5:00 p.m**.

## XII.  <u>TRIAL.</u>

1.  Trial will commence on **Tuesday, September 5, 2023,** and is expected to last fifteen days.

## XIII.  <u>CHART OF EVENTS.</u>

1.  A chart of deadlines for events and milestones, consistent with the preceding terms of this order, is appended as Appendix A.

**SO ORDERED.**

**New Orleans, Louisiana, this _____ day of April, 2023.**


_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

13

EIGHTH CASE MANAGEMENT ORDER
APPENDIX A – CHART OF EVENTS

| Event | Date |
|---|---|
| Pre-selection depositions of 16 *Addison* Plaintiffs to be complete | Friday, April 21, 2023 |
| Parties select 8 *Addison* Plaintiffs for trial | Monday, May 1, 2023 |
| Supplemental Rule 26 Disclosures by *Addison* Plaintiffs | Wednesday, May 11, 2023 |
| Plaintiffs file names of witnesses likely to be called at trial | Friday, May 19, 2023 |
| Defendants file names of witnesses likely to be called at trial | Thursday, May 25, 2023 |
| New or supplemental expert reports for the first *Addison* trial are due | Wednesday, June 14, 2023 |
| Rebuttal expert reports are due | Wednesday, June 28, 2023 |
| All fact discovery complete | Friday, July 14, 2023 |
| Expert depositions must be complete | Friday, July 14, 2023 |
| All dispositive motions, and *Daubert*/Rule 702 motions to exclude testimony of newly designated experts (or existing experts who offer entirely new opinions based on entirely new methodologies), are due | Friday, July 21, 2023 |
| Oppositions to any dispositive or *Daubert*/Rule 702 motions are due | Friday, July 28, 2023 |
| Replies on any dispositive or *Daubert*/Rule 702 motions are due | Tuesday, August 1, 2023 |
| Deadline for settlement conference with Magistrate Judge | Tuesday, August 1, 2023 |
| Witness lists and exhibit lists shall be filed | Friday, August 4, 2023 |
| Joint pretrial order to be submitted by the parties by 5:00 p.m. | Wednesday, August 9, 2023 |
| Pretrial conference held at 11:00 a.m. | Tuesday, August 15, 2023 |

APPENDIX A – CHART OF EVENTS

| Event | Date |
|-------|------|
| Motions in limine (other than those regarding the admissibility of expert testimony) and memoranda in support.  (12 working days before trial at 5:00 p.m.) | Wednesday, August 16, 2023 |
| The final list of witnesses to be called at trial must be filed by 5:00 p.m. | Tuesday August 22, 2023 |
| Responses to motions in limine must be filed (five working days before trial at 5:00 p.m.) | Wednesday, August 23. 2023 |
| Joint statement of the case to be filed, emailed and delivered to the court (five working days before trial at 5:00 p.m.) | Friday, August 25, 2023 |
| Joint jury instruction (or if agreement cannot be reached, counsel shall provide alternate versions with respect to any instruction in dispute, with its reasons for putting forth an alternative instruction and the law in support thereof), to be filed, emailed and delivered to the Court  (five working days before trial at 5:00 p.m.) | Friday, August 25, 2023 |
| Joint proposed jury verdict form (or if agreement cannot be reached, separate proposed jury verdict forms and a joint memorandum explaining the disagreements between the parties as to the verdict form) to be filed, emailed and delivered to the Court (five working days before trial at 5:00 p.m.) | Friday, August 25, 2023 |
| Proposed special voir dire questions to be filed, emailed and delivered to the Court (five working days before trial at 5:00 p.m.) | Friday, August 25, 2023 |

APPENDIX A – CHART OF EVENTS

| Event | Date |
|---|---|
| Two copies of joint bench book(s) of tabbed exhibits, with indices of "objected-to" and "unobjected-to" exhibits, identifying which party will offer each exhibit and which witness will testify regarding the exhibit at trial to be filed, emailed and delivered to the Court (five working days before trial at 5:00 p.m.) | Friday, August 25, 2023 |
| Objections to exhibits and supporting memoranda to be filed, emailed and delivered to the Court (five working days before trial at 5:00 p.m.)<br><br>**NOTE:** Each objection must identify the relevant objected-to exhibit by the number assigned to the exhibit in the joint bench book(s) | Friday, August 25, 2023 |
| Objections to deposition testimony and supporting memoranda to be filed, emailed and delivered to the Court (five working days before trial at 5:00 p.m.) | Friday, August 25, 2023 |
| Responses to objections to exhibits to be filed, emailed and delivered to the Court (three working days before trial at 5:00 p.m.) | Tuesday, August 29, 2023 |
| Responses to objections to deposition testimony to be filed (three working days before trial at 5:00 p.m.) | Tuesday, August 29, 2023 |

iii

App. 582

APPENDIX A – CHART OF EVENTS

| Event | Date |
|---|---|
| If counsel intends to ask questions on cross-examination of an economic expert that require mathematical calculations, the factual elements of such questions shall be submitted to the expert witness (3 working days before trial at 5:00 p.m.) | Tuesday, August 29, 2023 |
| Copies of any charts, graphs, models, schematic diagrams, and similar objects intended to be used in opening statements or closing arguments to be provided to opposing counsel (3 working days before trial at 5:00 p.m.) | Tuesday, August 29, 2023 |
| Objections to any charts, graphs, models, schematic diagrams, and similar objects intended to be used by opposing counsel in opening statements or closing arguments to be filed, emailed and delivered to the Court (2 working days before trial at 5:00 p.m.) | Wednesday, August 30, 2023. |
| Jury trial | Tuesday, September 5, 2023 |

**SO ORDERED.**

New Orleans, Louisiana, this 17th day of April, 2023.

_Susie Morgan_
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**