No. 23-30243

# United States Court of Appeals
# for the Fifth Circuit

**Jefferson Parish, Louisiana Regional Landfill Company, Waste Connections Bayou Inc., Waste Connections US, Inc.,  and Aptim Corporation,**
Petitioners

_____

On Petition for Writ of Mandamus to the United States District Court
for the Eastern District of Louisiana
Case No. 18-cv-7889
consolidated with 18-cv-8071,
18-cv-8218, and 18-cv-9312

Case No. 19-cv-11133
Consolidated with 19-cv-14512
_____

# APPENDIX TO
# PETITION FOR REHEARING *EN BANC*

| TAB | DESCRIPTION | APPENDIX |
|-----|-------------|----------|
| A. | Opinion | APP. 0001 - APP.0027 |
| B. | Certificate of Interested Parties | APP. 0028 - APP.0041 |

**APPENDIX A**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2023

Lyle W. Cayce
Clerk

No. 23-30243

In re Jefferson Parish; Louisiana Regional Landfill Company; Waste Connections Bayou, Incorporated; Waste Connections US, Incorporated; Aptim Corporation,

*Petitioners.*

Petition for a Writ of Mandamus
to the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:18-CV-7889, 2:18-CV-8071,
2:18-CV-8218, 2:18-CV-9312,
2:19-CV-11133, 2:19-CV-14512

Before King, Smith, and Elrod, *Circuit Judges.*

Jennifer Walker Elrod, *Circuit Judge*:

Jefferson Parish Landfill emitted noxious gases and odors into surrounding areas, so nearby residents sued. One of those lawsuits is the *Ictech-Bendeck* putative class action, which has not yet had a hearing on class certification. Another is the *Addison* mass action, which is comprised of over 500 plaintiffs and is against the same defendants as *Ictech-Bendeck*. The matters are not consolidated. This mandamus proceeding arose because the defendants object to the district court's scheduling of a small group of *Addison* plaintiffs for trial before *Ictech-Bendeck* will finish its class certification process, which the defendants have repeatedly delayed.

No. 23-30243

Petitioners ask us to stop the *Addison* trial and to order the district court to rule on class certification in *Ictech-Bendeck* before allowing any further proceedings in *Addison*. Petitioners raise the novel theory that under Rule 23 of the Federal Rules of Civil Procedure, the filing of a putative class action bars any possible class members from reaching the merits of their own, separate suits until class-certification proceedings conclude in the putative class action. The district court rejected that argument, and Petitioners sought mandamus.

Mandamus is an extraordinary form of relief saved for the rare case in which there has been a "usurpation of judicial power" or a "clear abuse of discretion." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (alteration and citation omitted). It is not for testing novel legal theories. And Petitioners' theory is not merely new; it is also wrong. Rule 23 establishes a mechanism for plaintiffs to pursue their claims as a class. It does not cause the filing of a putative class action to universally estop all separate but related actions from proceeding to the merits until the class-certification process concludes in the putative class action, after years of motions practice. Because Petitioners have failed to establish their entitlement to a writ of mandamus, their petition is DENIED.

## I. Factual and Procedural Background

From July 2017 to December 2019, the Jefferson Parish Landfill released noxious emissions on its premises and into nearby neighborhoods. In regular English: the landfill made the surrounding areas smell bad. The "odors and gases emitted by the Jefferson Parish Landfill during the relevant time period were capable of causing headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and loss of enjoyment or use of property in the general population."

APP. 0002

No. 23-30243

Several collections of residents near Jefferson Parish Landfill sued the landfill's owner (Jefferson Parish) and its operators (four companies). This mandamus action arises out of the Eastern District of Louisiana's case management of two of those lawsuits: the *Ictech-Bendeck* class action[1] and the *Addison* mass action.[2] The *Ictech-Bendeck* class action plaintiffs seek damages on a state-law nuisance theory under Louisiana Civil Code articles 667, 668, and 669. The *Addison* mass action plaintiffs seek damages from the same defendants, although they plead claims for both nuisance and negligence, as codified in Louisiana Civil Code articles, 2315, 2315.1, and 2316. "*Ictech-Bendeck* and *Addison* are not and have never been consolidated actions. They remain completely distinct actions, aside from the parties' agreement to try the issue of general causation in one bench trial." *Ictech-Bendeck* is a putative class action. *Addison* is not.

*Ictech-Bendeck* was filed in July 2018 and removed to federal court in August 2018. *Addison* was filed in December 2018 and removed in June 2019. In recounting the ensuing procedural history, the petition—which complains that five years have elapsed without a ruling on class certification in *Ictech-Bendeck*—skips straight from the 2018 filings to a hearing scheduled by the district court for February 2022. Omitted from that four-year span is the extensive motions practice engaged in *and led by* Petitioners in both *Ictech-Bendeck* and *Addison*.

---

[1] *Ictech-Bendeck v. Waste Connections Bayou, Inc., et al.*, No. 18-CV-7889, consolidated with 18-CV-8071, 18-CV-8218, and 18-CV-9312, is a consolidation of several proposed class actions brought by Elias Jorge "George" Ictech-Bendeck; Savannah Thompson; Nicole M. Landry-Boudreaux; Larry Bernard, Sr.; and Mona Bernard, individually, and on behalf of similarly situated individuals.

[2] *Addison, et al. v. Louisiana Regional Landfill Co., et al.*, No. 19-CV-11133, consolidated with 19-CV-14512, is a consolidation of two mass actions containing over 500 individual plaintiffs.

APP. 0003

No. 23-30243

In April 2019, Petitioner moved to dismiss the *Ictech-Bendeck* class action and requested a case management order that would delay the plaintiffs' moving for class certification until 91 days after the district judge ruled on the motion to dismiss. The court dismissed the motion in August 2019. *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-CV-7889, 2020 WL 2037185, at *1 (E.D. La. Apr. 28, 2020). In September 2019, Petitioners then "proposed the Court enter a 'Lone Pine' case management order that permitted discovery on both general and specific causation." *Id.* at *2. This proposed order would not have had the court rule on a class certification order for at least 16 months. That would have been January 2021, at the earliest.

While conferring on this proposed case management plan, the parties consented to the district court's determining the issue of general causation for both cases before the parties proceeded with either the certification of the class or the *Addison* trial. The first case management plan was therefore entered in November 2019, and it set a trial on general causation for April 2021. This trial date got pushed back by COVID, Hurricane Ida, and seven joint motions by the parties for extensions.

Because of the requested extensions, the evidentiary hearing on general causation occurred in February 2022 (which now brings us back to Petitioners' version of the procedural history). At this hearing, which occurred over nine days, "the district court heard live testimony from thirteen witnesses, heard excerpts of the Rule 30(b)(6) depositions of corporate representatives for Waste Connections and Jefferson Parish, and admitted into evidence dozens of exhibits." The parties submitted post-trial briefs in April 2022, and in November 2022 "the district court entered its 46-page-long Findings of Fact and Conclusions of Law, in which it found general causation had been satisfied in both cases." That is, the court found that Jefferson Parish Landfill had emitted noxious gases, that the landfill had

done so during the relevant time period, and that these fumes were capable of causing the complained-of injuries.

On April 12, 2023, the district court granted in part and denied in part Petitioners' motion for summary judgment against some of the *Addison* plaintiffs.  Then on April 17, and over some objection from Petitioners, the district court adopted a new case management order drafted by the parties that scheduled a September 2023 trial for several of the *Addison* plaintiffs.[3] This was to be a so-called "bellwether" trial, wherein counsel for both sides select a small group of test plaintiffs to proceed to trial as a way of gathering information about what the outcome of the mass action as a whole might be. *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).[4]  Under the adopted case management order, the parties were to meet and confer after the close of discovery in the *Addison* trial (July 2023) to discuss class certification and any related discovery in *Ictech-Bendeck*.

Petitioners were dissatisfied with that case management order.  They filed this mandamus action on April 17, the same day that the district court adopted the management order.  Subsequently, on April 26, the district court adopted yet another case management order (the ninth one in total), requiring the parties to meet and confer about class certification earlier, in May 2023, "so the parties might simultaneously proceed with discovery

---

[3] Petitioners had filed a motion in January 2023 to adopt an alternative case management order and filed a motion for "reverse bifurcation" in February 2023.  The district court denied both motions.

[4] "The term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock.  The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).

APP. 0005

No. 23-30243

related to the first *Addison* trial while also conducting discovery related to class certification in *Ictech-Bendeck*."

On June 8, 2023, this court stayed all proceedings in the *Addison* case pending further order. We then expedited the case for oral argument, which we heard in July. Following oral argument, we clarified that the stay shall not affect the *Ictech-Bendeck* proceedings.

## II. Mandamus Standard

The All Writs Act provides this court with the power to issue a writ of mandamus directed to a district court. 28 U.S.C. § 1651. However, this "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary cases.'" *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). To merit relief, Petitioners must demonstrate "that there has been a 'usurpation of judicial power' or a 'clear abuse of discretion.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*) (citation omitted).

We use a three-pronged test to analyze that standard. Petitioners must show: (1) that there is a "clear and indisputable" right to the writ; (2) that there are "no other adequate means to attain the relief" requested; and (3) that the appellate court's exercise of discretion to issue the writ would be "appropriate under the circumstances." *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018) (numbering reordered) (quoting *Cheney*, 542 U.S. at 380-81).

## III. Merits of the Petition

Mandamus petitioners must satisfy all three conditions to obtain issuance of the writ (clear and indisputable right, no other remedies, and appropriate exercise of discretion). Petitioners in this case cannot satisfy even one of them. We address each requirement in the sections below.

APP. 0006

## A. Indisputable Right to the Writ

"The 'right to the issuance of the writ is necessarily clear and indisputable' if 'the district court clearly abused its discretion.'" *In re Itron*, 883 F.3d at 568 (quoting *In re Volkswagen*, 545 F.3d at 311). And it is an abuse of discretion if a district court "makes an error of law or applies an incorrect legal standard." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011). So this first mandamus-test prong is about the legal merits of a petitioner's claim. But because the standard is a *clear* abuse of discretion, the merits of the claim must also be clear: "the writ will not issue to correct a duty that is to any degree debatable." *United States v. Denson*, 603 F.2d 1143, 1147 n.2 (5th Cir. 1979) (*en banc*).

### 1. Clear Abuse of Discretion

Petitioners claim that it is clearly established that Rule 23 requires a district court to rule on class certification in a putative class action before reaching the merits in any related—but unconsolidated—cases. And yet, Petitioners cannot identify even a single case with this holding. Without any controlling authority in support of it, their theory about Rule 23's scope is not clearly established, and their request for the writ fails at this threshold stage.[5]

Petitioners spend the bulk of their argument successfully defending the uncontroversial claim that a purported class action generally cannot *itself*

---

[5] *Cf. Pearson v. Callahan*, 555 U.S. 223 (2009). In *Pearson*, the Supreme Court held that courts may rule on claims to qualified immunity by determining only that a right is not clearly established, without also reaching whether there is such a right. *Id.* at 237. One virtue identified by the Court of this approach is that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* Here, it is clear that Petitioners' claimed interpretation of Rule 23 is not well settled, regardless of whether or not it is correct upon closer examination.

go to trial if its class-certification hearing is still pending.  But the crux of Petitioners' mandamus petition relies on the very different proposition that this "bar on trial before certification fully applies to closely related individual actions."  To attempt to support this claim, Petitioners string cite to four cases, none of which has the same procedural posture or factual background as the instant case.  *See In re Citizens Bank, N.A.*, 15 F.4th 607 (3d Cir. 2001); *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990); *Byerson v. Equifax Info. Servs., LLC*, No. 07-CV-00005, 2009 WL 82497, at *2 (D.S.C. Jan. 9, 2009); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-MD-2836, 2021 WL 9870367, at *5 (E.D. Va. May 7, 2021)).  Petitioners' citations to those cases fail to establish their theory beyond debate.[6]

The first two cases—*In re Citizens Bank* and *In re Fibreboard Corp.*— do not even involve separate class and non-class actions.  It is therefore difficult to see at first glance how those cases could support the proposition that Rule 23 reaches beyond class actions and into the management of other, unconsolidated non-class actions.  However, we examine each case in more detail below.

*In re Citizens Bank* did not involve two separate cases.  Instead, the named plaintiffs in a putative class action also filed non-class claims in the same complaint.  15 F.4th at 610.  Because of the unitary nature of the lawsuit, the Third Circuit held that the class representatives should not be able to try their tightly related non-class claims before certifying their class claims.[7]  *Id.*

---

[6] By way of further analogy to the qualified-immunity context, the Supreme Court has repeatedly stated that a right's being clearly established may "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[7] It is worth mentioning, though, that the Third Circuit did not grant a petition for writ of mandamus on the relevant merits portion.  The posture of the case at the time was

No. 23-30243

Petitioners say that *In re Citizens Banks* cannot be distinguished on the "non-substantive ground that the different claims were 'brought in one complaint.'" That is incorrect. The distinction is not just substantive, it is the entire ball game. Petitioners are trying to show that Rule 23 reaches *beyond* a putative class plaintiff's complaint and into actions brought by other individuals who have no interest in joining the class plaintiff's action. Because *In re Citizens Bank* does not involve such a posture, it cannot clearly establish that legal theory.

*In re Fibreboard Corp.* also did not involve two separate cases. In that case, the district court consolidated 3,031 asbestos cases for common trial in one class action. 893 F.2d at 707. This court then granted a writ of mandamus to vacate parts of the consolidation as improper. *Id.* at 711–12. Rather than seeking to stop individual trials from happening independently of the class action (like Petitioners here seek), the petitioner-defendants in *In re Fibreboard Corp.* wanted to *disaggregate* the class action and have *more* trials. *Id.* at 709 ("Defendants insist that one-to-one adversarial engagement or its proximate, the traditional trial, is secured by the seventh amendment . . . ."). Furthermore, we allowed individual representatives to proceed to trial even though a class was not certified. *Id.* at 712 ("We find no impediment to the trial of Phase I should the district court wish to proceed with that trial."). *In re Fibreboard Corp.* therefore does not stand for the proposition that Rule 23 has the universal reach that Petitioners assert it does.

The second pair of cases that Petitioners cite—*Byerson v. Equifax Information Services, LLC*, and *In re Zetia (Ezetimibe) Antitrust Litigation*—

---

a motion for stay pending resolution of a mandamus petition. Given this special procedural circumstance, the court could "grant a stay even if the ultimate likelihood of granting the mandamus petition is below 50 percent." *In re Citizens Bank, N.A.*, 15 F.4th 607, 616 (3d Cir. 2021).

are unpublished district court decisions from outside this circuit.  *Byerson*, 2009 WL 82497; *In re Zetia*, 2021 WL 9870367.  Even putting aside the fact that this makes them unable to clearly establish our caselaw in the Fifth Circuit, we discuss them to explain why their distinct factual circumstances do not control this case.

In *Byerson v. Equifax Information Services, LLC*, an individual action sat on the docket for years because the lawyers wanted to see what happened in a distinct but related class action.  *Byerson*, 2009 WL 82497, at *2.  The district court dismissed the individual action, not because a related class needed to be certified, but because of failure to prosecute.  *Id.*  And in fact, the court seemed to *endorse* the kind of suit occurring in this case, where individuals decide to forgo the benefit of being a part of a class action so that they can risk litigating on their own.  *Id.* ("Plaintiffs must either be a part of the class, or litigate on their own without the benefit of collateral estoppel. They have done neither.").

*In re Zetia (Ezetimibe) Antitrust Litigation* is the closest to helping Petitioners.  But it is still not on point.  In that case, several related class actions and an individual action had nearly identical summary-judgment motions pending at the same time.  *In re Zetia*, 2021 WL 9870367, at *6.  The district court delayed ruling on the individual action's motion for summary judgment until one of the other classes finished its certification process.  *Id.*  However, the reasoning was rooted in the pendency of nearly identical dispositive motions.  The district court acknowledged the individual action's argument that "[t]he rule against one-way intervention is not implicated whenever an absent class member might learn something about the strength or weakness of the class case based on a related case."  *Id.* (alteration in original).  But the court held that "this is not an instance where the absent class members might learn 'something.'  Rather it is an instance where absent class members would learn the court's exact ruling on identical dispositive

motions." *Id.* That is not the circumstance here. The class and non-class actions are not waiting on identical rulings at the same time.

\*    \*    \*

The most that Petitioners' four authorities can show is an arguable case for extending the rule against pre-certification trials within class actions to also apply to related actions. Petitioners have not shown that preventing such trials in related cases is a judicial duty established beyond debate. This lack of clarity in the caselaw would persist even if all the above cases were binding on this court. But the point is made even stronger by the fact that Petitioners' only cases involving separate class and non-class actions are district court decisions from outside this circuit. Those cases are not authoritative in this court, so they could not have clearly established the legal argument that Petitioners now make before us.

### 2. Any Abuse of Discretion

As just explained, we could deny Petitioners' request for the writ on the threshold ground that they have not shown a *clear* abuse of discretion. But we need not stop there. Petitioners have also failed to show *any* abuse of discretion. Their argument for extending Rule 23 to reach all lawsuits that might relate to a putative class action is mistaken. It is premised on the existence of two harms, neither of which apply here: (a) one-way intervention, and (b) collateral estoppel.

### a. One-Way Intervention

The primary harm that Petitioners point to is what the Supreme Court has called "one-way intervention." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974)). That harm is, by definition, not applicable to a case in this posture. To see why, it is important to specify what exactly "one-way

intervention" is and when it can occur.  The Supreme Court provided a useful history of the topic in *American Pipe & Construction Co. v. Utah*.

Before Rule 23 was substantially amended in 1966, it "contained no mechanism for determining at any point in advance of final judgment which of those potential members of the class claimed in the complaint were actual members and would be bound by the judgment." *Am. Pipe*, 414 U.S. at 545–46.  Taken to its maximal limit, this feature allowed a potential class member to sit on the sidelines during the pendency of the suit and then decide to join the class only *after* the plaintiffs in the suit were victorious.  If the class plaintiffs lost, however, then the spectators would not opt in to being bound by the unfavorable judgment.  They would simply bring their own individual suits instead.  *Id.* at 547.  When Rule 23 was amended in 1966, however, it "closed the 'one-way intervention' loophole . . . and made clear that class action judgments were binding on all class members."  Robert H. Klonoff, *Class Actions and Other Multi-Party Litigation in a Nutshell* 29 (6th ed. 2021); *see also* 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1789 (3d ed. 2023).

The unique part of one-way intervention is its "heads I win, tails you lose" nature.  Sideline plaintiffs can swoop in to benefit from a class representative's hard-won victory without having to share in that representative's possible defeat.  The Third Circuit raised this concern in *In re Citizens Bank* when considering whether to allow the class representatives in a class action to try their own related, non-class claims before certifying their class claims.  15 F.4th at 616–17.  Raising the one-way intervention concern in that context makes sense, because when the plaintiffs of the class and non-class claims are the same, there is still a possibility of intervention from the sidelines.  A spectator plaintiff can observe the class representatives' success in their individual action and then use that information when determining whether or not to opt out of the class

representatives' later-certified class claims.  In doing so, the spectator's intervention allows him or her to benefit from the judgment when the class representative wins in the class portion of the lawsuit.

The ability to become bound by the judgment is what makes the procedural differences between *In re Citizens Bank* and this case crucial. Petitioners' citation to *In re Citizens Bank* does not merely fail to clearly establish their theory.  It reveals a fundamental misunderstanding of what one-way intervention is.  In one-way intervention, a sideline spectator must be able to hitch his or her proverbial wagon onto the case that is going well. Merely "learn[ing] something about the strength or weakness of the class case based on a related case" is not one-way intervention because there is no possibility of intervention into the binding nature of the judgment. *In re Zetia*, 2021 WL 9870367, at *6.

That difference is not merely semantic: it is what allows sideline plaintiffs to accept benefits without also accepting losses.  When the only thing at stake from watching the individual action is gaining more information about the likelihood of success on the merits in the class action, then the sideline plaintiffs take the losses as much as they take the gains.  If the individual plaintiffs win, then the potential class members might learn more about the strength of their case, and their settlement position could strengthen.  But importantly, if the individual plaintiffs *lose*, then the potential class members observing the proceedings—as well as the defendant—learn more about the weaknesses of the claim, so the class's settlement position likely weakens.

The gamified nature of one-way intervention can be clarified by analogizing to other competitive contexts.  Take baseball, for example.  One-way intervention would be a problem if a free-agent baseball player could sit on the sidelines during the middle of the playoffs while watching the Astros

and Rangers play a game, then decide which team to sign onto only *after* that team has won.  The free agent player (sideline plaintiff) gets to benefit from the very win (judgment) that he got to watch without having to put any skin in the game.  That is not what is occurring here.  No plaintiffs can jump onto either the *Addison* or *Ictech-Bendeck* suits after their judgments have issued.

To continue the analogy: *Addison* and *Ictech-Bendeck* are separate teams.  But they share something in common: they both have left-handed pitchers.  *Ictech-Bendeck* can learn something by watching *Addison*'s left-handed pitcher play against Petitioners, just as baseball teams can scout other games.  But *Ictech-Bendeck* isn't the only "team" gathering information.  Petitioners are learning too.  If Petitioners lose against *Addison*, they may switch up their game strategy when playing *Ictech-Bendeck* to ward off any weaknesses that they have against left-handed pitchers.  And if Petitioners win against *Addison*, then they will know what tactics to keep using when they play *Ictech-Bendeck*.  *Addison* cannot lose and then join *Ictech-Bendeck*'s team to get a rematch.  They already took their shot and are knocked out of the tournament (i.e., they are claim precluded from suing twice).  Thus, the pros and cons of the additional information flow to all parties equally.

Petitioners do not explain why, if the *Addison* plaintiffs lose, putative class members would be "more likely to opt-out and bring individual serial actions in search of a more favorable (but presumptively inaccurate result)." If putative class members saw that the merits of their case were bad, why would they be *more* inclined to go through the time and expense of filing their own suits?  In the case of one-way intervention, putative class members must opt out of the class-action loss so that their claims do not become precluded, which would cause them to lose the ability to bring suit at all.

Here, a putative class member has no risk of having his or her rights extinguished by a related, non-class lawsuit where the plaintiffs lose.  The

putative class member still has to decide whether to vindicate his or her cause of action as part of a class or as an individual. Watching another plaintiff lose would not seem to suggest that a future lawsuit would be any more or less successful whether brought as part of a class action or as an individual action.[8]

Because the posture of the instant case categorically removes the risk of one-way intervention, the district court did not abuse its wide case-management discretion in authorizing the preliminary *Addison* trial to commence before the *Ictech-Bendeck* class certification process concludes.

### b. Issue Preclusion

The second (and related) harm that Petitioners identify is issue preclusion. Petitioners assert that any judgment entered against them in the *Addison* trial might be used against them in the class action through offensive non-mutual collateral estoppel.[9] This is mistaken. Louisiana law—which is what a federal court sitting in diversity would apply in conducting its issue-preclusion analysis—does not recognize non-mutual collateral estoppel.

The preclusive effect of judgments issued by federal courts is determined by federal common law. *Semtek Int'l Inc. v. Lockheed Martin*

---

[8] And in fact, Petitioners may even get the incentives exactly backwards. One reason that people choose not to opt out of class actions is that if they bring their own suits, they take on more risk. A plaintiff on his or her own must front the lawsuit's cost but will only possibly obtain relief. If he or she instead rides along in a class action, then his or her downside risk is mitigated by not having to front the cost. If that person was, instead, certain of the merits of his or her claim, then it would be less risky for such a person to bring his or her own suit and swing for a higher recovery than what he or she might receive as a mere class member.

[2] "Offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Bradberry v. Jefferson County*, 732 F.3d 540, 548–49 (5th Cir. 2013) (internal brackets omitted) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)).

No. 23-30243

*Corp.*, 531 U.S. 497, 508 (2001) (Scalia, J.); *see also Reimer v. Smith*, 663 F.2d 1316, 1325 n.9 (5th Cir. 1981) ("When a federal court sitting in diversity is considering the collateral estoppel effect of a prior federal judgment, this circuit applies federal common law."). And "[a]s a matter of federal common law, federal courts sitting in diversity apply the preclusion law of the forum state unless it is incompatible with federal interests." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020). In this case, that means Louisiana issue preclusion law will control. *See Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022).

This offshoot of *Erie*'s legacy matters because Petitioner's collateral-estoppel fears are based on the common law of preclusion used by federal courts exercising *federal-question* jurisdiction.[10] In that species of federal common law, there is no requirement of strict mutuality for issue preclusion to apply. If a defendant loses an issue in a suit where the issue was actually litigated and necessary to the decision, then a different plaintiff can sue the defendant, identify the defendant's prior loss, and then preclude the defendant from relitigating the issue. *See Bradberry v. Jefferson County*, 732 F.3d 540, 548 (5th Cir. 2013). This is because the Supreme Court has determined that "the preferable approach . . . is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to

---

[10] The legal authority that Petitioners cite for this proposition on page 8 of the Petition is dicta from the district court's order denying Petitioners' motion to bifurcate. That would, of course, not bind this court in a future appeal. The only Fifth Circuit precedent that Petitioner cites in support of the argument that *Parklane*'s test would apply—rather than Louisiana law—is *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982). That case predates and is in conflict with *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), as is seemingly recognized by recent Fifth Circuit cases' adoption of the *Semtek* rule instead of the *Parklane* test. *E.g.*, *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020).

determine when it should be applied." *Parklane*, 439 U.S. at 331 (emphasizing fairness to the defendant).

The same is not true in Louisiana. Until 1991, Louisiana did not recognize any form of collateral estoppel at all. *Welch v. Crown Zellerbach Corp.*, 359 So. 2d 154, 156 (La. 1978) ("Collateral estoppel is a doctrine of issue preclusion alien to Louisiana law."). The state then codified a narrow form of collateral estoppel that requires strict mutuality of identities between the parties in the first and second actions:

> A judgment in favor of either the plaintiff or the defendant is conclusive, **in any subsequent action between them**, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

La. Rev. Stat. 13:4231(3) (1991) (emphasis added).

As the emphasized portion of the quoted code suggests, Louisiana law requires that "the parties must be identical." *Cook v. Marshall*, --- F. Supp. 3d ---, 2022 WL 17555514, at *5 (E.D. La. Dec. 9, 2022). "Absent an identity of the parties in the first and subsequent actions, the exception of *res judicata* will not be maintained." *Alpine Meadows, L.C. v. Winkler*, 154 So. 3d 747, 757 (La. Ct. App. 2014). While this does not mean that the parties must be physically identical, they must at least be in privity with each other. Under Louisiana law, "a privy is defined as 'one who, after the commencement of an action, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, purchase or assignment.'" *Id.* at 757–58 (quoting *Five N. Co. v. Stewart*, 850 So. 2d 51, 61 (La. Ct. App. 2003)). "It is not sufficient to merely show that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the respective actions." *Slaughter v. Atkins*, 305 F. Supp. 3d 697, 709 (M.D. La. 2018).

APP. 0017

The other requirements for collateral estoppel are the same as those used in federal-question cases: "(1) the issue to be precluded must be identical to that involved in the prior action; (2) the issue must have been actually litigated; and (3) the determination of the issue in the prior action must have been necessary to the resulting judgment." *Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 594–95 (E.D. La. 2008) (renumbered) (quoting *In re Keaty*, 397 F.3d 264, 270–71 (5th Cir. 2005)).

In this case, the *Addison* trial would be in the Eastern District of Louisiana. The class action is also in the Eastern District of Louisiana, and the asserted basis of jurisdiction for both cases is diversity. If a member of the class action suit attempted to wield issue preclusion based on anything that occurred in the *Addison* trial, then Louisiana law would apply. Mutuality between the plaintiffs in the first and second actions would not be satisfied because the second-suit plaintiffs would not have acquired an interest in the subject matter from one of the first-suit plaintiffs "by inheritance, succession, purchase or assignment." *Alpine Meadows*, 154 So. 3d at 758. Thus, there would be no collateral estoppel.

And even putting Louisiana law aside, issue preclusion would not be allowed under federal law. *Parklane Hosiery*'s fairness-focused test for non-mutual collateral estoppel announces that:

> The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Parklane*, 439 U.S. at 331. And we have previously taken particular note of the fact that the results of test plaintiffs in a bellwether trial are to be used for informational purposes only, not for issue preclusion. *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1021 (5th Cir. 1997) (denying mandamus with

regard to blocking the bellwether plaintiffs' test trial, but granting mandamus "insofar as it relates to utilization of the results obtained from the trial of the thirty (30) selected cases for any purpose affecting issues or claims of, or defenses to, the remaining untried cases"). Our circuit's caselaw would not allow plaintiffs to use any results in the preliminary *Addison* trial to preclude the defendants from litigating any issues in subsequent cases.

Finally, even if Louisiana or federal law could *possibly* allow issue preclusion to be used in this case, the *Ictech-Bendeck* plaintiffs told this court during oral argument that they will not seek to use collateral estoppel offensively. Oral Arg. Transcript at 23:55–24:02. Any such attempt for them to do so in contravention of that representation would be judicially estopped.

\*      \*      \*

The alleged harms of one-way intervention and collateral estoppel are not presented by the procedural posture of this dispute. Petitioners' theory about Rule 23 is therefore not just lacking clear establishment in the caselaw; it is also wrong on the merits. Petitioners fail to satisfy clear entitlement to a writ of mandamus, which is a necessary requirement for our issuing the writ. However, we proceed and briefly analyze the remaining two prongs as well.

### B. Lack of Other Remedies

Prong two of the mandamus analysis—that there must be no other adequate means to obtain the relief desired—is "a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*) (quoting *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380–81 (2004)). If the issue presented in the mandamus petition is "effectively reviewable after trial," then the writ should not issue. *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1022 (5th Cir. 1997) (Jones, J., specially

concurring).  This makes prong two similar to an irreparable-injury analysis.  *See In re Volkswagen*, 545 F.3d at 319 (holding this prong to be satisfied when "the harm . . . will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle").

Petitioners are correct that they are unable to appeal the district court's case management order because "that order is not a final decision under 28 U.S.C. § 1291."  *In re Citizens Bank*, 15 F.4th at 621.  But they have not explained why they could not seek effective relief on appeal if the *Addison* plaintiffs were to win in their trial.  Petitioners say that "a reversal on final appeal cannot restore witness memories or lost evidence from the passage of time."  But that is not a risk created by the district court's case management order in this dispute.  That is inherent to all appeals.

If the harm allegedly caused here is that a judgment for the *Addison* plaintiffs allows for one-way intervention into their victory, then a denial of such joinder or a review of the judgment as to those who attempted to join the case would provide relief.  And if the harm is that a future ruling in the class action on collateral estoppel grounds would erroneously allow offensive use of issue preclusion from the *Addison* trial, then any judgment flowing from such a ruling could be appealed.[11]  Mandamus is not a mechanism for addressing hypothetical erroneous rulings in future cases.

The Supreme Court has warned that appellate courts reviewing mandamus petitions "must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be

---

[11] And, to reiterate, the existence of this harm turns on the merits of Petitioners' one-way intervention and collateral estoppel arguments.  If a case in this posture is categorically exempt from those harms, as we have explained, then an appeal in this case would be no different than in any other dispute.

erroneous." *Will v. United States*, 389 U.S. 90, 98 n.6 (1967). For this reason, we have specified that when a writ of mandamus issues as a form of review over a non-appealable order, the risk of prejudice should be specific to that order. For example, in *In re Volkswagen of America, Inc.*, we granted mandamus over an erroneous venue transfer order because the harm asserted by the petitioners was the trial's being carried out in the wrong location. 545 F.3d at 319. A risk of delay, however, is not caused by an order scheduling a trial. Delay is a byproduct of all appeals. And if anything, the district court's setting of a trial in *Addison* helps *avoid* delay, unlike Petitioners' request to indefinitely postpone reaching the merits in either *Addison* or *Ictech-Bendeck*.

As discussed in the prior section on Petitioners' asserted right to the writ, it is not clear that either of the harms that Petitioners fear suffering is likely (or even possible). However, if either the alleged one-way intervention problem or an erroneous collateral estoppel ruling were to occur, Petitioners have access to effective review on appeal.

## C. Appropriate Exercise of Discretion

The third prong is "whether [the court], in the exercise of [its] discretion, [is] 'satisfied that the writ is appropriate under the circumstances.'"[12] *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018)

---

[12] This inquiry may sound equitable, but mandamus is a remedy at law. *Ex parte Republic of Peru*, 318 U.S. 578, 584 (1943) ("The common law writs, like equitable remedies, may be granted or withheld in the sound discretion of the Court . . . ."); *see also* James E. Pfander & Jacob P. Wentzel, *The Common Law Origins of* Ex parte Young, 72 Stan. L. Rev. 1269, 1304 n.205 (2020) ("This equitable-style inquiry into adequate alternative remedies has led the Supreme Court to mislabel mandamus as an equitable remedy in the present day." (citing *Great-W Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 215 (2002)).

However, the prerogative writs have fallen "into desuetude" and no longer qualify "as *adequate* alternative remedies" in equitable analyses. Owen W. Gallogly, *Equity's Constitutional Source*, 132 Yale L.J. 1213, 1316 (2023) ("At the Founding, public-law plaintiffs typically *did* have adequate avenues for redress outside of Chancery, namely the

No. 23-30243

(alteration in original) (numbering reordered) (quoting *Cheney*, 542 U.S. at 380–81).  We have said that our "traditional reluctance to meddle in the formulation of a district court's trial plan is tempered by the demands placed upon judicial resources and the extraordinary expense to litigants that typically accompanies mass tort litigation." *In re Chevron*, 109 F.3d at 1018.  But this case is not like *In re Chevron*, and Petitioners' own delays deflate their arguments that the district court has abused its discretion by extending the class certification timeline in *Ictech-Bendeck*.

The facts of this case are substantially different from those in *In re Chevron*.  And they do not give rise to the same reasons for discretionarily providing extraordinary relief.  As Judge Jones highlighted in her *In re Chevron* special concurrence, the mass action in that case had 3,000 individual cases.  "The number of cases in which there are 3,000 plaintiffs is, even in these days of frenzied tort litigation, extremely rare." *In re Chevron*, 109 F.3d at 1022 (Jones, J., specially concurring).  The mass action in this case, by contrast, has just over 500 plaintiffs—one sixth of the number in *In re Chevron*.  And the number of plaintiffs actually approved for the preliminary *Addison* trial was a mere fraction of that.  In *Addison*, each side was to select its own, preferred three plaintiffs and one family group.  The district court in *In re Chevron* selected *thirty* cases to proceed as representatives of the whole.  *In re Chevron*, 109 F.3d at 1019.  *In re Chevron* was also "an 'immature' mass tort action, in which the defendant's liability ha[d] not even been tested, much yet firmly established." 109 F.3d at 1022

---

prerogative writs of certiorari, mandamus, and prohibition."); *see also* Thomas Tapping, *The Law and Practice of the High Prerogative Writ of Mandamus, as It Obtains Both in England, and in Ireland* 22 (London, William Benning & Co. 1848) ("Where a legal right exists, it is no answer to an application for a mandamus, to shew that there is also a remedy in equity; for when the Court refuses to grant the writ, because there is another specific remedy, it means a specific remedy *at law*.").

(Jones, J., specially concurring). Here, specific liability is still up in the air, but the extensive trial on general causation in both the class and mass actions makes this case much more "mature" in terms of factual development. Here, the facts are not "so unique as to warrant mandamus," as that "remedy is only to be used sparingly and with the utmost care." *Id.* at 1021.

And Petitioners' own delays make them less-compelling recipients for exceptional judicial treatment. Petitioners participated in and led much of the pre-trial motions practice, which pushed back any opportunity for the district court to rule on class certification. And Petitioners' litigation strategy led to the trial on general causation, which also delayed class certification. Petitioners complain of a "five-year delay" between the filing of these cases and now. But the district court entered its findings of fact and conclusions of law from the general-causation trial in November 2022, just five *months* before this petition was filed.

If Petitioners were actually interested in expediting the *Ictech-Bendeck* action, then they would want this court to order the district court to have a class-certification hearing as soon as possible. But at oral argument we asked Petitioners' counsel about their preferred timeline for concluding the class-certification proceedings, and they seemed interested only in further delay. When we asked if they wanted us to order the district court to hold a class certification hearing within 60, 90, or 120 days, counsel responded that "it's not a calendar issue, it's no trials on the merits before that class certification decision is made." Oral Argument Transcript at 39:35–39:43. We inquired further about Petitioners' seeming lack of interest in proceeding with haste on class certification, so long as they could remain in pre-trial limbo in both *Ictech-Bendeck* and *Addison*, and counsel suggested that "no more than six months from today [July 12, 2023]" would be practicable. Oral Argument Transcript at 39:357–40:00. Yet Petitioners did not request that we issue

relief to expedite the class-certification hearing's occurring by any particular date.

Such a timeline—after there has been multiple years' worth of discovery—is not the kind of emergency intervention that mandamus is saved for. Petitioners were at least acquiescent in, and very likely the drivers of, the delays in certification. But that is not to say that we approve of litigation tactics that drag out class action proceedings. The fact that plaintiffs choose to join as a putative class rather than sue individually should not unreasonably extend the timeline for resolving the matter, even if statistically it might do so. Some defendants would like for there to be a requirement that "significant (or even complete) merits discovery must occur before class certification," but "delaying certification until late in the case is contrary to the sequencing set forth in Rule 23." Robert H. Klonoff, *The Decline of Class Actions*, 90 Wash. U. L. Rev. 729, 756 (2013). With this in mind, we are confident that the able district court will proceed expeditiously with the certification hearing.

This court is not eager to allow the use of the mandamus process for parties to escape from the litigation positions that they have put themselves in. As the district court wrote in its invited brief to us, "While Petitioners imply the district court has wrongfully delayed the class certification hearing to such an extent that a writ of mandamus is the only appropriate relief, the delay in determining class certification has been the result of the parties' actions, not the district court's."[13]

---

[13] Or, as the *Ictech-Bendeck* plaintiffs put it in their brief opposing the petition for writ of mandamus, "Petitioners now complain about the position in which they find themselves. However, Petitioners need only look in the mirror to find the cause of their current woes."

No. 23-30243

\*       \*       \*

Petitioners cannot satisfy any of the three required prongs of our test for mandamus relief.  First, Petitioners' novel legal theory—that Rule 23 applies to related actions when a class action exists—fails to demonstrate that Petitioners have a clear right to relief.  And the harms that Petitioners allege—one-way intervention and collateral estoppel—do not apply to a case in this posture.  Second, Petitioners have failed to show why those harms, if they exist, could not be corrected on appeal.  Third, Petitioners have not demonstrated that this case is so unique that we, in our discretion, should issue this extraordinary relief.  The petition is DENIED.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 24, 2023

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding:  Fifth Circuit Statement on Petitions for Rehearing
            or Rehearing En Banc

         No. 23-30243   In Re Jefferson Parish
                        USDC No. 2:18-CV-7889
                        USDC No. 2:18-CV-8071
                        USDC No. 2:18-CV-8218
                        USDC No. 2:18-CV-9312
                        USDC No. 2:19-CV-11133
                        USDC No. 2:19-CV-14512

Enclosed is a copy of the court's decision.  The court has entered judgment under FED. R. APP. P. 36.  (However, the opinion may yet contain typographical or printing errors which are subject to correction.)

FED. R. APP. P. 39 through 41, and 5TH CIR. R. 35, 39, and 41 govern costs, rehearings, and mandates.  5TH CIR. R. 35 and 40 require you to attach to your petition for panel rehearing or rehearing en banc an unmarked copy of the court's opinion or order.  Please read carefully the Internal Operating Procedures (IOP's) following FED. R. APP. P. 40 and 5TH CIR. R. 35 for a discussion of when a rehearing may be appropriate, the legal standards applied and sanctions which may be imposed if you make a nonmeritorious petition for rehearing en banc.

Direct Criminal Appeals.  5TH CIR. R. 41 provides that a motion for a stay of mandate under FED. R. APP. P. 41 will not be granted simply upon request.  The petition must set forth good cause for a stay or clearly demonstrate that a substantial question will be presented to the Supreme Court.  Otherwise, this court may deny the motion and issue the mandate immediately.

Pro Se Cases.  If you were unsuccessful in the district court and/or on appeal, and are considering filing a petition for certiorari in the United States Supreme Court, you do not need to file a motion for stay of mandate under FED. R. APP. P. 41.  The issuance of the mandate does not affect the time, or your right, to file with the Supreme Court.

Court Appointed Counsel.  Court appointed counsel is responsible for filing petition(s) for rehearing(s) (panel and/or en banc) and writ(s) of certiorari to the U.S. Supreme Court, unless relieved of your obligation by court order.  If it is your intention to

file a motion to withdraw as counsel, you should notify your client promptly, **and advise them of the time limits for filing for rehearing and certiorari**.  Additionally, you MUST confirm that this information was given to your client, within the body of your motion to withdraw as counsel.


                        Sincerely,

                        LYLE W. CAYCE, Clerk


                        By: _____
                        Nancy F. Dolly, Deputy Clerk

Enclosure(s)

Mr. John E. W. Baay II
Mr. Bruce C. Betzer
Ms. Megan Brillault
Mr. Dean J. Favret
Mr. Charles Allen Foster
Mr. Michael Scott Futrell
Mr. Ernest Paul Gieger Jr.
Ms. Hope Lynette Harper
Ms. Louise Crouchet Higgins
Ms. Angela Cecelia Imbornone
Mr. Anthony D. Irpino
Ms. Sara Eliza James
Mr. Christopher D. Kratovil
Mr. Jason Zachary Landry
Mr. Michael C. Mims
Mr. Casey W. Moll
Mr. John H. Paul
Mr. Eric C. Rowe
Mr. David John Schenck
Mr. Edwin Mark Shorty Jr.
Mr. James Slaughter

# APPENDIX B

### *Addison* Plaintiffs

| <u>Name of Interested Party</u> | <u>Connection and Interest</u> |
| --- | --- |
| C. A.[1] | *Addison* Plaintiff |
| Danitre Abbott | *Addison* Plaintiff |
| Curtis Adams | *Addison* Plaintiff |
| Heather Adams | *Addison* Plaintiff |
| S. A. | *Addison* Plaintiff |
| T. A. | *Addison* Plaintiff |
| Barbara Addison | *Addison* Plaintiff |
| Frederick Addison | *Addison* Plaintiff |
| Juanita Ahysen | *Addison* Plaintiff |
| Richard Ahysen | *Addison* Plaintiff |
| Abeni Alexander | *Addison* Plaintiff |
| Cynthia Alexander | *Addison* Plaintiff |
| Devin Alexander | *Addison* Plaintiff |
| Dionne Alexander | *Addison* Plaintiff |
| Lionel Alexander | *Addison* Plaintiff |
| George Allain, III | *Addison* Plaintiff |
| Shirley Allain | *Addison* Plaintiff |
| J. A. | *Addison* Plaintiff |
| Lakeisha Allen | *Addison* Plaintiff |
| Rufus Allen | *Addison* Plaintiff |
| Charles Lee Anderson | *Addison* Plaintiff |
| Perry Andras | *Addison* Plaintiff |
| John Augillard | *Addison* Plaintiff |
| Joyce Augillard | *Addison* Plaintiff |
| Keision Wayne Augillard | *Addison* Plaintiff |
| Kiera Augillard | *Addison* Plaintiff |
| Chandra August | *Addison* Plaintiff |
| Asheley Augustine | *Addison* Plaintiff |
| Sedonia Augustine | *Addison* Plaintiff |
| B. B. | *Addison* Plaintiff |
| Keioaka Barconey | *Addison* Plaintiff |
| M. B. | *Addison* Plaintiff |
| Keion Bardell | *Addison* Plaintiff |
| Byron Barker | *Addison* Plaintiff |

---

[1] Initials are used instead of full names for minor plaintiffs.

| | |
|---|---|
| Kimberly Barker | *Addison* Plaintiff |
| Dionne Barnes | *Addison* Plaintiff |
| James C. Barnes, Jr. | *Addison* Plaintiff |
| James C. Barnes, III | *Addison* Plaintiff |
| Jayln Barnes | *Addison* Plaintiff |
| M. B. | *Addison* Plaintiff |
| Sheila Baskin | *Addison* Plaintiff |
| Echelle Bates | *Addison* Plaintiff |
| J.C. Bates | *Addison* Plaintiff |
| K. B. | *Addison* Plaintiff |
| La'Shea Bates | *Addison* Plaintiff |
| L. B. | *Addison* Plaintiff |
| O. B. | *Addison* Plaintiff |
| Rosa Bates | *Addison* Plaintiff |
| Shakitha Bates | *Addison* Plaintiff |
| Geraldine Batiste | *Addison* Plaintiff |
| Mildred Bell | *Addison* Plaintiff |
| Stephanie Thomas Bell | *Addison* Plaintiff |
| J. B. | *Addison* Plaintiff |
| Mindy Bertucci-Rigney | *Addison* Plaintiff |
| Dolly Birden | *Addison* Plaintiff |
| Breana Blanchard | *Addison* Plaintiff |
| Holly Blanchard | *Addison* Plaintiff |
| B. B. | *Addison* Plaintiff |
| Charles Bloodsworth | *Addison* Plaintiff |
| C. B. | *Addison* Plaintiff |
| Gina Bloodsworth | *Addison* Plaintiff |
| J. B. | *Addison* Plaintiff |
| Willie Boatner | *Addison* Plaintiff |
| Bertha Boloney | *Addison* Plaintiff |
| N. B. | *Addison* Plaintiff |
| Aaron Bradley | *Addison* Plaintiff |
| Danielle Bradley | *Addison* Plaintiff |
| Leon Bradley, Sr. | *Addison* Plaintiff |
| Mable Irene Bradley | *Addison* Plaintiff |
| Cornelius Bridgett | *Addison* Plaintiff |
| K. B. | *Addison* Plaintiff |
| A. B. | *Addison* Plaintiff |
| Kayla Brooks | *Addison* Plaintiff |
| Kevin Brooks | *Addison* Plaintiff |
| Shiquita Brooks | *Addison* Plaintiff |

| | |
|---|---|
| Stephanie Brooks | *Addison* Plaintiff |
| Willie Faye Brooks | *Addison* Plaintiff |
| Arthur Brown | *Addison* Plaintiff |
| Adam Brown | *Addison* Plaintiff |
| C. B. | *Addison* Plaintiff |
| Debra Brown | *Addison* Plaintiff |
| Eric Brown | *Addison* Plaintiff |
| Michael Brown | *Addison* Plaintiff |
| M. B. | *Addison* Plaintiff |
| Karen Bruce | *Addison* Plaintiff |
| Kee'a Bruce | *Addison* Plaintiff |
| K. B. | *Addison* Plaintiff |
| Michael Brunet | *Addison* Plaintiff |
| Julie Burke | *Addison* Plaintiff |
| Donna Butler | *Addison* Plaintiff |
| D. C. | *Addison* Plaintiff |
| Kizzie Cage | *Addison* Plaintiff |
| Rickey Calligan | *Addison* Plaintiff |
| P. C. | *Addison* Plaintiff |
| Thaddeus Cammon | *Addison* Plaintiff |
| Jessica Campbell | *Addison* Plaintiff |
| J. C. | *Addison* Plaintiff |
| Jeffery Carter | *Addison* Plaintiff |
| Jarrell Carter | *Addison* Plaintiff |
| Lorena Carter | *Addison* Plaintiff |
| J. C. | *Addison* Plaintiff |
| J. C. | *Addison* Plaintiff |
| Ora Chairs | *Addison* Plaintiff |
| Johnnie Chatman | *Addison* Plaintiff |
| Kevin Chirlow, Jr. | *Addison* Plaintiff |
| Kayla Chirlow | *Addison* Plaintiff |
| Brian Chisholm | *Addison* Plaintiff |
| A. C. | *Addison* Plaintiff |
| Cheryl Clark | *Addison* Plaintiff |
| Janae Clark | *Addison* Plaintiff |
| M. C. | *Addison* Plaintiff |
| T. C. | *Addison* Plaintiff |
| Jean Clay | *Addison* Plaintiff |
| Mark Clay | *Addison* Plaintiff |
| Edward Cloudet | *Addison* Plaintiff |
| Ashley Coleman | *Addison* Plaintiff |

| | |
|---|---|
| Kayla Coleman | *Addison* Plaintiff |
| Kelly Coleman | *Addison* Plaintiff |
| Krystal Coleman | *Addison* Plaintiff |
| K. C. | *Addison* Plaintiff |
| Monica Coleman-Lestrick | *Addison* Plaintiff |
| M. C. | *Addison* Plaintiff |
| Othel Coleman | *Addison* Plaintiff |
| Patricia Coleman | *Addison* Plaintiff |
| Alicia Collins | *Addison* Plaintiff |
| Doris Collins | *Addison* Plaintiff |
| D. C. | *Addison* Plaintiff |
| Derrell Collins | *Addison* Plaintiff |
| Delecia Collins | *Addison* Plaintiff |
| Erica Collins | *Addison* Plaintiff |
| Jynnard Collins | *Addison* Plaintiff |
| Latisha Collins | *Addison* Plaintiff |
| Seandell Collins, Sr. | *Addison* Plaintiff |
| Z. C. | *Addison* Plaintiff |
| Linda Ann Corley | *Addison* Plaintiff |
| K. C. | *Addison* Plaintiff |
| K. C. | *Addison* Plaintiff |
| H. C. | *Addison* Plaintiff |
| Patty Crier | *Addison* Plaintiff |
| Dolly Crosley | *Addison* Plaintiff |
| B. C. | *Addison* Plaintiff |
| D. D. | *Addison* Plaintiff |
| Timothy Daigle | *Addison* Plaintiff |
| Derrick Dandridge | *Addison* Plaintiff |
| Barbara Daniels | *Addison* Plaintiff |
| Cathy Daniels | *Addison* Plaintiff |
| Lakeisha Daniels | *Addison* Plaintiff |
| Lloyd Daniels | *Addison* Plaintiff |
| Lula Darden | *Addison* Plaintiff |
| Lakeisha Davis | *Addison* Plaintiff |
| Paul Davis, Jr. | *Addison* Plaintiff |
| Corneal Dawson | *Addison* Plaintiff |
| Dustin Delaune | *Addison* Plaintiff |
| C. D. | *Addison* Plaintiff |
| R. D. | *Addison* Plaintiff |
| Yolanda Dixon | *Addison* Plaintiff |
| Edna Dodson | *Addison* Plaintiff |

| | |
|---|---|
| Kevin Drake | *Addison* Plaintiff |
| Glen Dubone | *Addison* Plaintiff |
| Cheryl Dufrene | *Addison* Plaintiff |
| Betty Dumas | *Addison* Plaintiff |
| Tiffany Durant | *Addison* Plaintiff |
| Cheryl Earl | *Addison* Plaintiff |
| Thomas Eaton | *Addison* Plaintiff |
| Destin Edwards | *Addison* Plaintiff |
| Julia Ann Edwards | *Addison* Plaintiff |
| C. E. | *Addison* Plaintiff |
| D. E. | *Addison* Plaintiff |
| F. E. | *Addison* Plaintiff |
| J. E. | *Addison* Plaintiff |
| Shantel Evans | *Addison* Plaintiff |
| Liz Everson | *Addison* Plaintiff |
| Betty Ferrell | *Addison* Plaintiff |
| Lawrence Ferrell | *Addison* Plaintiff |
| Shawanda Ferrell | *Addison* Plaintiff |
| Adeline Fitzpatrick | *Addison* Plaintiff |
| Deborah Fleming | *Addison* Plaintiff |
| Gerald Fleming | *Addison* Plaintiff |
| Wilson Fleming | *Addison* Plaintiff |
| Mia Fontana | *Addison* Plaintiff |
| Annette Ford | *Addison* Plaintiff |
| Carla Ford | *Addison* Plaintiff |
| Edward Ford, Sr. | *Addison* Plaintiff |
| Gerald Ford, Jr. | *Addison* Plaintiff |
| Clifford Foster, II | *Addison* Plaintiff |
| Linda Frederick | *Addison* Plaintiff |
| Tharen Fredrick | *Addison* Plaintiff |
| Linda Frickey | *Addison* Plaintiff |
| Randy Frickey | *Addison* Plaintiff |
| Rickey Frickey | *Addison* Plaintiff |
| Verna Mae Gabriel | *Addison* Plaintiff |
| Craig Gambino | *Addison* Plaintiff |
| Kimberly Gambino | *Addison* Plaintiff |
| M. G. | *Addison* Plaintiff |
| Sandra Garner | *Addison* Plaintiff |
| H. G. | *Addison* Plaintiff |
| B. G. | *Addison* Plaintiff |
| J. G. | *Addison* Plaintiff |

| | |
|---|---|
| K. G. | *Addison* Plaintiff |
| Q. G. | *Addison* Plaintiff |
| Z. G. | *Addison* Plaintiff |
| Rhonda Glanton | *Addison* Plaintiff |
| Claudetta Golston | *Addison* Plaintiff |
| Lula Golston-Stewart | *Addison* Plaintiff |
| Thurston Golston, Jr. | *Addison* Plaintiff |
| Alvin Gordon, Jr. | *Addison* Plaintiff |
| Gabrielle Gordon | *Addison* Plaintiff |
| G. G. | *Addison* Plaintiff |
| Merlene Grant | *Addison* Plaintiff |
| A. G. | *Addison* Plaintiff |
| C. G. | *Addison* Plaintiff |
| C. G. | *Addison* Plaintiff |
| C. G. | *Addison* Plaintiff |
| D'Lisa Green | *Addison* Plaintiff |
| Ethel Green | *Addison* Plaintiff |
| Geneva Green | *Addison* Plaintiff |
| Geraldmiah Green | *Addison* Plaintiff |
| Jamaal Green | *Addison* Plaintiff |
| Jayceon Green | *Addison* Plaintiff |
| Jameisha Green | *Addison* Plaintiff |
| Lori Green | *Addison* Plaintiff |
| Lorne Green | *Addison* Plaintiff |
| Magnolia Green | *Addison* Plaintiff |
| Rochelle Green | *Addison* Plaintiff |
| Tiara Green | *Addison* Plaintiff |
| Theresa Green | *Addison* Plaintiff |
| Tiona Green | *Addison* Plaintiff |
| A. G. | *Addison* Plaintiff |
| B. G. | *Addison* Plaintiff |
| Scott Gremillion | *Addison* Plaintiff |
| Wendy Gremillion | *Addison* Plaintiff |
| Darren Griffin | *Addison* Plaintiff |
| Jinnylynn Griffin | *Addison* Plaintiff |
| Jourdan Griffin | *Addison* Plaintiff |
| A. G. | *Addison* Plaintiff |
| Otis "Chip" Guichet | *Addison* Plaintiff |
| Daniel Guilbeau | *Addison* Plaintiff |
| Felton Guilbeau | *Addison* Plaintiff |
| Glenda Guilbeau | *Addison* Plaintiff |

| | |
|---|---|
| Shelia Guilbeau | *Addison* Plaintiff |
| Joshua Guillard | *Addison* Plaintiff |
| Leroy Guillard, Jr. | *Addison* Plaintiff |
| Terrell Guillard | *Addison* Plaintiff |
| T. G. | *Addison* Plaintiff |
| Deselle Gustain | *Addison* Plaintiff |
| Donell Gustain, Sr. | *Addison* Plaintiff |
| Calisa Hammond | *Addison* Plaintiff |
| M. H. | *Addison* Plaintiff |
| Devora Hampton | *Addison* Plaintiff |
| D. H. | *Addison* Plaintiff |
| D. H. | *Addison* Plaintiff |
| Rashwanda Harden | *Addison* Plaintiff |
| Alfreda Hardin | *Addison* Plaintiff |
| Albertine Hargrave | *Addison* Plaintiff |
| Elizabeth Hargrave | *Addison* Plaintiff |
| Antoine Harris | *Addison* Plaintiff |
| Brenda Harris | *Addison* Plaintiff |
| J. H. | *Addison* Plaintiff |
| Michael Harris, Sr. | *Addison* Plaintiff |
| Valerie Harris | *Addison* Plaintiff |
| C. H. | *Addison* Plaintiff |
| C. H. | *Addison* Plaintiff |
| Leroniesha Hartford | *Addison* Plaintiff |
| S. H. | *Addison* Plaintiff |
| Lisa Hawkins | *Addison* Plaintiff |
| S. H. | *Addison* Plaintiff |
| Natalie Heath | *Addison* Plaintiff |
| Barbara Henderson | *Addison* Plaintiff |
| William Hervey | *Addison* Plaintiff |
| Mary Hickingbottom | *Addison* Plaintiff |
| Isiah Hill | *Addison* Plaintiff |
| K. H. | *Addison* Plaintiff |
| Stacy Hobbs | *Addison* Plaintiff |
| S. H. | *Addison* Plaintiff |
| Tommy Horton | *Addison* Plaintiff |
| Jacquelyn Howard | *Addison* Plaintiff |
| Marva Hubert | *Addison* Plaintiff |
| L. H. | *Addison* Plaintiff |
| Amber Hybart | *Addison* Plaintiff |
| A. H. | *Addison* Plaintiff |

| | |
|---|---|
| A. H. | *Addison* Plaintiff |
| D. H. | *Addison* Plaintiff |
| J. H. | *Addison* Plaintiff |
| Nicholas Hybart | *Addison* Plaintiff |
| Cynthia Isidore | *Addison* Plaintiff |
| N. I. | *Addison* Plaintiff |
| Ada Jackson | *Addison* Plaintiff |
| Alfred Jackson | *Addison* Plaintiff |
| Andrew Jackson, Jr. | *Addison* Plaintiff |
| Jarvis Jackson | *Addison* Plaintiff |
| K. J. | *Addison* Plaintiff |
| Tedrick Jackson | *Addison* Plaintiff |
| G. J. | *Addison* Plaintiff |
| Jake James, Jr. | *Addison* Plaintiff |
| Shelia Thompson James | *Addison* Plaintiff |
| Alena Jessie | *Addison* Plaintiff |
| Ann Jessie | *Addison* Plaintiff |
| Cletis Jessie, Sr. | *Addison* Plaintiff |
| J. J. | *Addison* Plaintiff |
| Roosevelt Jessie, III | *Addison* Plaintiff |
| Amanda Johnson | *Addison* Plaintiff |
| Alexis Johnson | *Addison* Plaintiff |
| Bridgette Johnson | *Addison* Plaintiff |
| Deborah Johnson | *Addison* Plaintiff |
| J. J. | *Addison* Plaintiff |
| Jeffery Johnson | *Addison* Plaintiff |
| Marguerite Johnson | *Addison* Plaintiff |
| Quentin Johnson | *Addison* Plaintiff |
| S. J. | *Addison* Plaintiff |
| Aisha Jones | *Addison* Plaintiff |
| Christina Jones | *Addison* Plaintiff |
| J. J. | *Addison* Plaintiff |
| Jercarla Jones | *Addison* Plaintiff |
| Jerlinda Jones | *Addison* Plaintiff |
| Rita Jones | *Addison* Plaintiff |
| Cornell Joseph | *Addison* Plaintiff |
| D. J. | *Addison* Plaintiff |
| J. K. | *Addison* Plaintiff |
| J. K. | *Addison* Plaintiff |
| Rayvin Kennedy | *Addison* Plaintiff |
| R. K. | *Addison* Plaintiff |

| | |
|---|---|
| R. K. | *Addison* Plaintiff |
| Julie Ketchens | *Addison* Plaintiff |
| Lawrence Kimbell | *Addison* Plaintiff |
| Kevin Knox | *Addison* Plaintiff |
| Elizabeth Lala | *Addison* Plaintiff |
| Devin Lang | *Addison* Plaintiff |
| C. L. | *Addison* Plaintiff |
| Clarence LeBlanc | *Addison* Plaintiff |
| Joyce Lee | *Addison* Plaintiff |
| Michelle Lee | *Addison* Plaintiff |
| C. L. | *Addison* Plaintiff |
| Chayla Lestrick | *Addison* Plaintiff |
| Leo Lestrick | *Addison* Plaintiff |
| Bernie Lewis | *Addison* Plaintiff |
| Judy Lewis | *Addison* Plaintiff |
| Sherrie Lewis | *Addison* Plaintiff |
| Tuscanow Lewis | *Addison* Plaintiff |
| Vernice Lewis | *Addison* Plaintiff |
| Bruce Lightell | *Addison* Plaintiff |
| Brittany Lightell | *Addison* Plaintiff |
| Lucinda Lightell | *Addison* Plaintiff |
| Larry Little | *Addison* Plaintiff |
| L. L. | *Addison* Plaintiff |
| Maricia Stipe Little | *Addison* Plaintiff |
| S. L. | *Addison* Plaintiff |
| Nora London | *Addison* Plaintiff |
| C. L. | *Addison* Plaintiff |
| Elizabeth Lowe | *Addison* Plaintiff |
| John Lowe | *Addison* Plaintiff |
| Lauren Lowe | *Addison* Plaintiff |
| Gavin Mahl | *Addison* Plaintiff |
| Latoya Manson | *Addison* Plaintiff |
| Augusta Martin | *Addison* Plaintiff |
| Debra Martin | *Addison* Plaintiff |
| Jernira Maxson | *Addison* Plaintiff |
| D. M. | *Addison* Plaintiff |
| Jawon McGee | *Addison* Plaintiff |
| Janet McKeel | *Addison* Plaintiff |
| Tyronne McKinley | *Addison* Plaintiff |
| Frank McKnight | *Addison* Plaintiff |
| I. M. | *Addison* Plaintiff |

| | |
|---|---|
| L. M. | *Addison* Plaintiff |
| Lacey McKnight | *Addison* Plaintiff |
| Mariya Merricks | *Addison* Plaintiff |
| Gary Meyer | *Addison* Plaintiff |
| Michelle Meyer | *Addison* Plaintiff |
| Rhonda Meyer | *Addison* Plaintiff |
| Stanley Meyers | *Addison* Plaintiff |
| Alexander Mitchell | *Addison* Plaintiff |
| Regina Mitchell | *Addison* Plaintiff |
| Adrienne Gabriel Moilanen | *Addison* Plaintiff |
| R. M. | *Addison* Plaintiff |
| Shasmine Moran | *Addison* Plaintiff |
| U. M. | *Addison* Plaintiff |
| J. M. | *Addison* Plaintiff |
| Anthony Murphy | *Addison* Plaintiff |
| Vanessa Murphy | *Addison* Plaintiff |
| Brett Nelson | *Addison* Plaintiff |
| Hilary Nelson | *Addison* Plaintiff |
| Ernest Newell | *Addison* Plaintiff |
| Takita Nickerson | *Addison* Plaintiff |
| C. O. | *Addison* Plaintiff |
| Geneva Oliney | *Addison* Plaintiff |
| Chance Palazzolo | *Addison* Plaintiff |
| Mary Paul | *Addison* Plaintiff |
| Troy Payton | *Addison* Plaintiff |
| A. P. | *Addison* Plaintiff |
| Joseph Pete, Jr. | *Addison* Plaintiff |
| J. P. | *Addison* Plaintiff |
| Terry Pete | *Addison* Plaintiff |
| Andrea Pickney | *Addison* Plaintiff |
| Warren Pickney | *Addison* Plaintiff |
| Jalisa Pinkley | *Addison* Plaintiff |
| M. P. | *Addison* Plaintiff |
| Pearl Pinkley | *Addison* Plaintiff |
| Wiley Pinkley | *Addison* Plaintiff |
| Carolyn Polk | *Addison* Plaintiff |
| Rosda Powers | *Addison* Plaintiff |
| Glenda Primus | *Addison* Plaintiff |
| M. R. | *Addison* Plaintiff |
| Nicholas Ragas | *Addison* Plaintiff |
| Melvin Ratcliff | *Addison* Plaintiff |

| | |
|---|---|
| Brady Reed | *Addison* Plaintiff |
| Edna Reed | *Addison* Plaintiff |
| Verna Reed | *Addison* Plaintiff |
| Willis Reed | *Addison* Plaintiff |
| Willis Reed, Jr. | *Addison* Plaintiff |
| Dolores Richard | *Addison* Plaintiff |
| Reshaun Richardson | *Addison* Plaintiff |
| Barbara Ridgley | *Addison* Plaintiff |
| Joseph Ridgley | *Addison* Plaintiff |
| Kerry Ridgley, Jr. | *Addison* Plaintiff |
| Shakemia Ridgley | *Addison* Plaintiff |
| G. R. | *Addison* Plaintiff |
| G. R. | *Addison* Plaintiff |
| G. R. | *Addison* Plaintiff |
| Kim Riley | *Addison* Plaintiff |
| Charlotte Ringo | *Addison* Plaintiff |
| C. R. | *Addison* Plaintiff |
| C. R. | *Addison* Plaintiff |
| T. R. | *Addison* Plaintiff |
| Charles Robertson | *Addison* Plaintiff |
| A. R. | *Addison* Plaintiff |
| Jocelyn Robichaux | *Addison* Plaintiff |
| Mark Robichaux | *Addison* Plaintiff |
| Raquel Robichaux | *Addison* Plaintiff |
| D. R. | *Addison* Plaintiff |
| D. R. | *Addison* Plaintiff |
| Samantha Robinson | *Addison* Plaintiff |
| Craig Rodrigue | *Addison* Plaintiff |
| Cary Rodrigue | *Addison* Plaintiff |
| Elizabeth Rodrigue | *Addison* Plaintiff |
| Patricia Rodrigue | *Addison* Plaintiff |
| T. R. | *Addison* Plaintiff |
| Dwayne Rogers | *Addison* Plaintiff |
| Mary Rogers | *Addison* Plaintiff |
| Karen Ross | *Addison* Plaintiff |
| Tony Ross | *Addison* Plaintiff |
| Rebecca Roth | *Addison* Plaintiff |
| Susie Roux | *Addison* Plaintiff |
| M. R. | *Addison* Plaintiff |
| Kenneth Royal | *Addison* Plaintiff |
| Aneesah Sabree | *Addison* Plaintiff |

| | |
|---|---|
| Deborah Savage | *Addison* Plaintiff |
| Larry Savage | *Addison* Plaintiff |
| Dana Scallan | *Addison* Plaintiff |
| Randolph Scallan | *Addison* Plaintiff |
| S. S. | *Addison* Plaintiff |
| Roland Schipplein | *Addison* Plaintiff |
| Aletha Scott | *Addison* Plaintiff |
| David Scott | *Addison* Plaintiff |
| Dianne Scott | *Addison* Plaintiff |
| Marsha Scott | *Addison* Plaintiff |
| Claudette Scrubbs | *Addison* Plaintiff |
| Loretta Seals | *Addison* Plaintiff |
| Andrew Section | *Addison* Plaintiff |
| Cari Serpas | *Addison* Plaintiff |
| C. S. | *Addison* Plaintiff |
| G. S. | *Addison* Plaintiff |
| Steven Serpas | *Addison* Plaintiff |
| Chekeira Shaw | *Addison* Plaintiff |
| Debra Shelvin | *Addison* Plaintiff |
| C. S. | *Addison* Plaintiff |
| Claudette Simons | *Addison* Plaintiff |
| LaToya Singleton | *Addison* Plaintiff |
| Ann Smith | *Addison* Plaintiff |
| Clarence Smith | *Addison* Plaintiff |
| Dorothy Smith | *Addison* Plaintiff |
| K. S. | *Addison* Plaintiff |
| LaShandra Smith | *Addison* Plaintiff |
| Leroy Smith | *Addison* Plaintiff |
| N. S. | *Addison* Plaintiff |
| Rayfield Smith | *Addison* Plaintiff |
| Dwight Solomon | *Addison* Plaintiff |
| D. S. | *Addison* Plaintiff |
| Thomas Stacker | *Addison* Plaintiff |
| William Stanley | *Addison* Plaintiff |
| James Stermer | *Addison* Plaintiff |
| Mykell Steward | *Addison* Plaintiff |
| Rhonda Steward | *Addison* Plaintiff |
| Debra Stromas | *Addison* Plaintiff |
| Willie Stromas | *Addison* Plaintiff |
| Mary Summerall | *Addison* Plaintiff |
| C. S. | *Addison* Plaintiff |

| | |
|---|---|
| Harold Sutton | *Addison* Plaintiff |
| J. S. | *Addison* Plaintiff |
| K. S. | *Addison* Plaintiff |
| Vera Sutton | *Addison* Plaintiff |
| Emmette Sylve, Jr. | *Addison* Plaintiff |
| Jonathan Tate | *Addison* Plaintiff |
| J. T. | *Addison* Plaintiff |
| J. T. | *Addison* Plaintiff |
| Shelia Taylor | *Addison* Plaintiff |
| Ordelia Thomas | *Addison* Plaintiff |
| Robert Thomas | *Addison* Plaintiff |
| John Thompson, Jr. | *Addison* Plaintiff |
| Roshanda Thompson | *Addison* Plaintiff |
| Terrance Thompson | *Addison* Plaintiff |
| Tyrone Thompson | *Addison* Plaintiff |
| Chandra Tigler | *Addison* Plaintiff |
| O. T. | *Addison* Plaintiff |
| Vellis Tillmon | *Addison* Plaintiff |
| Gloria Toledano | *Addison* Plaintiff |
| Roy Toledano, Jr. | *Addison* Plaintiff |
| Juanita Torres | *Addison* Plaintiff |
| D. T. | *Addison* Plaintiff |
| Ernest Triche | *Addison* Plaintiff |
| Ernest Triche, Jr. | *Addison* Plaintiff |
| Tremayne Turner | *Addison* Plaintiff |
| C. U. | *Addison* Plaintiff |
| C. U. | *Addison* Plaintiff |
| Deborah Ursin | *Addison* Plaintiff |
| Melvin Ursin | *Addison* Plaintiff |
| Z. U. | *Addison* Plaintiff |
| Demetrice Vall | *Addison* Plaintiff |
| Monterio Vaughn | *Addison* Plaintiff |
| Brian Walker, Jr. | *Addison* Plaintiff |
| Brian Walker, III | *Addison* Plaintiff |
| Francine Walker | *Addison* Plaintiff |
| Nicole Walker | *Addison* Plaintiff |
| Beverly Ann Wallace | *Addison* Plaintiff |
| David Ward | *Addison* Plaintiff |
| Melanie Ward | *Addison* Plaintiff |
| Edward Washington | *Addison* Plaintiff |
| Elizabeth Washington | *Addison* Plaintiff |

| | |
|---|---|
| R. W. | *Addison* Plaintiff |
| Kerner Weathersby | *Addison* Plaintiff |
| K. W. | *Addison* Plaintiff |
| Kathy White | *Addison* Plaintiff |
| Lloyd White, Jr. | *Addison* Plaintiff |
| M. W. | *Addison* Plaintiff |
| Patricia White | *Addison* Plaintiff |
| Velma Whittington | *Addison* Plaintiff |
| Janice Wilkinson | *Addison* Plaintiff |
| Joseph Williams, IV | *Addison* Plaintiff |
| J. W. | *Addison* Plaintiff |
| J. W. | *Addison* Plaintiff |
| Marcus Williams, Jr. | *Addison* Plaintiff |
| S. W. | *Addison* Plaintiff |
| Solomon Williams, Jr. | *Addison* Plaintiff |
| Mary Ann Winningkoff | *Addison* Plaintiff |
| Kevin Wood | *Addison* Plaintiff |
| Mary Wood | *Addison* Plaintiff |